UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------

VICTORIA'S SECRET STORES
BRAND MANAGEMENT, INC.,

                Plaintiff,

          v.

SEXY HAIR CONCEPTS, LLC,

                Defendant.

-----------------------------------------------------

JUDGE LYNCH

Civil Action No.:

07 CIV 5804

RECEIVED
JUN 19 2007
U.S.D.C. S.D.N.Y.
CASHIERS

## COMPLAINT

Plaintiff, VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC. ("plaintiff" or "Victoria's Secret"), by its attorneys, for its complaint against defendant, SEXY HAIR CONCEPTS ("defendant" or "SHC"), alleges as follows:

## NATURE OF ACTION

1.      This is an appeal from a final decision of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office that sustained defendant's opposition to plaintiff's application for registration of the trademark SO SEXY for hair care.

## THE PARTIES

2.      Plaintiff, Victoria's Secret Stores Brand Management, Inc., is a Delaware corporation, having a place of business at 888 Seventh Avenue, New York, New York 10106.

3.      Defendant, Sexy Hair Concepts, LLC, is a California corporation, having a place of business at 9232 Eton Avenue, Chatsworth, California 91311.

## JURISDICTION AND VENUE

4.    This action arises under the Trademark Laws of the United States, 15 U.S.C. § 1051, *et seq.*, pursuant to an appeal, in accordance with 15 U.S.C. § 1071(b)(1), from a decision of the Trademark Trial and Appeal Board ("TTAB" or "Board") of the United States Patent and Trademark Office ("USPTO"). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121.

5.    This Court has personal jurisdiction over defendant on the grounds that, among other things, defendant either resides in and/or engages in a continuous and systematic course of doing business in New York and/or has substantial contacts with, transacts and solicits business in and/or derives substantial monetary benefit from its contacts with the State of New York.

6.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because defendant conducts business in and/or has substantial contacts with and/or may be found in the Southern District of New York, and a substantial portion of the events at issue have arisen and/or will arise in this judicial district, and because defendant is subject to personal jurisdiction within this judicial district.

## FACTS COMMON TO ALL COUNTS

### Proceedings Before the Trademark Trial and Appeal Board

7.    Victoria's Secret filed an intent-to-use trademark application with the USPTO for registration of the mark SO SEXY, Application Serial No. 78/094,035, on November 19, 2001, for "hair care products, namely, hair conditioner, hair dyes, hair glitter, hair highlighter, hair mascara, hair pomade, hair rinses, hair removing creams, hair shampoo, hair

spray, hair straightener, hair styling gel and hair styling mousse" in International Class 3 (the "SO SEXY Application").

8.    The USPTO examined the SO SEXY Application and found no reason to deny registration thereof.  On July 2, 2002, the SO SEXY Application was published for opposition.

9.    SHC filed a Notice of Opposition with the USPTO on July 25, 2002. During Opposition No. 91125739, SHC alleged that the mark SO SEXY shown in the SO SEXY Application was likely to cause confusion with SHC's six registered trademarks for SEXY HAIR (Reg. No. 2,403,396), FORMULAS BY ECOLY BIG SEXY HAIR (Reg. No. 2,472,793), SEXY HAIR & Design (Reg. No. 2,486,702), HOT SEXY HIGHLIGHTS (Reg. No. 2,553,996), WILD SEXY HAIR (Reg. No. 2,707,751), and SEXY HAIR CONCEPTS & Design (Reg. No. 2,757,856), SHC's purported family of "SEXY" marks and its "Sexy Hair Concepts" trade name.

10.    On August 20, 2002, Victoria's Secret timely served and filed its answer denying the salient allegations of SHC's Notice of Opposition and affirmative defenses thereto.

11.    Following discovery and an oral hearing, the Board rendered a final decision on April 20, 2007 ("the Board's Decision") sustaining SHC's opposition.  A true and correct copy of the Board's Decision is attached hereto as Exhibit A.

**Victoria's Secret's Sexy Image**

12.    Victoria's Secret is known throughout the world as the leading specialty retailer of lingerie and beauty products.  For more than twenty years, Victoria's Secret has cultivated an image built around the notion that its products convey sexiness.  The success of the Victoria's Secret brand depends on the ability to communicate that its products make a woman

look and feel sexy. In addition to the manner in which its products are named and designed, this message is imbued in the store design, product packaging, and marketing of Victoria's Secret.

13.    For many years, Victoria's Secret has advertised and sold products bearing trademarks that include the word "SEXY", such as VERY SEXY, which has been used for apparel and personal care products. Other products use the marks SEXY IS BUILT RIGHT IN, SEXY LITTLE THINGS, and THE NEW SHAPE OF SEXY. Notable advertising campaigns of Victoria's Secret feature the taglines WHAT IS SEXY? and HOW WILL YOU SHOW OFF YOUR SEXY?

14.    When Victoria's Secret decided to expand its beauty line into the field of hair care, it wanted a mark that suggests to the users of such products that the products would make their hair, and consequently, the user, look and feel sexy. It was logical and reasonable for Victoria's Secret to select a mark tied in with its "sexy" heritage because Victoria's Secret is synonymous with sexy.

15.    Accordingly, Victoria's Secret adopted and filed a trademark application to register the mark SO SEXY ("the SO SEXY Mark") for hair care products.

16.    In addition to the SO SEXY Mark, Victoria's Secret also owns dozens of other registrations and applications for trademarks that include the word "SEXY", which are detailed on the chart attached as Exhibit B. Exhibit B also includes marks that cover goods in International Class 3. Personal care products, including hair care products, fall within International Class 3. The Victoria's Secret "SEXY" marks listed on Exhibit B also include goods in the following International Classes 25 (clothing and accessories), 4 (candles), 16 (drawer liners), 18 (leather key chains), 20 (scented clothes hangers), 30 (candy), and 35 (retail

store services, mail order catalog services and on-line retail store services featuring personal care products and clothing).

17.    In addition to the SO SEXY Application, SHC has instituted oppositions before the TTAB regarding at least ten of Victoria's Secret's pending applications that include the word "SEXY" ("SEXY-formative marks"). The SEXY-formative marks that SHC has filed oppositions against are detailed as follows:

| Mark | Class | Serial No. | Initial Opposition No. |
|------|-------|-----------|------------------------|
| ALL MY SEXY SPOTS | 3 | 78/806,917 | 91,176,626 |
| SEXY MARKS THE SPOT | 3 | 78/778,877 | 91,176,625 |
| VERY SEXY NOW | 3 | 78/739,347 | 91,176,624 |
| SEXY SPORT | 3, 25, 35 | 78/745,857 | 91,174,912 |
| SEXY IN BLOOM | 3 | 78/835,371 | 91,175,835 |
| PURELY SEXY | 3 | 78/725,038 | 91,175,891 |
| STRICTLY SEXY | 3 | 78/350,729 | 91,164,946 |
| VICTORIA'S SECRET SEXY ANGELS | 3 | 78/318,238 | 91,163,448 |
| SEXY SPA | 3 | 78/284,376 | 91,161,945 |
| SPASEXY | 3 | 78/284,375 | 91,161,943 |

The proceedings involving the SEXY-formative marks are all suspended, pending the outcome of the TTAB proceeding from which this appeal is taken.

## COUNT ONE

### Request For Reversal of the Board's Decision
### Under Section 21(b) of the Lanham Act - 15 U.S.C. § 1071(b)

18.    Plaintiff repeats and incorporates herein by reference each and every one of the averments contained in paragraphs 1 through 17, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

19.    Victoria's Secret is dissatisfied with the Board's Decision.

20.    The Board erred in ruling that the word "sexy" is a suggestive or inherently distinctive term, rather than a merely descriptive or laudatory word.  (Ex. A at 23)

21.    The Board also erred in ruling that SHC has established a family of marks based on the common word "Sexy."   (Ex. A at 25)

22.    The Board's Decision is erroneous because it attributes to SHC's so-called "family of marks" a pattern "characterized by the term SEXY preceded by a word that suggests an intended result of the product and followed by a generic noun in the hair care field."  (Ex. A at 24)

23.    The Board also erred in finding that consumers are likely to view marks as having a common origin if they share as a common characteristic the word "sexy" preceded by a word that suggests an intended result of the product in the hair care field.  (Ex. A at 24)

24.    The Board erroneously held that Victoria's Secret's SEXY HAIR Mark is likely to be perceived as part of SHC's SEXY family of marks, and, thus, confusion as to source is likely.   (Ex. A at 29-30)

25.    The Board's Decision is a final decision subject to review under Section 21 of the Lanham Act, 15 U.S.C. § 1071.

26.    Victoria's Secret elects to appeal the Board's Decision by bringing a civil action under Section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b), for an order reversing the Board's Decision that sustained the opposition against the SO SEXY Application and adjudging that Victoria's Secret is entitled to a registration of its SO SEXY Mark.

## PRAYER FOR RELIEF

WHEREFORE, Victoria's Secret prays for the following relief:

A.    Reversal of the Board's April 20, 2007 decision sustaining SHC's opposition of Victoria's Secret's SO SEXY Application;

B.    An order directing the TTAB to allow registration of Victoria's Secret's SO SEXY Mark; and

C.    Such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          June 19, 2007

COLUCCI & UMANS

By: Frank J. Colucci

Frank J. Colucci (FC-8441)
Richard P. Jacobson (RJ-2843)
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email:  email@colucci-umans.com

Attorneys for Plaintiff

## JURY DEMAND

Plaintiff, Victoria's Secret Stores Brand Management, Inc., hereby demands a trial by jury on all issues triable by a jury.

Dated:    New York, New York
          June 19, 2007

                      COLUCCI & UMANS

                      By: *Frank J Colucci*

                      Frank J. Colucci (FC-8441)
                      Richard P. Jacobson (RJ-2843)
                      218 East 50th Street
                      New York, New York 10022
                      Telephone: (212) 935-5700
                      Facsimile: (212) 935-5728
                      Email:  email@colucci-umans.com

                      Attorneys for Plaintiff

```
THIS 0PINION
IS NOT A CITABLE
PRECEDENT OF
THE TTAB
```

Hearing:
March 23, 2006

Mailed:  April 20, 2007

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

Sexy Hair Concepts, LLC.
v.
Victoria's Secret Stores Brand Management, Inc.[1]
_____

Opposition No. 91125739
to Application No. 78094035
filed on November 19, 2001
_____

Roberta Jacobs-Meadway of Ballard Spahr Andrews & Ingersoll
for Sexy Hair Concepts, LLC.

Frank J. Colucci of Colucci & Umans for Victoria's Secret
Stores Brand Management, Inc.
_____

Before Quinn, Walters and Holtzman, Administrative Trademark
Judges.

Opinion by Walters, Administrative Trademark Judge:

    Sexy Hair Concepts, LLC. filed its opposition to the

application of Victoria's Secret Stores Brand Management,

Inc. to register the mark SO SEXY for "hair care products,

_____
[1] While the owner of record of the application when this opposition was
filed was V Secret Catalogue, Inc., the USPTO records show that the
current owner of this mark and application, via merger with V Secret
Catalogue, Inc., is Victoria's Secret Stores Brand Management, Inc. The
caption has been changed to reflect the current ownership.

EXHIBIT A

Opposition No. 91125739

namely, hair conditioner, hair dyes, hair glitter, hair highlighter, hair mascara, hair pomade, hair rinses, hair removing creams, hair shampoo, hair spray, hair straightener, hair styling gel and hair styling mousse," in International Class 3.[2]

As grounds for opposition, opposer asserts that applicant's mark, when applied to applicant's goods, so resembles opposer's previously used and registered mark SEXY HAIR for "hair care products for men, women and children, namely hair shampoos, hair conditioners, hair lotions, hair cremes, hair gels, hair sprays, hair color, hair dyes, hair rinses, hair mousse"[3] as to be likely to cause confusion, under Section 2(d) of the Trademark Act.

In particular, opposer asserts that it has used the mark SEXY HAIR in connection with hair care products since at least June 15, 1998, and so used this mark in commerce since at least December 21, 1998; that this mark is the subject of Registration No. 2403396, owned by opposer; that opposer also owns additional registrations - No. 2486702 for SEXY HAIR and design, and No. 2553996 for HOT SEXY HIGHLIGHTS for hair care products; that it owns a family of

---

[2] Application Serial No. 78094035, filed November 19, 2001, based upon an allegation of a bona fide intention to use the mark in commerce in connection with the identified goods.

[3] Registration No. 2403396, issued November 14, 2000, in International Class 3. [Sections 8 and 15 affidavits accepted and acknowledged, respectively.]

Opposition No. 91125739

SEXY marks for hair care products; that it has used the mark
and trade name SEXY HAIR CONCEPTS since prior to November
19, 2001, in connection with hair care, skin care and
cosmetic products; and that its marks and trade name are
inherently distinctive in connection with opposer's
business.

Applicant, in its answer, denied the salient
allegations of the claim and asserted affirmatively, inter
alia, that no one company is entitled to the exclusive right
to use or register as a mark the word "sexy" for personal
care products; that opposer does not have a family of SEXY
marks; and that numerous third parties have registered or
used the word "sexy" as part of marks for personal care and
related products.

Both parties filed briefs on the case and submitted
evidence by notice of reliance and through testimony, with
exhibits.  The Board has carefully reviewed the parties'
respective evidence and arguments, and the familiarity of
the parties therewith is presumed.

*Factual Findings*

Opposer has established its ownership and the validity
of the following six registrations[4]:

---

[4] Although Registration Nos. 2472793 (FORMULAS BY ECOLY BIG SEXY HAIR),
2707751 (WILD SEXY HAIR), and 2757856 (SEXY HAIR CONCEPTS and design)
were not pled in the notice of opposition, we have considered them
because applicant has not objected to the unpleaded registrations and
moreover has treated them as of record.  Therefore, the notice of

Opposition No. 91125739

- Registration No. 2403396 for the mark **SEXY HAIR** for "Hair care products for men, women and children, namely hair shampoos, hair conditioners, hair lotions, hair cremes, hair gels, hair sprays, hair color, hair dyes, hair rinses, hair mousse," in International Class 3, with a disclaimer of HAIR apart from the mark as a whole.    [Application filed February 5, 1999; Registered November 14, 2000; Sections 8 (six-year) and 15 affidavits accepted and acknowledged, respectively.]

- Registration No. 2472793 for the mark **FORMULAS BY ECOLY BIG SEXY HAIR** for "hair care products for men, women and children, namely hair shampoos, hair conditioners, hair lotions, hair crèmes, hair gels, hair sprays, hair color, hair dyes, hair rinses, hair mousse" with a disclaimer of HAIR apart from the mark as a whole. [Application filed June 17, 1999; Registered July 13, 2001.]

- Registration No. 2486702 for the mark shown below for "hair care products for men, women and children, namely shampoos, conditioners, hair lotions, hair conditioning creams, hair gels, hair sprays, hair color, hair tint and hair mousse.," in International Class 3,  with a disclaimer of HAIR apart from the mark as a whole and a statement that the trademark is lined for the color red.    [Application filed July 15, 1999; Registered September 11, 2001.]



- Registration No. 2553996 for the mark **HOT SEXY HIGHLIGHTS** for "hair care products for men, women and children, namely, shampoos, conditioners, hair lotions, hair conditioning creams, hair gels, hair sprays, hair color, hair tint and hair mousse," in International Class 3, with a disclaimer of HIGHLIGHTS apart from the mark as a whole.    [Application filed March 27, 2001; Registered March 26, 2002.]

---

opposition is deemed amended to conform to the evidence under FRCP 15(b).

Opposition No. 91125739

- Registration No. 2707751 for the mark **WILD SEXY HAIR** for "hair care products for men, women, and children, namely hair shampoos, hair conditioners, hair lotions, hair cremes, hair gels, hair sprays, hair color, hair dyes, hair rinses, hair mousse," in International Class 3, with a disclaimer of HAIR apart from the mark as a whole. [Application filed May 22, 2001; Registered April 15, 2003.]

- Registration No. 2757856 for the mark shown below for "hair care products for men, women and children, namely hair shampoos, hair conditioners, hair lotions, hair cremes, hair gels, hair sprays, hair color, hair dyes, hair rinses, hair mousse," in International Class 3, with a disclaimer of HAIR apart from the mark as a whole. [Application filed June 10, 2003; Registered September 2, 2003.]



Opposer produces and distributes its own brands of hair care products (Mark Stiller discovery deposition "Stiller" at 9). Opposer's founder and CEO is Michael O'Rourke, a celebrity hair stylist. Mr. O'Rourke has an artistic team of about twenty people that assist him in putting out two haircut collections per year. He appears with opposer's hair care products at various celebrity events and in various media, including on television programs such as *Good Morning America* (Donna Federici testimonial deposition "Federici" at 17, 73). He also arranges for product placement of opposer's hair care products in movies and on

Opposition No. 91125739

television shows such as *The Tonight Show with Jay Leno* and *Queer Eye for the Straight Guy* (Stiller at 36-37).

Opposer first developed the SEXY HAIR mark in 1998 and shipped its first product, a root pump, under the mark BIG SEXY HAIR in December 1998. In 1999, it expanded the BIG SEXY HAIR line to include additional products, and added additional brands, STRAIGHT SEXY HAIR and SHORT SEXY HAIR, each including approximately four to six different products. Additional brands, all featuring a number of products that have been added include CURLY SEXY HAIR (2000), HEALTHY SEXY HAIR (2001), WILD SEXY HAIR (2002), SILKY SEXY HAIR (2003), and HOT SEXY HAIR (2003). (Stiller at 11-16, 68.) For example, products under opposer's STRAIGHT SEXY HAIR line include Arrow Straight, Smooth and Seal, and Straight Shampoo and Conditioner (Federici at 33). While opposer has a few other hair care product lines that do not use SEXY as part of their marks, the product lines that use SEXY as part of their marks make up 90% of opposer's business, and this percentage increases each year (Stiller at 20). At the time of trial, opposer had sixty products identified by marks that include the term SEXY (Federici at 45).

Opposer sells its hair care products through distributors to professional salons and directly to professional salon chains. Opposer sells approximately 20-30% of its products directly to salon chains including

6

Opposition No. 91125739

Regis, Ulta, Beauty Brands, JC Penney, Dollar Cuts and
Beauty First. (Stiller at 40-41, 87.)  Salons usually offer
and sell a variety of hair care products from different
manufacturers to their clients, the general consumer (id. at
40); and the salons use a small percentage of the hair care
products they buy at wholesale in rendering hair care
services to their clients (id. at 43).  Opposer does not
have data concerning the percentage of its products used by
salons in rendering their services and the percentage sold
directly to the salon's customers; nor does opposer have
data pertaining to consumers' awareness of the brand of hair
care products used by a salon in rendering its services.

Opposer's shampoos sell at retail for approximately $6-
7; and its styling products sell at retail for approximately
$18-19 (id. at 46).  Opposer's products are mid-priced among
professional brands.  Opposer's principal competition
consists of hair care products sold through salons, such as
TG, Redken and Sebastian, as well as the professional salon
lines of L'Oreal and Wella hair care products. (Id. at 47.)
There is a small and regular, but unapproved, diversion of
opposer's products to mass retailers such as Target, Wal-
Mart and CVS for sale directly to consumers (id. at 31).

Opposer's sales of its hair care products identified by
marks including the term SEXY to its professional clients
are substantial, increasing from $15 million in 2001 to

Opposition No. 91125739

anticipated sales of $34 million in 2004.  International
sales comprise less than 15% of these totals.  For the ten
months ending October 2003, opposer's net sales were
approximately $27 million, which translates into
approximately $50 million in sales by distributors to
salons, which is approximately $100 million in sales by
salons to consumers.  (Id. at 41-44).

     Opposer conducts substantial advertising and promotion
directed to salons, hair stylists and general consumers.
Its promotional activities include distributing point-of-
purchase displays and bi-monthly promotional materials for
display by, as well as giving samples to, its professional
clients; advertising in professional magazines such as
*Modern Salon* and *American Salon*, and in consumer magazines
such as *Seventeen*; personal and television appearances with
the products by Michael O'Rourke; maintaining an
informational website; providing booths at trade shows;
holding regular educational seminars and demonstrations for
professional hair stylists; and sponsoring a variety of
events and donating to charities (See Stiller at 22-37;
Federici at 65-80).

     The packaging for opposer's products identified by
marks including the term SEXY is consistent among the
aforementioned brands.  The containers are generally uniform
in appearance.  Most containers for the various products

8

Opposition No. 91125739

include a small depiction of the mark shown in Registration

No. 2757856, SEXY HAIR CONCEPTS and star design.  All marks

appear in the same lower-case font with SEXY appearing in a

different color from other wording in the mark, the marks

appear vertically down the side of the packaging (originally

the marks appeared horizontally), and each brand has

distinctive package coloring.  (Stiller at 17-19.)  For

example, STRAIGHT SEXY HAIR products are in silver packaging

and BIG SEXY HAIR products are in red packaging (Federici at

36).

     The record includes print advertisements and promotions

by opposer that show its various brands of products

identified by marks including the term SEXY together and

also as a business name or mark SEXY HAIR CONCEPTS.

(Stiller exhibits 5-10; Federici exhibits 36-43, 56-59 and

101-106.)  For example, Stiller exhibits, consisting of

promotional materials directed to professionals and salons,

include the following:

     2001 promotional material consisting of several
     pages directed to professionals.  It includes the
     following copy on the first page:  "Sexy Hair
     Concepts presents Sexy Package Deals for 2001!"
     and "Carry your SEXY with Style!"  One of the
     products listed in the promotional package is "The
     Sexy Stylist Kit," which includes products from
     the BIG SEXY HAIR, STRAIGHT SEXY HAIR, SHORT SEXY
     HAIR, CURLY SEXY HAIR, and HOT SEXY HIGHLIGHTS
     lines, as well as a "Sexy Hair Concepts Stylist
     Bag."  (Exhibit 5)

     July/August 2002 promotional sheet directed to
     professionals advertises and pictures together the

Opposition No. 91125739

> BIG SEXY HAIR, STRAIGHT SEXY HAIR, HEALTHY SEXY
> HAIR, and CURLY SEXY HAIR shampoos and
> conditioners under the heading "STOCK UP NOW ON
> SEXY HAIR LITERS."  (Exhibit 6)

> January 2003 promotional material consisting of
> several pages, with the block lettering SEXY HAIR
> CONCEPTS (SEXY HAIR is one color and CONCEPTS is
> another) appearing vertically on the left-hand
> side of each page.  There are separate entries
> advertising WILD SEXY HAIR, SHORT SEXY HAIR,
> STRAIGHT SEXY HAIR and HEALTHY SEXY HAIR products,
> as well as an entry advertising together "liter
> duos" of shampoo and conditioner of all of the
> preceding brands.  (Exhibit 9)

> Magazine advertisement featuring a photograph of
> Michael O'Rourke showcasing three of the brands
> that include SEXY as part of the mark, showing
> several products from each product line – SHORT
> SEXY HAIR, BIG SEXY HAIR, and STRAIGHT SEXY HAIR.
> The advertisement includes the copy "IT'S ALL SO
> SEXY!"  (Exhibit 10)

Numerous articles in various publications ranging from
newspapers and magazines to trade publications refer to
opposer using the terms SEXY HAIR CONCEPTS and SEXY HAIR,
and refer to opposer's line of products as the SEXY HAIR
line (opposer's notice of reliance, September 17, 2004;
Federici exhibits 60-65).

The record also includes articles in consumer and
professional magazines that use the word "sexy" to discuss
various types of haircuts, hair styles and products
unrelated to opposer (Stiller exhibits A-L).

Opposer submitted excerpts of articles retrieved from
the Lexis-Nexis database (notice of reliance September 17,
2004).  Some of the excerpts refer to opposer as "Sexy Hair

Opposition No. 91125739

Concepts," and refer to its various hair care lines using the trademarks, such as SHORT SEXY HAIR. Some of these excerpts use the word "sexy" in a non-trademark manner unrelated to opposer. Some excerpts include both trademark and non-trademark uses of "sexy." The following are several examples:

"Michael O'Rourke formed **Sexy Hair** in 1999…" "The trendy edge led JCPenney to stock his wares, adding the **Big, Short and Healthy Sexy Hair lines.**" [*Los Angeles Daily News*, June 28, 2003.]

"You won't pass for a true Maui maid without a glass-like sheen to your hair, so we suggest **Sexy Hair Concepts' Straight Sexy Hair.**" [The Express, May 17, 2003.]

"**Sexy Hair Concepts** launched the Disruptive Texture Collection of haircuts …" "**John Paul Mitchell Systems features sexy looks** this spring such as Tousled Texture…" [*Household and Personal Products Industry*, May 1, 2003.]

Article about the Chicago Midwest Beauty Show includes the following statements: "The booth of **Italian company Dawa** was doing a brisk business in flat irons with interchangeable patterned inserts, **including some with the word 'sexy,'** and had none left by the end of the show's second day." and "At **Sexy Hair Concepts**, a new product line called **Wild Sexy Hair** was being promoted …." [*Chicago Tribune*, March 12, 2003.]

Article about Catherine Zeta-Jones' role in the movie "Chicago" includes reference to a **Sexy Hair Concepts** product used to style her wig, and a reference to her **garters** worn as part of her costume. The costume designer is quoted as saying, "I made the ones in the film, but **Victoria's Secret has a very sexy line** of them right now." [*CNN.com*, December 27, 2002.]

An article entitled "The hair care market: Hundreds of competing hair care brands answer increasingly diverse needs" includes the following: "This month **Sebastian** launched three new Raw hair products under the Xtah

11

Opposition No. 91125739

> line …. **Xtah Loose Locks separates the hair with a flexible, sexy and 'undone' look."** and "Sexy Hair Concepts … introduced its new Healthy Sexy Hair Moisture Collection …."     [*Household and Personal Products Industry*, December 1, 2002.]
>
> An article entitled "Hair Styling Update" includes the following statement about a study: "According to a study conducted by Yale University … hair style can communicate a wide variety of perceived character traits, from intelligence to **sexiness** to whether the wearer may be the correct candidate for a job or trustworthy enough to date. … The images showcased a variety of hairstyles which were rated by the respondents on a scale of one to six using adjectives: **sexy,** intelligent, outgoing, self-centered …."  The same article discussed various hair products, including reference to **"Sexy Hair Concepts,"** naming several of its **SEXY HAIR** lines.

Opposer does not use the word "sexy" alone as a mark (Federici at 180), although opposer does use promotional language suggesting that use of its products will result in sexy hair (see Federici exhibits S-U).  Opposer's senior vice president for sales and marketing, Donna Federici, stated her view that "sexy" is an emotional trigger word that is intended to motivate a buyer and, as such, is a powerful marketing tool (Federici at 143-148).

Applicant also submitted excerpts from numerous publications, including both publications directed to hair salon professionals and publications directed to the general consumer, that show use of "sexy" and "sexy hair" both in reference to hair generally and to opposer (notice of reliance, February 10, 2005).  The following are several examples:

Opposition No. 91125739

An article entitled "Love Sexy" in *Hairdressers Journal International* (January 11-17, 2002) is about opposer's SEXY HAIR products. It pictures together products from opposer's different brands that include the term SEXY in the mark, and calls them "The Sexy Hair Concepts Range."

An article entitled "Too Sexy" in *American Salon*, (March 2001) quotes opposer's CEO, Michael O'Rourke as stating "Sexy hair is exactly what we are about and I believed it was time to own it."

Opposer's senior vice president for sales and marketing, Donna Federici, is quoted in *Modern Salon*, (March 2001) as stating "The word 'sexy' is a powerful marketing tool … It allows the consumer to drum up connotations on a very personal level."

An article in *Salon* (April 2001) entitled "Size Matters" discusses and quotes several celebrity hair stylists, including Michael O'Rourke. It includes the following statement: "This season Irvin Rusk has 'come hither' hair on his mind. Separated, loose locks with heaps of volume are the sexiest according to this style maverick…"

A make-over article in *Allure* (August 2002) entitled "The Beauty Insider," states "Allure found this Dallas student sipping coffee and gave her look a jolt with sexy curls and gleaming skin."

The cover of *Allure* (April 2001) includes the statement "Fresh Sexy Hair - Hollywood's Best Styles".

The cover of *Mademoiselle* (September 1998) includes the statement "Sexy Hair and Make-Up for a Melt-Proof Summer."

The cover of *Cosmopolitan* (undated) includes the statement "Super Sexy Ideas for Hair, Eyes, Mouth, Cleavage."

A sub-heading in an article entitled "Red Hot Hair" in *Redbook* (February 2000) is entitled "Sexy-Smelling Shampoos He'll Love."

Opposition No. 91125739

    An article entitled "Flaw Fixing Styles" in
    *Redbook* (October 2000) includes reference to
    "Sexy, Casual Hair."

Turning to applicant, the Victoria's Secret franchise, of which applicant is a part, includes a range of clothing and beauty products sold in its own lingerie stores and beauty stores, as well as catalog and Internet sales. Applicant considers its Victoria's Secret beauty products to be competitive with both the mass and prestige markets and priced between the two markets. (Sherry Helene Baker discovery deposition "Baker DD" at 44-46, 69.) These beauty products are sold only through its 500 Victoria's Secret beauty stores, of which about 100 are freestanding stores, about 300 are next door to Victoria's Secret lingerie stores, and about 100 are niches within Victoria's Secret lingerie stores (id. at 47-48). Between 1999 and April 2002, the only Victoria's Secret products that included "sexy" in the brand name were VERY SEXY FOR HIM, a fragrance for men, and a nail enamel color (id. at 12). Since April 2002, Victoria's Secret has launched a fragrance collection for women, the SEXY SECRETS COLLECTION, consisting of five different scents, including VERY SEXY FOR HER, and the VERY SEXY color (cosmetics) collection (id. at 12-13, 29-31).

Applicant's marketing image is intended to be consistent across the entire franchise and portrays young women as sophisticated, glamorous, and sexy. Applicant and

14

Opposition No. 91125739

its related companies own several trademark registrations for marks including the term "sexy," such as BEACH SEXY, THE NEW SHAPE OF SEXY, and VERY SEXY, for various products, none of which include hair care products (applicant notice of reliance, February 10, 2005). Applicant's aspirational target market is educated, single, urban women in their mid-twenties, although its actual market is much broader, encompassing essentially all general consumers. (Baker testimonial deposition "Baker TD" at 13-14, 36.) To demonstrate its image-marketing, applicant submitted sample pages from various Victoria's Secret catalogs[5] dating back to at least 1997 that include the following copy:

- "Very Sexy Lingerie Collection" (IBC 0430),
- "The Very Sexy Plunge Bra, The New Shape Of Sexy" (IBC 0426),
- "8 super sexy panties any 3 for $30" (IBC 0445),
- "Its all about a sexy look and how to get it." (IBC 0558),
- "Drop Dead Sexy and Very Comfortable" (IBC 0560),
- "Sexy Gowns & Chemises save $10 each" (IBC 0573), and
- in its 2002 Christmas catalog, copy stating "A Very Sexy Christmas" (IBC 0424).

Applicant began discussing the development of a line of hair care products at the end of 2002 (id. at 17-18), test marketed the resulting products under the brand SO SEXY in

---

[5] Many of the catalogs submitted by applicant are its "London" catalogs and, as there is no indication that these were distributed in the United States, they are of no probative value.

Opposition No. 91125739

sixty to ninety stores (Kathi Van Zandt testimonial
deposition "Van Zandt" at 18-19), and launched the product
with a press release in the fall of 2004 (Baker TD at 22-23,
49-50). Since at least 1999 and prior to the product
launch, applicant did not sell hair care products under the
"sexy" mark, although an earlier hair care line was marketed
under the brand VICTORIA'S SECRET GARDEN. The SO SEXY line,
as tested, consists of six styling aids and eight shampoos
and conditioners (id. at 23-25), and the packaging appears
in different shades of pink because pink is part of
Victoria's Secret's "iconic imagery" (id. at 25). Applicant
decided not to name the individual products in the line in
order to emphasize the SO SEXY name (id. at 39-40). The
product packaging includes the statement "Everyday, sexy
hair, so shiny, so touchable, SO SEXY" (Van Zandt at 21;
Exh. AA). At the time of trial, applicant had done no
advertising of this product in any media (Baker TD. at 50).
However, applicant did use a shelf-talker (Van Zandt Exh.
BB)[6] in the test stores and sent a direct mail announcement
to store credit card holders (Van Zandt at 23, Exh. DD).
Opposer submitted an excerpt from an article in the August
2004 edition of *Marie Claire*, a beauty magazine, entitled
"What's Hot." The article includes a paragraph about

---

[6] The shelf-talker includes, in part, the following language: "New!  So
Sexy products offer everyone sexy hair everyday."

Opposition No. 91125739

Victoria's Secret's new SO SEXY hair care products entitled "Secret to Sexy Hair."

Applicant considers its competitors in the hair care products field to include Pantene, Herbal Essence, Paul Mitchell, Nexxus, Redken and Clinique (applicant's answers to interrogatories, no. 14, October 15, 2002).

Victoria's Secret launched another line of hair care products in 2004 identified by the trademark GARDEN SENSUOUS SHINE and sold in the same stores as the SO SEXY line (id. at 33). Applicant has decided that any additional hair care product lines it adds will not be marketed under the SO SEXY mark (Baker TD at 52).

*Analysis*

*Standing.*

Because opposer has properly made its pleaded registrations of record, and because opposer's likelihood of confusion claim is not frivolous, we find that opposer has established its standing to oppose registration of applicant's mark. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); and *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

*Priority.*

Opposer's pleaded registrations are of record and, therefore, Section 2(d) priority is not an issue in this

Opposition No. 91125739

case as to the marks and goods covered by said registrations. *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). Moreover, the evidence shows that opposer began using several of its marks, including, at least, BIG SEXY HAIR (1998) and HEALTHY SEXY HAIR (2001), prior to the filing date of applicant's intent-to-use application on November 19, 2001, which is the earliest date on which applicant can rely.

*Likelihood of Confusion*.

Our determination of likelihood of confusion under Section 2(d) must be based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic Distilling Company, Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); and *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997). In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by Section 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24,

Opposition No. 91125739

29 (CCPA 1976).  *See also In re Azteca Restaurant Enterprises, Inc.,* 50 USPQ2d 1209 (TTAB 1999) and the cases cited therein.

We turn first to the *du Pont* factor of the similarity of the goods.  Opposer contends that the goods, all of which are hair care products, are essentially identical. Applicant does not dispute opposer's contention.  In fact, there is a substantial overlap in the goods identified in the application and in the pleaded registrations.  The following goods are identical:  hair conditioner, hair dyes, hair rinses, hair shampoo, hair spray, hair styling gel and hair styling mousse.  Applicant's goods identified as "hair highlighter, hair mascara, hair pomade, hair straightener" are hair care products closely related to the hair care products identified in opposer's registrations because each product is used to care for or style hair, as are opposer's products.  The remaining identified product, "hair removing creams," is also a hair care product and, as such, it is sufficiently related to opposer's hair care products that, if identified by a similar mark, confusion as to source is likely.  Thus, we conclude that the goods of the parties are either identical or related products.  This factor clearly favors opposer.

Applicant contends that the parties' respective channels of trade are different because its products are

Opposition No. 91125739

sold only in its own stores to retail purchasers; whereas,
opposer's products are primarily sold directly to
professional hair salons and to distributors who, in turn,
sell to professional hair salons; and that there is no
evidence of the extent to which retail consumers are aware
of opposer's brand on such goods.  Applicant contends that
the classes of purchasers for the parties' goods are
different because the targeted purchasers of its goods are
"sophisticated and highly educated" and opposer's products
"are distributed through professional hair salons and also
directed towards a discriminating clientele."  [Brief, p.
37.]

     However, both opposer's and applicant's identifications
of goods are broadly worded, without any limitations as to
channels of trade or classes of purchasers.  We must presume
that the hair care products of the applicant and opposer are
sold in all of the normal channels of trade to all of the
usual purchasers for goods of the type identified.  *See*
*Canadian Imperial Bank v. Wells Fargo*, 811 F.2d 1490, 1
USPQ2d 1813 (Fed. Cir. 1987).  In other words, we conclude
that the channels of trade and classes of purchasers of the
parties' goods are the same.

     Moreover, while the record establishes that opposer
markets and sells its products to professional salons, in
addition to using the products on their clients,

Opposition No. 91125739

professional salons sell these products as labeled by
opposer to their clients.  Some of opposer's advertising is
clearly directed to this retail consumer.  Regarding
applicant, while the evidence shows that its identified
goods are currently sold only through its own stores, the
identification of goods, which determines our decision, is
not so limited.

While professional salons are likely to be
sophisticated and knowledgeable purchasers of hair care
products, the evidence shows that salons carry hair care
products from a variety of different producers to sell at
retail to their clients, the general retail consumer.  There
is no evidence to warrant the conclusion that the parties'
overlapping retail purchasers of hair care products are
highly sophisticated or particularly discriminating as to
such purchases, or that the products are sufficiently
expensive that they would be purchased with a high degree of
care.  Therefore, the factors of the trade channels and
classes of purchasers favor opposer.

We turn to the *du Pont* factor of the similarity of the
marks.  Opposer claims a family of marks based on the common
term SEXY.

> A family of marks is a group of marks having a
> recognizable common characteristic, wherein the
> marks are composed and used in such a way that the
> public associates not only the individual marks,
> but the common characteristic of the family, with
> the trademark owner. Simply using a series of

21

Opposition No. 91125739

> similar marks does not of itself establish the
> existence of a family. There must be recognition
> among the purchasing public that the common
> characteristic is indicative of a common origin of
> the goods.  It is thus necessary to consider the
> use, advertisement, and distinctiveness of the
> marks, including assessment of the contribution of
> the common feature to the recognition of the marks
> as of common origin.

*J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460,

18 USPQ2d 1889, 1891 (Fed. Cir. 1991).  Opposer contends

that it has established a family of marks with the term SEXY

as the common element of its family; that its SEXY marks are

inherently distinctive; and that "SEXY does not immediately

or directly describe any specific quality or characteristic

of hair care products" (brief, p. 11).  On the other hand,

applicant contends that opposer has not met the requirements

for establishing a family of SEXY marks and, further, that

it cannot claim a family of SEXY marks because SEXY is a

laudatory and commonly used term for the identified

products.

   We consider, first, applicant's contention that "sexy"

cannot function as the common element of a family of marks

because, essentially, it is not inherently distinctive in

connection with hair care products.[7]  There is ample

evidence submitted by both parties (see factual findings,

supra) that "sexy" is an adjective that is used in

---

[7] Because opposer does not own a registration or use a mark consisting
of only the word "sexy," we do not consider this argument a collateral
attack, in the absence of a counterclaim, on opposer's registrations.

Opposition No. 91125739

connection with hair; and that "sexy" is a qualitative term applied to a wide variety of things. However, the record does not establish that "sexy" is merely descriptive or only laudatory with respect to hair care products. We take judicial notice of the definition in *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) of "sexy" as "1. sexually suggestive or stimulating: erotic. 2. generally attractive or interesting: appealing." "Sexy" is, at most, suggestive of an amorphous, yet desirable, quality of hair or hair care products. The advertising and articles of record clearly imply that a purchaser or reader should desire "sexy hair"; but it is not clear that "sexy hair" is a specific quality that means the same thing to all people. Particularly with respect to opposer's products, "sexy hair" could be straight, or curly or wild; or it could pertain to hair length, color or texture. The record does not establish a direct connection between the term "sexy" and a specific quality, characteristic, function, ingredient, attribute or feature of the identified hair care products or of hair after the use of these products. Therefore, "sexy" is, at most, a suggestive term that is inherently distinctive in connection with the identified goods.

Recognition of a family of marks is achieved when the pattern of usage of the common element is sufficient to be

Opposition No. 91125739

indicative of the origin of the family. Id. In the present case, the evidence clearly establishes that opposer promotes a group of marks for which the common characteristic is the term "sexy." Except for the mark SEXY HAIR, opposer's family of marks is characterized by the term SEXY preceded by a word that suggests an intended result of the product and followed by a generic noun in the hair care field (e.g., SEXY HAIR, BIG SEXY HAIR, STRAIGHT SEXY HAIR, SHORT SEXY HAIR, HEALTHY SEXY HAIR, HOT SEXY HAIR, WILD SEXY HAIR, HOT SEXY HIGHLIGHTS).

The evidence establishes that consumers are likely to view marks following this pattern as having a common origin. Opposer advertises and promotes together its marks containing the word SEXY. For example, the different "SEXY" brands and their respective products are shown together on television, at trade shows, demonstrations, and seminars, and in promotional brochures for professional clients (see factual findings, supra). The SEXY element is emphasized by the use of different fonts and colors for the SEXY or SEXY HAIR portion of opposer's marks on packaging and in promotional materials. In addition to using the particular SEXY brand on products in promotional materials and advertising, opposer uses SEXY HAIR CONCEPTS or SEXY HAIR CONCEPTS and star design (with SEXY appearing larger and in a different font than other wording) on most packaging and

Opposition No. 91125739

promotional materials across all SEXY brands, thereby reinforcing opposer's portrayal, and the likely perception by consumers, of SEXY as a common element among numerous hair care products from the same source. Opposer's significant advertising in this manner has resulted in periodicals discussing several of the SEXY brands together in articles about hair care and referring to the various brands as the SEXY HAIR or SEXY HAIR CONCEPTS "collection" or "line" of products (see factual findings, supra). We are persuaded that opposer has established a family of marks based on the common element SEXY.[8]

We consider, next, the strength of opposer's family of marks. Applicant would have us consider this question in the context of all "beauty products" rather than in the context of the more limited field of "hair care products." It is clear that applicant has used the term "sexy" in a non-trademark manner for many years both to cultivate its image[9] and as a trademark in connection with lingerie and, more recently, with fragrances. Third parties have also used this term suggestively. However, we are not persuaded

---

[8] Although opposer pleaded likelihood of confusion with respect to several of its individual marks as well as its family, its brief discusses likelihood of confusion only with respect to its family of marks, and we will therefore do the same.

[9] Applicant contends that "the notion that its products are "sexy" is critical to its image and brand"; and that "[s]ince using 'sexy' as a marketing enticement is hardly novel or exclusive to any one company, [applicant] takes great care in fashioning a total brand and marketing image that is unique." [Brief, p. 6]

Opposition No. 91125739

by applicant's argument.  Not only is the record unclear as
to the nature and scope of "the field of beauty products,"
but applicant's and opposer's respective goods are limited
to hair care products that are either identical or closely
related.  Thus, we continue our consideration of the issue
of likelihood of confusion, including determining the
strength of the involved marks, in the context of the field
of hair care products.

Applicant contends that marks using the term "sexy" are
entitled to only a narrow scope of protection "preclud[ing]
any one company in the beauty field from claiming any
exclusivity to such term," apart from use in combination
with other terms in a mark. [Brief, p. 4.]  The record shows
non-trademark use by third parties of the suggestive term
"sexy" in writings about hair care.  However, limiting
ourselves to the field of hair care, the record contains
few, if any, third party trademarks that include the term
"sexy" for hair care products, other than opposer's family
of marks and applicant's proposed mark.  Further, the use of
the term "sexy" as part of a mark, even in the expanded
field of all beauty products, does not defeat or limit
opposer's family of marks characterized by the term SEXY
preceded by a word that suggests an intended result of the
product and followed by a generic noun in the hair care
field.  Thus, opposer's family of marks is entitled to the

Opposition No. 91125739

scope of protection normally accorded a family of marks for
whom the common element is a suggestive, rather than an
arbitrary, term, i.e., a more limited scope of protection
than for an arbitrary mark. *See Motorola, Inc. v. Griffiths
Electronics, Inc.*, 317 F.2d 397, 137 USPQ 551, 553 (CCPA
1963) ("As a matter of logic it would seem to us that if
opposer has a family of six marks all starting with the
[same] word …, it still has that family notwithstanding
there may be some others using the same word").

Regarding the parties' respective marks, opposer argues
that the parties' marks are substantially similar because
SEXY is the dominant element of applicant's mark as well as
of its family of marks; that VICTORIA'S SECRET forms no part
of applicant's mark and should not be considered a
distinguishing feature; and that the other components of
opposer's marks are generic terms and, thus, the "emotive
imagery" conveyed by its SEXY marks and applicant's SO SEXY
mark is the same.

Applicant argues that the parties' marks are
"strikingly different" in appearance [brief, p. 27], noting
that the packaging for the parties' products is distinctly
different; and that the connotations of the parties'
respective marks is very different.

Opposer is correct that we will not consider VICTORIA'S
SECRET as a distinguishing feature of applicant's mark, nor

Opposition No. 91125739

will we consider the packaging of applicant's products, as neither forms a part of the mark in the instant application.

In comparing opposer's marks with applicant's mark, the question is not whether applicant's mark is similar to opposer's individual marks, but whether applicant's mark would be likely to be viewed as a member of opposer's SEXY family of marks. *The Black & Decker Corporation v. Emerson Electric Co.,* ___ USPQ2d ___, Opposition No. 91158891, March 23, 2007 (TTAB). We agree with opposer that SEXY is the dominant element of applicant's mark, as well as the dominant element of opposer's family of marks and each individual mark. The terms preceding SEXY in opposer's marks suggest an intended result of the product (e.g., CURLY, STRAIGHT, HEALTHY). We take judicial notice of the definition in *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) of "so" as "to a great extent or degree: very, extremely." Applicant's mark, SO SEXY, can also be described as the term SEXY preceded by a word that suggests an intended result of the product, i.e., that the user's hair will be "so," or "very," SEXY. This is the same pattern that is used in opposer's family of marks. Although all but one of opposer's marks include the term HAIR following SEXY, neither party disagrees that "hair" is a generic term in connection with the identified hair care products. Thus, even though applicant's mark does not

Opposition No. 91125739

include the term HAIR, it is the only possible object of the phrase SO SEXY.

We find that applicant's mark contains the same element, SEXY, that is common to all of opposer's family of marks and that, as discussed above, its mark also follows the common pattern present in opposer's family of marks so that applicant's mark is substantially similar to opposer's family of marks. This element of the similarity of the parties' marks favors opposer.

Finally, applicant argues that it is unaware of any instances of actual confusion between its mark and opposer's marks. However, while the record shows that applicant has made some use of its mark, the application remains based on intent-to-use. The record contains no indication that the nature and scope of applicant's and opposer's actual use of their marks have been such as to have created any meaningful opportunity for actual confusion to occur. The absence of actual confusion, under the seventh *du Pont* factor, therefore is counterbalanced by the absence of evidence of any opportunity for actual confusion to have occurred, under the eighth *du Pont* factor.

Therefore, we conclude that applicant's mark, SO SEXY, for hair care products is sufficiently similar to opposer's family of marks, for identical and related hair care products, that it is likely to be perceived as part of

Opposition No. 91125739

opposer's SEXY family of marks and, thus, confusion as to source is likely.

    *Decision*:  The opposition is sustained.

## VICTORIA'S SECRET'S "SEXY" TRADEMARKS

| Mark | Class | Serial No. | Registration No. |
|---|---|---|---|
| ALL MY SEXY SPOTS | 3 | 78/806,917 | |
| SEXY MARKS THE SPOT | 3 | 78/778,877 | |
| VERY SEXY NOW | 3 | 78/739,347 | |
| SEXY SPORT | 3, 25, 35 | 78/745,857 | |
| SEXY IN BLOOM | 3 | 78/835,371 | |
| PURELY SEXY | 3 | 78/725,038 | |
| STRICTLY SEXY | 3 | 78/350,729 | |
| VICTORIA'S SECRET SEXY ANGELS | 3 | 78/318,238 | |
| SEXY SPA | 3 | 78/284,376 | |
| SO SEXY | 3 | 78/094,035 | |
| SPASEXY | 3 | 78/284,375 | |
| VERY SEXY SEXY SHEERS | 25 | 78/905,688 | |
| VS SEXY SPORT | 3, 25, 35 | 78//745,850 | |
| VICTORIA'S SECRET SEXY SPORT | 3, 25, 35 | 78/45,840 | |
| SEXY LITTLE NOTHINGS | 35 | 78/922,293 | |
| SEXY LITTLE THINGS | 3 | 78/827,149 | |
| RADIATE SEXY | 3 | 78/627,334 | |
| SEXY LITTLE SHOPPER | 18 | 78/617,134 | |
| SEXY BOUDOIR | 3, 25, 35 | 78/916,493 | |
| SINFULLY SEXY GUM | 30 | 78/589,543 | |
| EFFORTLESSLY SEXY | 25, 35 | 78/925,186 | |
| SINFULLY SEXY MINTS | 30 | 78/589,564 | |
| SAY HELLO TO MY SEXY LITTLE DREAM CREAM | 3 | 78/788,115 | |
| SEXY EVERYDAY | 3 | 78/829,731 | |
| EVERYDAY SEXY | 3 | 78/806,921 | |
| SEXY LITTLE MINTS | 30 | 78/589,604 | |
| SEXY LITTLE LOLLIPOP | 30 | 78/687,527 | |
| SEXY LITTLE SWEETS | 30 | 78/627,518 | |
| VERY SEXY HOT | 3 | 78/929,962 | |
| SINFULLY SEXY CHOCOLATE | 30 | 78/650,160 | |
| SEXY LITTLE THINGS | 25, 35 | 78/515,089 | 3,161,607 |
| SEXY LITTLE NOTHINGS | 25 | 78/908,658 | |
| LOVE ME, SEXY BLUSH | 3 | 78/904,199 | |

**EXHIBIT B**

| Mark | Class | Serial No. | Registration No. |
|---|---|---|---|
| 21ST CENTURY TECHNOLOGY. 21ST CENTURY SEXY. | 35 | 78/589,063 | 3,068,023 |
| FOREVER SEXY | 3, 25 | 78/215,198 | |
| BEDROOM SEXY | 3, 4, 16, 20 | 78/241,052 | |
| SEXY BY VICTORIA | 25 | 78/295,947 | |
| SEXY CHEEKS | 3 | 78/086,953 | |
| BACKSTAGE SEXY | 3 | 78/479,393 | |
| SEXY IS BUILT RIGHT IN | 35 | 78/458,329 | 3,115,127 |
| BEACH SEXY | 25 | 78/107,587 | 2,754,457 |
| SEXY SUPPORT | 25 | 78/085,820 | 2,776,825 |
| COUTURE SEXY | 3 | 77/033,449 | |
| VERY SEXY | 3 | 76/234,513 | 2,946,353 |
| VERY SEXY | 25 | 76/976,443 | 2,849,071 |
| VERY SEXY | 3, 25 | 76/975,225 | 2,725,765 |
| THE NEW SHAPE OF SEXY | 25 | 75/745,799 | 2,488,663 |

**EXHIBIT B**