UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | : | No. 07-cv-5804 (GEL) |
| Plaintiff, | : | |
| v. | : | |
| SEXY HAIR CONCEPTS, LLC, | : | |
| Defendant. | : | |

**MOTION IN LIMINE OF DEFENDANT SEXY HAIR CONCEPTS, LLC,
TO PRECLUDE SURVEY AND EXPERT REPORT OF MICHAEL B. MAZIS, Ph.D.**

Defendant Sexy Hair Concepts, LLC ("SHC"), through its attorneys Eckert Seamans Cherin & Mellott, LLC, moves this Court to preclude the survey and expert report of Dr. Mazis. In support thereof, SHC avers as follows:

1. This is an appeal from the decision of the Trademark Trial and Appeal Board ("TTAB") sustaining the opposition of SHC to the application of Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret") to register the mark, SO SEXY, for use in connection with various hair care products.

2. SHC produces and distributes its own brand of hair care products.

3. In connection with its business, SHC is the owner of the mark, SEXY HAIR, (Registration No. 2403396) which it has used for hair care products since at least June 15, 1998, and has so used the mark in commerce since at least December 21, 1998.

4. SHC is also the owner of five additional registrations which are also used in connection with its hair care products, as follows:

- Registration No. 2472793 for the mark FORMULAS BY ECOLY BIG SEXY HAIR;

- Registration No. 2486702 for the mark illustrating the SEXY HAIR design;

- Registration No. 2553996 for the mark HOT SEXY HIGHLIGHTS;

- Registration No. 2707751 for the mark WILD SEXY HAIR; and

- Registration No. 2757856 for the mark illustrating the SEXY HAIR CONCEPTS star design.[1]

5. Moreover, SHC owns a family of SEXY marks for hair care products and has used the marks and trade names SEXY HAIR CONCEPTS and SEXY HAIR since prior to November 19, 2001, in connection with hair care products. Included in the SEXY family of marks are: BIG SEXY HAIR, STRAIGHT SEXY HAIR, SHORT SEXY HAIR, HEALTHY SEXY HAIR, HOT SEXY HAIR, WILD SEXY HAIR, and HOT SEXY HIGHLIGHTS.

6. The TTAB found that Victoria's Secret's mark, SO SEXY, was sufficiently similar to SHC's SEXY family of marks for identical and related hair care products that there existed a likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

8. Victoria's Secret seeks to introduce a survey designed by Dr. Mazis ("Mazis Survey"). Dr. Mazis' Expert Report ("Mazis Report") is attached as Exhibit "A."

9. The Mazis Survey was purportedly designed to assess whether SHC's use of the word SEXY when associated with hair care products has attained secondary meaning. (Mazis Report, at 2).

10. However, the issue of secondary meaning is not before this Court. The issue of secondary meaning arises when the holder of a trademark registration is trying to establish that its descriptive mark has acquired secondary meaning and is therefore protectable. *See Tcpip Holding Co. v. Haar Communs.*, 244 F.3d 88, 93 (2d. Cir. 2001). Here, SEXY HAIR is the

---

[1] Included in the certificates of registration are "hair care products for men, women and children, namely hair shampoos, hair lotions, hair cremes, hair gels, hair sprays, hair color, hair dyes, hair rinses, hair mousse."

subject of an incontestable trademark registration; it cannot be challenged as a matter of law on the ground that it is descriptive. *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985). Thus, SHC is not trying to establish – nor does it have to – that SEXY HAIR has acquired secondary meaning. The survey completely misses the mark and has no probative value in determining the sole issue that is before this Court, which is whether the TTAB correctly determined that there is a likelihood of confusion between the SEXY HAIR name and mark and the SEXY family of marks and whether any new *material* facts require reconsideration of the TTAB's determination. *See* Johnson Decl., at ¶ 17, attached hereto as Exh. "B."

11. Therefore, the Mazis Survey and Dr. Mazis' expert report are irrelevant and immaterial and should be precluded pursuant to Fed. R. Evid. 402.

12. Even if secondary meaning were at issue in this case (which it is not), the Mazis Survey is fatally flawed in its methodology. When asking about associating the word SEXY with hair care products, it is unclear if the questioner is asking about a brand or the word SEXY in a descriptive sense. The sheer ambiguity of the questions renders the survey meaningless.

13. Moreover, the survey draws from the wrong survey universe; it employs an improper survey stimulus; it uses leading questions; and it fails to incorporate a control group or control question in order to measure the level of error or noise.

14. The flawed methodology renders the Mazis Survey useless and utterly unreliable in measuring whether the word "SEXY" has acquired secondary meaning.

15. Dr. Mazis' expert report based on the survey, therefore, fails to meet the standard of admissibility for expert testimony established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 1337 (1999) because it is not based upon reliable data or methodology.

WHEREFORE, defendant Sexy Hair Concepts respectfully requests that this Court grant the Motion in Limine and preclude Dr. Mazis' survey, expert report and testimony at the time of trial.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

DATED: MAY 2, 2008

By: _/s/ Roberta Jacobs-Meadway_
ROBERTA JACOBS-MEADWAY
Two Liberty Place
50 S. 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8522 (telephone)
(215) 851-8383 (facsimile)

Co-Counsel for Sexy Hair Concepts, LLC
Our File: 297797-00081

Cc: Philip Furgang, Esq.
FURGANG & ADWAR, LLP
1325 Avenue of the Americas
28th Floor
New York, NY 10019
Phone: (212) 725-1818

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | : | No. 07-cv-5804 (GEL) |
| Plaintiff, | : | |
| v. | : | |
| SEXY HAIR CONCEPTS, LLC, | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE OF
DEFENDANT SEXY HAIR CONCEPTS, LLC, TO PRECLUDE SURVEY
AND EXPERT REPORT OF MICHAEL B. MAZIS, Ph.D.**

Defendant Sexy Hair Concepts, LLC ("SHC") submits the following Memorandum of Law in support of its Motion in Limine to preclude the survey and expert report of Dr. Mazis.

**I.   STATEMENT OF THE CASE**

This matter arises from SHC's opposition to the application of Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret") to register the mark, SO SEXY, for use in connection with various hair care products. The Trademark Trial and Appeal Board ("TTAB") sustained SHC's opposition, finding that Victoria's Secret's mark, SO SEXY, was sufficiently similar to SHC's SEXY family of marks for identical and related hair care products that there existed a likelihood of confusion under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d). This appeal followed. Victoria's Secret now seeks to introduce a surveys designed by Dr. Mazis and his report which purports to summarize the results of the survey. SHC has filed the instant Motion in Limine to preclude Dr. Mazis' survey and expert report on the ground that it fails to meet the standard of admissibility for expert testimony established in *Daubert* and *Kumho Tire* because they are not based upon reliable data or methodology.

{M0640779.2}

## II. STATEMENT OF FACTS

### A. SHC's mark and hair care products.

SHC produces and distributes its own brand of hair care products. In connection with its business, SHC is the owner of the mark, SEXY HAIR, (Registration No. 2403396) which it has used for hair care products since at least June 15, 1998, and has so used the mark in commerce since at least December 21, 1998.

SHC is also the owner of the following registrations which are also used in connection with its hair care products:

- Registration No. 2472793 for the mark FORMULAS BY ECOLY BIG SEXY HAIR;

- Registration No. 2486702 for the mark illustrating the SEXY HAIR design;

- Registration No. 2553996 for the mark HOT SEXY HIGHLIGHTS;

- Registration No. 2707751 for the mark WILD SEXY HAIR; and

- Registration No. 2757856 for the mark illustrating the SEXY HAIR CONCEPTS star design.

Moreover, SHC owns a family of SEXY marks for hair care products and has used the mark and trade name SEXY HAIR CONCEPTS since prior to November 19, 2001, in connection with hair care, skin care and cosmetic products. Included in the SEXY family of marks are: BIG SEXY HAIR, STRAIGHT SEXY HAIR, SHORT SEXY HAIR, HEALTHY SEXY HAIR, HOT SEXY HAIR, WILD SEXY HAIR, and HOT SEXY HIGHLIGHTS.

### B. Mazis Survey

On behalf of Victoria's Secret, Dr. Mazis purportedly designed a survey which measures whether the word "SEXY" has acquired secondary meaning when applied to hair care products. Purported qualified respondents were males and females eighteen years of age and older who

have over the past six months purchased or expected to purchase over the next six months shampoo, conditioner, hair conditioning creme, hair gel, mousse, hair lotion, hair spray, hair color, hair tint or hair rinse. (Mazis Report, at 6) They were purportedly shown a card on which displayed the words "SEXY hair care products." (Exh. "G" to Mazis Report) Respondents were then purportedly asked whether they associated the word SEXY with hair care products from one company, more than one company, no company or whether they didn't know or had no opinion. (Mazis Report, at 4) Nearly two-thirds of respondents purportedly responded that SEXY hair care products is associated with no company (25.3%), or they indicated they did not know (22.4%) or that they did not have an opinion (17.9%). (*Id.* at 8) 18.8% of respondents purportedly responded that SEXY hair care products is associated with "one company," and 15.6% of respondents purportedly responded that SEXY hair care products is associated with "more than one company." (*Id.*) Based on these results, Dr. Mazis opines that SEXY when associated with hair care products has not acquired secondary meaning in the marketplace. (*Id.* at 9)

### III.   ARGUMENT

#### A.   Motion in Limine Standard.

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal quotation marks omitted). "A motion in limine to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2004 U.S. Dist. LEXIS 17791, 2004

WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004) (citing Fed. R. Evid. 104(a)). A district court's in limine ruling "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the . . . proffer." *Luce v. United States*, 469 U.S. 38, 41, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984).

The instant Motion asks the Court to determine the admissibility of Dr. Mazis' survey and expert report.

### B.   The Mazis Survey is Irrelevant.

As a threshold matter, the issue of secondary meaning of the word SEXY is not before this Court. Dr. Mazis' whole entire survey is based on a faulty premise. The issue of secondary meaning arises when the holder of a trademark registration is trying to establish that its descriptive mark has acquired secondary meaning and is therefore protectable. *See Tcpip Holding Co. v. Haar Communs.*, 244 F.3d 88, 93 (2d. Cir. 2001). SEXY HAIR is the subject of an incontestable trademark registration; it cannot be challenged as a matter of law on the ground that it is descriptive. *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985). Thus, SHC is not trying to establish – nor does it have to – that SEXY HAIR is a famous mark or that it has acquired secondary meaning in the marketplace. Because SEXY HAIR is conclusively presumed to be valid and entitled to protection, any purported evidence of its lack of secondary meaning in the marketplace is as a matter of law wholly immaterial; the survey has no probative value to any fact at issue; and its admission will only serve to prejudice SHC and confuse the trier of fact. The Mazis Report and survey should be excluded as irrelevant and immaterial under F.R.E. 402.[2]

---

[2] While SHC submits that the irrelevancy of the Mazis Survey is sufficient to end the analysis, it will, in an abundance of caution, set forth the reasons as to why Dr. Mazis' survey and report fail to pass muster under *Daubert*.

## C. Standard for admissibility of expert opinion testimony.

The admissibility of expert testimony in federal courts is governed by Fed. R. Evid. 702 which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 governs the district court's responsibility to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. *Kumho Tire* clarified that a district court should play a gatekeeping role in determining the admissibility of not only scientific testimony, but also testimony based on technical or experience-based expertise. *Kumho Tire*, 526 U.S. at 152. Thus, under Rule 702, a district court must consider: (1) whether the witness is "qualified as an expert" to testify as to a particular matter; (2) whether the opinion proffered by the expert is based upon reliable data and methodology; and (3) whether the expert's testimony (as to a particular matter) will "assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). The party seeking to introduce expert testimony "bears the burden of establishing its admissibility." *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003).

## D. Dr. Mazis' Report is not based on reliable data or methodology.

Assuming Dr. Mazis is qualified to give an expert opinion, the Court must find that his opinion is based on reliable data and methodology and will assist the trier of fact. *Nimely*, 414 F.3d at 397. In other words, Dr. Mazis' opinion must withstand *Daubert* scrutiny. The issue before the court, therefore, is the reasonableness of Dr. Mazis' approach along with his method

of analyzing the data obtained through his survey to draw a conclusion regarding secondary meaning in the marketplace (assuming secondary meaning is even relevant, which it is not). The severe problems with his methodology seriously diminish the reliability and probative value of the survey. As explained more fully below, Dr. Mazis' survey draws from the wrong survey universe; it utilizes an improper survey stimulus; the questions are confusing, leading and biased; and there is no control group or control question to measure the level of noise. Many of the factors used by courts to help define when a survey has been properly conducted are simply absent here. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 225 (2d Cir. 1999); Manual for Complex Litigation, Third § 21.493 (1995); McCarthy on Trademarks and Unfair Competition § 32:181, at 32-272.

In short, Dr. Mazis' survey demonstrates critical methodological flaws so as to fall short of any measure of reliability under *Daubert* and *Kuhmo*.

    (1)    <u>Failure to survey an appropriate universe.</u>

To be probative and meaningful, a survey must rely upon responses from all potential consumers of the product in question. *See Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984) (citing *Dreyfus Fund Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108, 1116 (S.D.N.Y. 1981) (" 'To be probative and meaningful ... surveys ... must rely upon responses by potential consumers of the products in question.'"). "A survey of the wrong 'universe' will be of little probative value" in litigation. *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 119 (3d Cir. 2004) (quoting McCarthy on Trademarks and Unfair Competition § 32:159 (4th ed. 2003)).

Here, the Mazis Survey includes as potential respondents *any* males or females eighteen years of age and older, who had purchased in the prior six months or expected to purchase within

the next six months *any* brand of shampoo, conditioner, hair conditioning creme, hair gel, mousse, hair lotion, hair spray, hair color, hair tint or hair rinse. The survey universe is too broad for a number of reasons. First, Victoria's Secret and SHC sell their line of hair care products primarily to women. The Mazis Survey is inherently flawed in its inclusion of male respondents. Second, and more importantly, the Mazis Survey does not screen for respondents based on whether they could have been potentially exposed to the SEXY HAIR mark. Survey respondents were not screened to determine if they have purchased or were likely to purchase hair care products from a hair salon where SHC's hair care products are likely to be sold. The survey failed to limit respondents based on where they were to purchase their hair care products or at what price point. It is axiomatic that the persons interviewed must adequately represent the opinions which are relevant to the litigation. *Am. Basketball Ass'n v. AMF Voit, Inc.*, 358 F. Supp. 981, 986 (S.D.N.Y. 1973), aff'd 487 F.2d 1393 (2d Cir. 1973)). Clearly, the Mazis Survey universe is too broad to represent any opinion of relevance to the litigation. (Johnson Decl. ¶ 18, Exh. "B")

        (2)    <u>Failure to employ proper survey stimulus.</u>

The Mazis Survey is fatally flawed in its survey stimulus. To have substantial probative value, a survey, in addition to testing the proper universe, must also be designed to examine the impression presented to the consumer by the mark in issue. *See Conopco Inc. v. Cosmair, Inc.*, 49 F. Supp. 2d 242 (S.D.N.Y. 1999). Therefore, a survey must use the proper stimulus. *See Cumberland Packing Corp. v. Montsanto Co.*, 32 F. Supp. 2d 561, 575 (E.D.N.Y. 1999); *Conopco*, 49 F. Supp. 2d at 253.

Respondents in the Mazis Survey were purportedly shown the following survey stimulus, which appears substantially in the following form:

> **SEXY**
>
> **hair care products**

(Exh. "G" to Mazis Report)

This survey stimulus fails to test the word which is purported to be very subject of the study: SEXY. Rather, the exhibit displays the group of words "SEXY hair care products." When combined with "hair care products" the word SEXY as depicted appears to be an effort to position the term as descriptive. (Johnson Decl., at ¶ 21, Exh. "B") To establish secondary meaning, the holder of a mark must show that, in the minds of the public, the primary significance of a word or term is to identify the source of the product rather than the product itself. *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992); McCarthy on Trademarks and Unfair Competition at § 15:42. If the goal of Dr. Mazis was to test for secondary meaning in the marketplace, the survey stimulus should, at a minimum, expose potential consumers to an accurate depiction of the mark in issue (here, SEXY HAIR) to see if consumers identify the source of the product rather than the product itself.[3] The inclusion of the words "hair care products" on the stimulus is misleading and confusing and only serves to dilute the minimal probative value of the survey.

---

[3] SHC notes that it uses the words SEXY HAIR in connection with hair care products, not just the word SEXY by itself.

In short, the survey reveals nothing about consumer perception of the word "SEXY" as it relates to hair care products. (Johnson Decl., at ¶ 23, Exh. "B") To the extent that the survey has any significance at all, it indicates that "SEXY" has no meaning in connection with hair care products and conveys no specific "association" as a word in connection with hair care products. *See* Mazis Report, at 8, attached hereto as Exh. "A" indicating that over 65% of survey respondents did not associate "SEXY" with hair care products).

        (3)    <u>Failure to use unbiased and non-leading questions.</u>

The Mazis Survey is further unreliable because of its use of leading questions. (Johnson Decl., at ¶ 21, attached hereto as Exh. "B") When respondents are asked "Do you associate the word SEXY with hair care products from one company, more than one company, no company, you don't know or you have no opinion?" they have already been exposed to the exhibit with the phrase "SEXY hair care products." Thus, it is likely for respondents to interpret the question as "Do you think more than one company makes sexy hair care products (in whatever sense they may perceive the question)?" Or, respondents could interpret the question as "Does one or more than one company use the word SEXY on their hair care products (unclear as to whether that would be as a mark or as a description)?" These nuances can shape in vastly different ways how the respondents frame their responses after their exposure to an already-flawed survey stimulus. The fact that the questions are subject to multiple interpretations further undermines the reliability of the Mazis Survey. *American Home Products v. Johnson & Johnson*, 654 F. Supp. 568, 581 (S.D.N.Y. 1987), aff'd, 848 F.2d 34 (2d Cir. 1988) (survey not credible if it relies on leading questions which invite guessing by those who did not get any clear message at all).

The ambiguity is further underscored by the number of "I don't know" responses (22.4%) elicited by the question, "Do you associate the word SEXY with hair care products from one

company, more than one company, no company, you don't know or you have no opinion?" Practically speaking, the response "I don't know" makes no sense at all; one should either know, not know, or have no opinion on the matter. Despite the confusion that arises from the ambiguity of the question, among those who did answer the question, in terms of single-source versus multiple-source, more people named single source/one company, 19%, as compared to those who named multiple-source/more than one company, 16%. (Exh. A., Mazis Report, at 8)

    (4) <u>Failure to utilize a control group.</u>

As one more ground for finding unreliability, the Mazis Survey fails to incorporate a control group or control question in order to measure the level of error or noise. (Exh. B., Johnson Decl., at ¶ 22) "The purpose of the control group is to account for 'noise,' that is, any external factors that may improperly influence participants' opinions." *M.D. On-Line, Inc. v. WebMD Corp.*, 2005 U.S. Dist. LEXIS 23563, at *18 n. 5 (D.N.J. Oct. 6, 2005). "Any confusion that the control group had would be considered noise because the comparison mark was presumably fictitious, and thus must be attributable to other factors." *Id.*; *see also* 5 McCarthy on Trademarks and Unfair Competition § 32:187 (4th ed. 1996). The lack of a control group is a basic flaw which undermines the reliability of the Mazis Survey. *Johnson & Johnson et al. v. SmithKline Beecham Corporation et al*, 1991 U.S. Dist. LEXIS 13689, at *17 (S.D.N.Y. Oct. 1, 1991) (denying injunction against challenged commercials where the plaintiff relied on a consumer survey which, among other things, lacked a control group).

    \*  \*  \*

In short, the Mazis Survey fails to meet any standard of reliability under *Daubert* and *Kuhmo Tire*. This court recognizes that poorly designed and poorly executed surveys can be a "positive detriment by causing confusion while shedding little light on the subject at hand."

*Arche, Inc. v. Azaleia, U.S.A.*, 882 F. Supp. 334, 335 (S.D.N.Y. 1995). The Mazis Survey is so clearly deficient that it should be excluded altogether.

### B. The Mazis Survey is inadmissible under Fed. R. Evid. 403.

Even if this Court should find that the Mazis Survey survives *Daubert* scrutiny (which it does not), the Court should find that it is inadmissible under Fed. R. Evid. 403. A survey is admissible into evidence if it tends "to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A survey is only inadmissible if its flaws destroy all of its relevance. *See McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988); *Arche, Inc. v. Azaleia, U.S.A., Inc.*, 882 F. Supp. 334, 336 (S.D.N.Y. 1995) (where a survey's probative value is exceeded substantially by its prejudicial effect, a survey should be excluded). In light of the fatal flaws as outlined above, the Mazis Survey serves no probative value in determining the likelihood of confusion issue that is before the Court. The Court should therefore find that the survey and expert report are inadmissible under Rule 403.

WHEREFORE, Defendant Sexy Hair Concepts, LLC, respectfully requests that this Court enter the proposed Order and preclude Dr. Mazis' survey, expert report and his testimony at the time of trial

                                                Respectfully submitted,

                                                ECKERT SEAMANS CHERIN & MELLOTT, LLC

DATED: MAY 2, 2008                          By: _____
                                                   ROBERTA JACOBS-MEADWAY
                                                   Two Liberty Place
                                                   50 S. 16th Street, 22nd Floor
                                                   Philadelphia, PA 19102
                                                   (215) 851-8522 (telephone)
                                                   (215) 851-8383 (facsimile)

                                               Co-Counsel for Sexy Hair Concepts, LLC
                                               Our File: 297797-00081

Cc:    Philip Furgang, Esq.
        FURGANG & ADWAR, LLP
        1325 Avenue of the Americas
        28th Floor
        New York, NY 10019
        Phone: (212) 725-1818

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> SEXY HAIR CONCEPTS, LLC, <br><br> Defendant. | No. 07-cv-5804 (GEL) |

**O R D E R**

AND NOW, this _____ day of _____, 2008, upon consideration of the Motion in Limine of Defendant Sexy Hair Concepts, LLC, to Preclude Survey and Expert Report of Michael B. Mazis, Ph.D., it is hereby ORDERED that Defendant's Motion is GRANTED. It is further ORDERED that Plaintiff Victoria's Secret Stores Brand Management, Inc. is precluded from relying on Dr. Mazis' survey or report or introducing Dr. Mazis' testimony at trial.

BY THE COURT:

_____
GERARD E. LYNCH,
United States District Judge

{M0640779.2}

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Victoria's Secret Brand Management, Inc. :
:
        Plaintiff/Appellant, :
:
: Case No.: 07-cv-5804 (GEL)
:
v. :
:
Sexy Hair Concepts, LLC :
:
        Defendant/Appellee. :
:
:

**CERTIFICATE OF SERVICE**

    I hereby certify that on the date shown below, copies of the documents listed below were served upon Frank J. Colucci, Esquire of COLUCCI & UMANS, 218 East 50th Street, New York, NY 10022, counsel for Plaintiff/Appellant, by Federal Express next day delivery:

- Defendant/Appellee's Motion and Memorandum for Summary Judgement
- Defendant/Appellee's Rule 56.1 Statement of Material Facts
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Testimony of Edward Finegan, Ph.D.
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Testimony of Paul LaBrecque
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Expert Report of Dr. Gerald L. Ford
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Survey and Expert Report of Dr. Michael B. Mazis
- Declaration of James Morrison in Support of Motion for Summary Judgment
- Declaration of John F. Metzger in Support of Motion for Summary Judgment

_____May 2, 2008_____
        Date

_____[signature]_____