## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | : | No. 07-cv-5804 (GEL) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEXY HAIR CONCEPTS, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### MOTION IN LIMINE OF DEFENDANT SEXY HAIR CONCEPTS, LLC, TO PRECLUDE SURVEYS, RULE 26 REPORT AND SUPPLEMENTAL REPORT OF GERALD L. FORD

Defendant Sexy Hair Concepts, LLC ("SHC"), through its attorneys Eckert Seamans Cherin & Mellott, LLC, moves this Court to preclude the Surveys, Rule 26 Report and Supplemental Report of Gerald L. Ford.  In support thereof, SHC avers as follows:

1.      This is an appeal from the decision of the Trademark Trial and Appeal Board ("TTAB") sustaining the opposition of SHC to the application of Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret") to register the mark, SO SEXY, for use in connection with various hair care products.

2.      SHC produces and distributes its own brand of hair care products.

3.      In connection with its business, SHC is the owner of the mark, SEXY HAIR, (Registration No. 2403396) which it has used for hair care products since at least June 15, 1998, and has so used the mark in commerce since at least December 21, 1998.

4.      SHC is also the owner of five additional registrations which are also used in connection with its hair care products, as follows:

10.     The First Ford Survey is fatally flawed in its methodology.  The survey draws from the wrong survey universe; it employs an improper survey stimulus for testing the likelihood of confusion; and it fails to incorporate a control group or control question in order to measure the level of error or noise.

11.     The Second Ford Survey suffers from similar defects.  While it attempts to correct some of the glaring errors (e.g.  it excludes male respondents from its survey universe), the Second Ford Survey also employs an inappropriate methodology; it still draws from the wrong survey universe despite its exclusion of males respondents; it uses leading questions; and the manner in which the survey stimuli were exposed to respondents was improper for testing the likelihood of confusion.

12.     The flawed methodology renders both surveys useless in measuring any likelihood of confusion.

13.     None of the questions posed by the interviewers is directed to the matter at issue – the registrability of SO SEXY for haircare products, unrestricted as to trade channels and without the addition of the Victoria's Secret name.  Therefore, the surveys as a whole are immaterial to any matter at issue, rendering the methodology fatally flawed in its inception.

14.     Ford's reports based on both surveys, therefore, fail to meet the standard of admissibility for expert testimony established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 1337 (1999) because they are not based upon reliable data or methodology.

15.     Even if the surveys and reports survive *Daubert* scrutiny (which they do not), they should be excluded as irrelevant and inadmissible under Rule 403.

WHEREFORE, defendant Sexy Hair Concepts respectfully requests that this Court grant the Motion in Limine and preclude Dr. Ford's surveys, Rule 26 Report, Supplemental Report and his testimony at the time of trial.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Date: 5/2/08

Roberta Jacobs-Meadway (RJ-M 5870)
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Center
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
rjacobsmeadway@eckertseamans.com

Co-Counsel for Sexy Hair Concepts, LLC
Our File:  297797-00081

Cc:     Philip Furgang, Esq.
        FURGANG & ADWAR, LLP
        1325 Avenue of the Americas
        28th Floor
        New York, NY 10019
        Phone: (212) 725-1818

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES | : | No. 07-cv-5804 (GEL) |
| BRAND MANAGEMENT, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEXY HAIR CONCEPTS, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE OF
DEFENDANT SEXY HAIR CONCEPTS, LLC, TO PRECLUDE SURVEYS, RULE 26
REPORT AND SUPPLEMENTAL REPORT OF GERALD L. FORD**

Defendant Sexy Hair Concepts, LLC ("SHC") submits the following Memorandum of

Law in support of its Motion in Limine to preclude the Surveys, Rule 26 Report and

Supplemental Report of Dr. Ford.

## I.     STATEMENT OF THE CASE

This matter arises from SHC's opposition to the application of Victoria's Secret Stores

Brand Management, Inc. ("Victoria's Secret") to register the mark, SO SEXY, for use in

connection with various hair care products. The Trademark Trial and Appeal Board ("TTAB")

sustained SHC's opposition, finding that Victoria's Secret's mark, SO SEXY, was sufficiently

similar to SHC's SEXY family of marks for identical and related hair care products that there

existed a likelihood of confusion under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. §

1052(d). This appeal followed. Victoria's Secret now seeks to introduce two surveys designed

by Dr. Ford and his reports which purport to summarize the results of the surveys. SHC has filed

the instant Motion in Limine to preclude Dr. Ford's surveys, Rule 26 Report and Supplemental

Report on the ground that they fail to meet the standard of admissibility for expert testimony

established in *Daubert* and *Kumho Tire* because they are not based upon reliable data or methodology.

## II.   STATEMENT OF FACTS

### A.   SHC's mark and hair care products.

SHC produces and distributes its own brand of hair care products. In connection with its business, SHC is the owner of the mark, SEXY HAIR, (Registration No. 2403396) which it has used for hair care products since at least June 15, 1998, and has so used the mark in commerce since at least December 21, 1998.

SHC is also the owner of the following registrations which are also used in connection with its hair care products:

- Registration No. 2472793 for the mark FORMULAS BY ECOLY BIG SEXY HAIR;

- Registration No. 2486702 for the mark illustrating the SEXY HAIR design;

- Registration No. 2553996 for the mark HOT SEXY HIGHLIGHTS;

- Registration No. 2707751 for the mark WILD SEXY HAIR; and

- Registration No. 2757856 for the mark illustrating the SEXY HAIR CONCEPTS star design.

Moreover, SHC owns a family of SEXY marks for hair care products and has used the mark and trade name SEXY HAIR CONCEPTS since prior to November 19, 2001, in connection with hair care, skin care and cosmetic products. Included in the SEXY family of marks are: BIG SEXY HAIR, STRAIGHT SEXY HAIR, SHORT SEXY HAIR, HEALTHY SEXY HAIR, HOT SEXY HAIR, WILD SEXY HAIR, and HOT SEXY HIGHLIGHTS.

SHC sells its hair care products through distributors to professional salons and directly to professional salon chains to women and girls. Because it distributes its products to salon and salon distributors, SHC's SEXY HAIR mark is not a famous mark or household word.

**B.    Ford Surveys**

On behalf of Victoria's Secret, Dr. Ford purportedly designed two surveys. In the First Ford Survey, Dr. Ford purportedly designed a survey that was administered in a double-blind protocol whereby 306 interviews at shopping centers in nine states were conducted. (Ford Rule 26 Report, at 5,6, Exh. "A") Those purported qualified respondents (i.e. males and females 18 years of age or older who were likely to purchase hair care products in the next six months) were shown a card that contained the words SO SEXY in plain block letters, listing below a variety of hair care products, namely, hair conditioner, hair dyes, hair glitter, hair highlighter, hair mascara, hair pomade, hair rinses, hair removing creams, hair shampoo, hair spray, hair straightener, hair styling gel and hair styling mousse. (*Id.*) They were then asked, among other things, "Who, or what company, do you believe puts out the products on this card with this name?" (*Id.* at 8) According to the survey results, 2.29% of the survey respondents reported that they believed SO SEXY hair care products were being put out by SHC, that SO SEXY was another name used by SHC, that SO SEXY was put out with the authorization/approval of SHC, or that whoever put our SO SEXY had a business affiliation or connection with SHC. (*Id.* at 11) Based on these results, Dr. opines that there is no likelihood of confusion with respect to whether SO SEXY hair care products are "put out by Defendant Sexy Hair Concepts, are put out with the authorization or approval of Defendant Sexy Hair Concepts, or that the company that puts out SO SEXY hair care products has a business affiliation or business connection with Defendant Sexy Hair Concepts." (*Id.* at 17)

The Second Ford Survey (which was completed even before Victoria's Secret received SHC's expert report rebutting the First Ford Survey), also purports to measure the degree to which the SO SEXY brand of hair care products sold by Victoria's Secret is likely to cause confusion with respect to the source, authorization or approval of, of business affiliation or connection of the SO SEXY brand with SHC or its SEXY HAIR mark.  (Ford Supplemental Report, at 1-2, Exh. "B")  The Second Ford Survey was also purportedly administered under a double-blind protocol.  Unlike the first survey, it drew from a survey universe of women only. (*Id.* at 7)  Also, unlike the first survey, it employed the use of a control cell which was purportedly designed to measure the extent of mismeasurement of trademark confusion in the test cell survey results.  (*Id.* at 5)  In the test cell, survey respondents were purportedly shown a photograph, taken at a Victoria's Secret store, of a display of hair care products and then were handed a bottle of SO SEXY shampoo.  (*Id.*)  In the control cell, survey respondents were purportedly shown the same photograph but the name on the products was digitally changed from SO SEXY to O! SO and were handed the same bottle of shampoo, but with a O! SO mark. (*Id.* at 6)  Both cells were purportedly asked the same questions, namely:  "Who, or what company, do you believe puts out this product with this name?"  (*Id.* at 10)  According to the survey results, in the test cell, two survey responses (or approximately one percent of survey respondents) were classified as SHC responses even though they purportedly did not specifically mention Sexy Hair Concepts or any of its brands.  (*Id.* at 14)  In the control cell, none of the survey responses were classified as SHC responses.  (*Id.* at 19)  Based on these results, Dr. Ford opines that there is no likelihood of confusion with respect to whether SO SEXY hair care products are "put out by Defendant Sexy Hair Concepts, are put out with the authorization or approval of Defendant Sexy Hair Concepts, or that the company that puts out SO SEXY hair

care products has a business affiliation or business connection with Defendant Sexy Hair Concepts." (*Id.* at 17)[2]

## III.   ARGUMENT

### A.   Motion in Limine Standard.

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal quotation marks omitted). "A motion in limine to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2004 U.S. Dist. LEXIS 17791, 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004) (citing Fed. R. Evid. 104(a)). A district court's in limine ruling "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the . . . proffer." *Luce v. United States*, 469 U.S. 38, 41, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984).

The instant Motion asks the Court to determine the admissibility of Dr. Ford's Rule 26 Report and Supplemental Report.

### B.   Standard for admissibility of expert opinion testimony.

The admissibility of expert testimony in federal courts is governed by Fed. R. Evid. 702 which provides as follows:

---

[2] Additionally, survey respondents were asked (along with certain follow-up questions): (1) what other brand names they believed are used by the company that puts out the product (to which no SHC responses were purportedly elicited); (2) do they believe the product was being put out with the authorization of another company (to which no SHC responses were purportedly elicited); and (3) do they believe that the company that puts out the product has a business affiliation or business connection with another company (to which one SHC response was purportedly elicited). (*Id.* at 15-17)

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training or education, may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 governs the district court's responsibility to ensure that "any and all

scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at

589. *Kumho Tire* clarified that a district court should play a gatekeeping role in determining the

admissibility of not only scientific testimony, but also testimony based on technical or

experience-based expertise. *Kumho Tire*, 526 U.S. at 152. Thus, under Rule 702, a district court

must consider: (1) whether the witness is "qualified as an expert" to testify as to a particular

matter; (2) whether the opinion proffered by the expert is based upon reliable data and

methodology; and (3) whether the expert's testimony (as to a particular matter) will "assist the

trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). The party seeking

to introduce expert testimony "bears the burden of establishing its admissibility." *Baker v.*

*Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003).

### C. Dr. Ford's Rule 26 Report and Supplemental Report are not based on reliable data or methodology.

Assuming Dr. Ford is qualified to give an expert opinion, the Court must find that his

opinion is based on reliable data and methodology and will assist the trier of fact. *Nimely*, 414

F.3d at 397. In other words, Dr. Ford's opinion must withstand *Daubert* scrutiny. In *Kuhmo*

*Tire*, the Supreme Court found that the specific issue before the court was not the reasonableness

*in general* of the expert's approach in determining what caused the tire's tread to separate.

Rather, "it was the reasonableness of using such an approach, along with [the expert's] particular

Decl., at ¶ 8, Exh. "D")  Neither survey screened potential respondents to determine whether they would ever be in the market to purchase hair care products from a specialty store like Victoria's Secret or from a hair salon where SHC's hair care products are likely to be sold.  *Id.* Both surveys failed to limit respondents based on where they were to purchase their hair care products or at what price point.  (Johnson Decl., at ¶ 11, Exh. "C;" Supplemental Johnson Decl., at ¶ 8, Exh. "D")  Because the universe in both surveys is improper, there is simply no opportunity for confusion to occur; therefore, any purported measure of actual confusion is irrelevant and serves no probative value in determining likelihood of confusion.  *Bose Corporation v. QSC Audio Products, Inc.*, 2000 TTAB LEXIS 778 (Nov. 16, 2000) (finding that there was little evidence in the record regarding opportunities for confusion to occur, therefore finding lack of actual confusion of little persuasive value); *Hard Rock Cafe Licensing Corp. v. Rock Hard Sportswear, Inc.*, 1996 TTAB LEXIS 371 (July 16, 1996) (absence of actual confusion is not a meaningful factor in resolving the issue of likelihood of confusion where there has been no opportunity for such confusion to have occurred).

Moreover, the screeners are fraught with implausible responses.  For example, a number of respondents indicate that they have purchased, or intend to purchase, both curl enhancing spray *and* straightening balm.  *See, e.g.* VS Ford 1284, 1287, 1302 at Exh. "G."  A number of respondents indicate that they are male, over the age of 55, who have purchased or intend to purchase hair glitter.  *See, e.g.* VS Ford 0536, 0539, 0542 at Exh. "H."  Such responses are far-fetched and dubious at best, seriously undermining any measure of reliability.

(3)    Failure to employ proper survey stimulus.

Moreover, the Ford surveys are fatally flawed in their survey stimulus.  To have substantial probative value, a survey, in addition to testing the proper universe, must also be

15

designed to examine the impression presented to the consumer by the mark in issue. *See*

*Conopco*, 49 F. Supp. 2d at 253. Therefore, a survey must use the proper stimulus. *See*

*Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561, 575 (E.D.N.Y. 1999);

*Conopco*, 49 F. Supp. 2d at 253.

      In the First Ford Survey, survey respondents were shown an exhibit, the form of which

appears substantially as follows:

---

### SO SEXY

Hair care products, namely, hair conditioner, hair
dyes, hair glitter, hair highlighter, hair mascara,
hair pomade, hair rinses, hair removing creams,
hair shampoo, hair spray, hair straightener, hair
styling gel and hair styling mousse

---

(Ford Rule 26 Report, at 5; Exh. A, Vol. I, page 6)

      This survey stimulus does not accurately identify the hair care products sold by either

Victoria's Secret or SHC. While the survey stimulus contains a list of thirteen different products

in a format designed to confuse respondents, SHC markets hair care products in seven of those

categories, and Victoria's Secret appears to market no more than nine of those products, although

its application which is the subject of this appeal lists all thirteen. (Johnson Decl., at ¶ 15, Exh.

"C") The product listing displayed on the card reflects nothing anyone would see, diminishing

the reliability of any data obtained from the First Ford Survey. Moreover, respondents in the

First Ford Survey were not given any actual hair care product with the SO SEXY mark on it. *See*

*Trouble v. Wet Seal*, 179 F. Supp. 2d 291, 308 (S.D.N.Y. 2001). Indeed, the survey stimulus in

the First Ford Survey fails to expose potential consumers (directly or even indirectly) to a fair

presentation of any of the marks in question.

16

The failure of the survey stimulus to expose potential consumers to a fair presentation of the marks is even more apparent when the problematic exhibits are combined with the use of a leading question. In both surveys, Dr. Ford asks about a "name" not a "mark." The question implies that the source is something other than the "name" (i.e. SEXY), which is further implicated by the "name" (i.e. SEXY) shown on the card. *See* Johnson Decl., at ¶ 15, Exh. "C."

In the Second Ford Survey, respondents were shown a photograph of a Victoria's Secret retail display containing SO SEXY hair care products. (Supplemental Report, at 5) They were then handed a bottle of SO SEXY shampoo and were asked "Who, or what company, do you believe puts out this product with this name?" (*Id.* at 10) Note the question asks about a name, not a "mark." Not surprisingly, a purported 75.49% of respondents believed that Victoria's Secret was the name of the company that put out the product. (*Id.* at 14) The verbatim responses are telling: Over 75% of respondents state that the reason they believed Victoria's Secret put out the product was because the name was written on the bottle. This methodology is wholly unreliable and is designed to elicit information which is wholly immaterial, since the application for registration which is the subject of this proceeding does not include the "Victoria's Secret" name as a component. Respondents were already holding a bottle of SO SEXY shampoo in their hand – with the name "Victoria's Secret" on it – when asked what company they believed put out the product. In the control cell, respondents were holding a bottle of "O! SO" shampoo in their hand, with the Victoria's Secret name on it. Almost 74% of survey respondents in the control cell (only approximately 1% less than that of the test cell) responded that they believed either O! SO or Victoria's Secret put out the product. (Supplemental Ford Report, at 19, Exh. "B") They are simply reading back the answer based on the prompt from the interviewer. By way of example only, attached as Exhibit "I" is a cross section of questionnaires with verbatim

responses which demonstrate that the respondents are simply reading back the label. *See*

Questionnaires 3610, 3613, 3620, 3623, 3633, 3102, 3201, 3221, 3301, 3901, at Exh. "I."

In *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d 415, 445 (S.D.N.Y.

2004), this Court criticized a confusion survey in which respondents were shown a Dooney &

Bourke handbag with the insignia shown and, after flipping the insignia over, were asked, "What

company do you think makes this handbag?"  The Court stated:  "As a matter of logic, surveys

which do nothing more than demonstrate the respondents' ability to read are not probative of the

issue of likelihood of consumer confusion." *Id.  See also Franklin Resources v. Franklin Credit*

*Mgmt. Corp.*, 988 F. Supp. 322, 335 (S.D.N.Y. 1997); *American Greetings Corp. v. Dan-dee*

*Imports, Inc.*, 619 F. Supp. 1204, 1216 (D.N.J. 1985), modified on other grounds, 807 F.2d 1136

(3d Cir. 1986) (finding that when product name appears on the package, it does not adequately

test the existence of confusion).  In short, the Second Ford Survey does little more than

demonstrate the respondents' ability to read a name when asked to read a name; and it is in no

way probative on the issue of likelihood of consumer confusion.  (Supplemental Johnson Decl.,

at ¶ 10, Exh. "D")

> (4)    Failure to use unbiased and non-leading questions.

The Second Ford Survey is further unreliable because of its use of leading questions.

(Supplemental Johnson Decl., at ¶ 6, Exh. "D")  When respondents are asked "Who, or what

company, do you believe puts out this product with this name?" they are led to believe that the

source is clearly not the same as the product name, but rather must necessarily be some other

company. *Id.*  Moreover, respondents are further confused because the question asks about a

name, not a mark.  A survey is not credible if it relies on leading questions which "are inherently

suggestive and invite guessing by those who did not get any clear message at all." *American*

*Home Products v. Johnson & Johnson*, 654 F. Supp. 568, 581 (S.D.N.Y. 1987), aff'd, 848 F.2d 34 (2d Cir. 1988). Questions that inappropriately suggest and frame the issue for interviewees are "fatally defective and untrustworthy." *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 652 (S.D.N.Y. 1983), aff'd mem., 742 F.2d 1437 (2d Cir. 1984).

A review of the verbatim responses reveals that many of the respondents are simply guessing or not understanding the question. A number of respondents admitted to guessing (*see, e.g.*, Questionnaire 3233, Exh. "J," in which respondent stated "I guess a company. Maybe Proctor & Gamble;" Questionnaire 1514 in which respondent stated "Don't know I would guess Victoria's Secret;" Questionnaire 3704, Exh. "J" in which respondent named Dove because "I don't know I just guessed."). Others "played the game" by naming the first thing that they could think of (*see, e.g.* Questionnaire 3817, Exh. "J" in which respondent named "Clairol" and "Vasoon" [sic] because it was "[t]he only one that I can think of at the moment;" Questionnaire 1520, Exh. "J" in which respondent named "V05" because "[t]hat's what I use, and it's the first name that came to mind;" Questionnaire 1603, "Exh. "J" in which respondent named "Nair" because "it is the first thing I can think of") And others gave non-responsive answers that simply make no sense. *See, e.g.*, Questionnaire 3825, Exh. "J" in which respondent answered "lingerie" to the question "What other brand name or names, if any, do you believe are used by the company that puts out this product with this name?" Clearly, "lingerie" is an item, not a brand. Regardless of whether it is the interviewer or the questions that are unclear, the unreliability of the survey methodology is certain.

The questions are fraught with additional flaws. For example, when a respondent answers "I don't know" to the question, "Who, or what company, do you believe puts out this product with this name," they are then asked "What other brand name or names, if any, do you

believe are used by the company that puts out this product with this name?" If the respondent does not know the name of the company that puts out the product, then how is he or she supposed to know what other brand names are used by the company? Any answer clearly would be a guess. An example of this flaw in the questioning is demonstrated on Questionnaire 4221 in which the respondent answers "I don't know" to the first question, but answers "Pantene" to the next question. On Questionnaire 1121, the respondent answers "I don't know" to the first question, but answers "Clairol" to the next question. And on Questionnaire 1124, the respondent answers "No idea" to the first question, but answers "Bed Head" to the next question. Pantene, Clairol and Bed Head are clearly guesses and clearly undermine the reliability of the survey. *See* Exh. "K."

For all of these reasons, the Ford surveys are not reliable and should be precluded by the Court.

> (5)    Failure to utilize a control group.

Lastly, as a ground for finding unreliability, the First Ford Survey fails to incorporate any control group or control question in order to measure the level of error or noise. ("The purpose of the control group is to account for 'noise,' that is, any external factors that may improperly influence participants' opinions." *M.D. On-Line, Inc. v. WebMD Corp.*, 2005 U.S. Dist. LEXIS 23563, at *18 n. 5 (D.N.J. Oct. 6, 2005). "Any confusion that the control group had would be considered noise because the comparison mark was presumably fictitious, and thus must be attributable to other factors." *Id.*; *see also* 5 McCarthy on Trademarks and Unfair Competition § 32:187 (4th ed. 1996). The lack of a control group is a basic flaw which undermines the reliability of the First Ford Survey. *Johnson & Johnson et al. v. SmithKline Beecham Corporation et al*, 1991 U.S. Dist. LEXIS 13689, at *17 (S.D.N.Y. Oct. 1, 1991) (denying

injunction against challenged commercials where the plaintiff relied on a consumer survey which, among other things, lacked a control group).

And, while the Second Ford Survey attempts to utilize a control group, it is evident that the control group is still reading back the label, responding "O!So" (*see, e.g.*, Exh. "K," Questionnaire 4610) or misreading the label and responding "OiSo" (*see, e.g.*, Exh. "K," Questionnaire 4234, 4522, 4524) which would indicate a problem with the stimulus or with the interviewer inaccurately reporting the data.

*    *    *

In short, Dr. Ford's surveys fail to meet any standard of reliability under *Daubert* and *Kuhmo Tire.* This Court has properly recognized that poorly designed and poorly executed surveys can be a "positive detriment by causing confusion while shedding little light on the subject at hand." *Arche, Inc. v. Azaleia, U.S.A.*, 882 F. Supp. 334, 335 (S.D.N.Y. 1995). Dr. Ford's surveys are so clearly deficient that they should be excluded altogether.

**B.      Dr. Ford's surveys are inadmissible under Fed. R. Eiv. 403.**

Even if this Court should find that Dr. Ford's surveys survive *Daubert* scrutiny (which they do not), the Court should find that they are inadmissible under Fed. R. Evid. 403. A survey is admissible into evidence if it tends "to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A survey is only inadmissible if its flaws destroy all of its relevance. *See McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988); *Arche, Inc. v. Azaleia, U.S.A., Inc.*, 882 F. Supp. 334, 336 (S.D.N.Y. 1995) (where a survey's probative value is exceeded substantially by its prejudicial effect, a survey should be excluded). In light of the fatal flaws as outlined above, the Ford surveys serve no probative value in determining the likelihood of

21

confusion issue that is before the Court. The Court should therefore find that both Ford surveys are inadmissible under Rule 403.

WHEREFORE, Defendant Sexy Hair Concepts, LLC, respectfully requests that this Court enter the proposed Order and preclude Dr. Ford's surveys, Rule 26 Report, Supplemental Report and his testimony at the time of trial.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Date: 5/2/08

Roberta Jacobs-Meadway (RJ-M 5870)
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Center
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
rjacobsmeadway@eckertseamans.com

Co-Counsel for Sexy Hair Concepts, LLC
Our File: 297797-00081

Cc:    Philip Furgang, Esq.
       FURGANG & ADWAR, LLP
       1325 Avenue of the Americas
       28th Floor
       New York, NY 10019
       Phone: (212) 725-1818

22

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES | : | No. 07-cv-5804 (GEL) |
| BRAND MANAGEMENT, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEXY HAIR CONCEPTS, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **O R D E R**

AND NOW, this _____ day of _____, 2008, upon consideration of the

Motion in Limine of Defendant Sexy Hair Concepts, LLC, to Preclude Surveys, Rule 26 Report

and Supplemental Report of Gerald L. Ford, it is hereby ORDERED that Defendant's Motion is

GRANTED.  It is further ORDERED that Plaintiff Victoria's Secret Stores Brand Management,

Inc. is precluded from relying on Dr. Ford's surveys or reports or introducing Dr. Ford's

testimony at trial.

BY THE COURT:

_____
GERARD E. LYNCH,
United States District Judge

23