# EXHIBIT D TO

# FORD MOTION IN LIMINE

LEO J. SHAPIRO & ASSOCIATES LLC.

# DECLARATION OF PHILIP JOHNSON

I, Philip Johnson, declare as follows:

1. I am Chief Executive Officer of Leo J. Shapiro and Associates, Inc., a Chicago-based market research and consulting firm that conducts surveys.

2. I have been with this firm since 1971. Over the past 37 years, I have designed and supervised hundreds of surveys measuring consumer behavior, opinion, and beliefs concerning brands and products, employing a wide range of research techniques. I have given lectures before the American Bar Association (ABA), the Practicing Law Institute (PLI), the American Intellectual Property Law Association (AIPLA), and the International Trademark Association (INTA) on the use of survey research in litigation. I am a member of the American Marketing Association (AMA), the American Association for Public Opinion Research (AAPOR), and the International Trademark Association (INTA). I have a B.S. degree in Psychology from Loyola University and an M.B.A. degree from the University of Chicago. A description of my background and a list of cases where I have offered survey evidence during the past four years are attached to the Appendix of this Declaration.

3. I am the same Philip Johnson who previously prepared a rebuttal declaration (dated: February 15, 2008) which discussed surveys conducted by Dr. Gerald Ford and Dr. Michael Mazis that are being offered as evidence in this dispute between Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret") and Sexy Hair Concepts, LLC ("Sexy Hair Concepts"). The present declaration discusses a second survey that was subsequently produced by Dr. Ford ("Second Ford Survey") and is described in the "Supplemental Declaration and Rule 26 Report of Dr. Gerald L. Ford" that also purports to measure likelihood of confusion.

4. This second survey varies in a number of ways from the original survey he conducted. Based on my review of the Second Ford Survey, I believe that it too suffers significant failings in its methodology, universe, and the manner in which the survey stimuli were exposed to respondents. Taken together, these failings render the survey useless in measuring any likelihood of confusion.

*Inappropriate Methodology*

5. Similar to the original survey, the Second Ford Survey also employs an Eveready design, which as discussed in my earlier declaration, does not properly measure confusion when the products and brand names are the same as is the case here. Moreover, as discussed in my earlier rebuttal declaration, Sexy Hair Concepts does not claim that "Sexy" is a famous brand. Therefore, it is important for the survey research to measure confusion

2

among those who have potentially been exposed to this brand. Neither of the surveys designed and conducted by Dr. Ford accomplish this task.

*Biased and Leading Question*

6.  In this Second Ford Survey, the key question is designed in a biased and leading manner which suggests to respondents that the source of the product and the product name are in fact different. Dr. Ford's key question reads as follows: *"Who, or what company, do you believe puts out this product with this name?"* This leading and biased question structure implies that the source is clearly NOT the same as the product name, but rather must necessarily be some other company.

7.  Interestingly, on the bottom of pages 2 and 10 of his supplemental report, Dr. Ford cites McCarthy's two-part format for measuring source confusion and confusion as to sponsorship, affiliation, and connection as the basis for his survey design. However, Ford's key question varies significantly in its structure from what McCarthy suggested as an accepted protocol. McCarthy structured his key question about source confusion as: *"What company do you think makes this product?"* This question does not incorporate the leading and suggestive construction used by Dr. Ford in his survey (*"Who, or what company, do you believe puts out this product with this name?"*).

*Wrong Universe*

8.  In any research survey, it is critically important to identify and interview the appropriate survey universe - or market for the product or service at issue. The universe that Dr. Ford

3

addresses in this second survey differs in one notable fashion from that used in his original survey. He excluded male respondents. Unfortunately, while he limits the new survey to just female respondents, he does not screen them to determine whether they would ever be in the market to purchase hair care products from a specialty store like Victoria's Secret (the junior user) or from a hair salon (the senior user). Instead, in the Second Ford Survey, respondents were females 18 years and older, who within the next six months might buy any common hair care products including, shampoo, conditioner, hair spray, gel, mousse, pomade, style crème, straightener, curl spray, or shine serum regardless of where these hair care products are bought or at what price point. In my opinion, this is an overly broad survey universe that includes almost any female over 18 years of age.

*Improper Survey Stimulus and Reading Test*

9. In the Second Ford Survey, Ford reduces the entire survey design to a "reading test" that does not measure consumer belief as to source but more simply just encourages respondents to read back the answer based on a prompt they are given by the interviewer. This was accomplished by first showing respondents a photograph of a Victoria's Secret retail display containing an array of SO SEXY hair care products. The respondent was told to look at the picture as she would if she were shopping and to take as long as she wanted. Then, the picture was taken away and removed from sight. Before the respondent could say anything about the source of the products in the retail display picture, she was handed a bottle of SO SEXY shampoo and told to look at it. However, this time she was told to keep the shampoo product in hand before she was asked the

4

question about source, *"Who, or what company, do you believe puts out this product with this name?"*

10. Not surprisingly, most respondents were able to produce an answer to such a question with the product in their hand. When asked for the reason underlying their belief, three out of four of those who believed Victoria's Secret was the source reported their reason as, "it says right here on the bottle," "I see it on the bottle," "the name is on it" or some such similar comment indicating that they are simply reading the answer from the shampoo bottle in their hand.

11. Overall, the Second Ford Survey is neither properly designed nor executed such that any valid conclusions can be drawn from it concerning likelihood of confusion in this dispute.

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 28, 2008 at Chicago, Illinois.

_____
Philip Johnson

5

**APPENDIX**

LEO J. SHAPIRO & ASSOCIATES L.L.C.

# PHILIP JOHNSON

## CURRICULUM VITAE

Philip Johnson is the Chief Executive Officer of Leo J. Shapiro and Associates, a Chicago-based market research and behavioral consulting company. Mr. Johnson has been with this firm since 1971 and has held a number of positions. In recent years, he has concentrated his efforts in the areas of study design and the development of innovative research techniques.

Over the past years, Mr. Johnson has designed and supervised hundreds of surveys measuring consumer behavior and opinion, employing a wide range of research techniques. His area of expertise is in the use of survey research as a tool in litigation, including jury selection and trademark disputes.

Mr. Johnson has offered testimony regarding survey evidence on over fifty occasions in both Federal and State courts. In addition, he has offered survey research in matters before the Federal Trade Commission, The Food and Drug Administration, the Patent and Trademark Office, and the Trademark Trial and Appeal Board. Mr. Johnson has designed, conducted, and reported survey evidence on behalf of both plaintiffs and defendants in various cases. The topics covered in these litigation related surveys include matters related to likelihood of confusion, secondary meaning, genericness, dilution, false advertising, change of venue, and unfair competition.

Part of Mr. Johnson's training has been through working with Dr. Leo J. Shapiro, the Founder of the company; the late Dr. Philip M. Hauser, a former Director of the U. S. Census Bureau; and the late Dr. Hans Zeisel, who made significant contributions in the application of social science to the solution of legal questions.

Mr. Johnson has given lectures before the American Bar Association (ABA) and the Practising Law Institute (PLI) on the use of survey research in litigation. He is a member of the American Marketing Association (AMA), the American Association for Public Opinion Research (AAPOR), and the International Trademark Association (INTA).

Mr. Johnson has a B.S. degree in Psychology from Loyola University and an M.B.A. degree from the University of Chicago.



LEO J. SHAPIRO & ASSOCIATES LLC

# RECENT CASES WHERE PHILIP JOHNSON TESTIFIED OR OFFERED SURVEY EVIDENCE...

| | |
|---|---|
| AUGUST 2007 | SAINT-GOBAIN CORPORATION VS. 3M COMPANY<br>United States Patent and Trademark Office<br>Trademark Trial and Appeal Board<br>    Secondary Meaning |
| APRIL 2007 | NIKE, INC. VS. NIKEPAL INTERNATIONAL, INC.<br>United States District Court for the<br>Eastern District of California<br>    Likelihood of Initial Interest Confusion and Dilution |
| FEBRUARY 2007 | JOHNSON & JOHNSON VISION CARE, INC. VS. CIBA VISION CORPORATION<br>United States District Court for the<br>Southern District of New York<br>    False Advertising |
| NOVEMBER 2006 | HASBRO, INC. VS. MGA ENTERTAINMENT, INC.<br>United States District Court for the<br>District of Rhode Island<br>    Secondary Meaning |
| OCTOBER 2006 | CLASSIC FOODS INTERNATIONAL CORPORATION VS. KETTLE FOODS, INC.<br>United States District Court for the<br>Central District of California (Southern Division)<br>    Likelihood of Confusion |
| JUNE 2006 | GROCERY OUTLET INC. VS. ALBERTSON'S, INC., AMERICAN STORES COMPANY, L.L.C., AND LUCKY STORES, INC.<br>United States District Court for the<br>Northern District of California (San Francisco Division)<br>    Likelihood of Confusion and Fame |
| JUNE 2006 | DE BEERS LV TRADEMARK LTD. AND DE BEERS LV LTD. VS. DEBEERS DIAMOND SYNDICATE INC. AND MARVIN ROSENBLATT<br>United States District Court for the<br>Southern District of New York<br>    Awareness |

2

| | |
|---|---|
| APRIL 2006 | 24 HOUR FITNESS USA, INC. VS. 24/7 TRIBECA FITNESS, L.L.C., 24/7 GYM, L.L.C., ET AL.<br>United States District Court for the<br>Southern District of New York<br>    Likelihood of Confusion |
| APRIL 2006 | JUICY COUTURE, INC. AND L.C. LICENSING, INC. VS. LANCÔME PARFUMS ET BEAUTE & CIE AND LUXURY PRODUCTS, L.L.C.<br>United States District Court for the<br>Southern District of New York<br>    Likelihood of Confusion |
| JANUARY 2006 | WHIRLPOOL PROPERTIES, INC., ET AL., VS. LG ELECTRONICS U.S.A., INC., ET AL.<br>United States District Court for the<br>Western District of Michigan (Southern Division)<br>    Likelihood of Confusion |
| OCTOBER 2005 | PRL USA HOLDINGS, INC. VS. UNITED STATES POLO ASSOCIATION, ET AL.<br>United States District Court for the<br>Southern District of New York<br>    Likelihood of Confusion |
| SEPTEMBER 2005 | HILL'S PET NUTRITION, INC. VS. NUTRO PRODUCTS, INC. AND JOHN DOES #1-20<br>United States District Court for the<br>Central District of California (Western Division)<br>    False Advertising |
| SEPTEMBER 2005 | PERFUMEBAY.COM, INC. VS. EBAY, INC.<br>United States District Court for the<br>Central District of California (Western Division)<br>    Likelihood of Dilution and Initial Interest Confusion |
| JUNE 2005 | METROPOLITAN LIFE INSURANCE CORPORATION VS. METBANK<br>United States District Court for the<br>Southern District of New York<br>    Likelihood of Confusion |
| MARCH 2005 | PACIFIC MARKET INTERNATIONAL VS. THERMOS L.L.C.<br>United States District Court for the<br>Western District of Washington (Seattle Division)<br>    Likelihood of Confusion |
| MARCH 2005 | JADA TOYS, INC. VS. MATTEL, INC.<br>United States District Court for the<br>Central District of California<br>    Likelihood of Confusion |

3

| | |
|---|---|
| AUGUST 2004 | VERIZON DIRECTORIES CORP. VS. YELLOW BOOK USA, INC.<br>United States District Court for the<br>Eastern District of New York<br>    False Advertising |
| APRIL 2004 | DAVID'S BRIDAL, INC. VS. MITCH YEH ET AL.<br>United States District Court for the<br>Southern District of Texas (Houston Division)<br>    Likelihood of Confusion |
| FEBRUARY 2004 | MERISANT VS. JOHNSON AND JOHNSON/MCNEIL LABORATORIES<br>United States District Court for the<br>District of Puerto Rico<br>    Likelihood of Confusion |
| OCTOBER 2003 | THE MAY DEPARTMENT STORES COMPANY VS. VICTORIA'S SECRET STORES, INC. & MARK WEIKEL<br>In the Circuit Court of the County of St. Louis<br>State of Missouri<br>    A Study of Cross Shopping |
| JULY 2003 | STAR INDUSTRIES, INC. VS. BACARDI & COMPANY LIMITED, BACARDI U.S.A., INC. AND ANHEUSER-BUSCH, INCORPORATED<br>United States District Court for the<br>Southern District of New York<br>    Likelihood of Confusion |
| FEBRUARY 2003 | GATEWAY, INC. VS. COMPANION PRODUCTS, INC.<br>United States District Court for the<br>District of South Dakota (Southern Division)<br>    Likelihood of Confusion |