## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Victoria's Secret Brand Management, Inc.,<br>Plaintiff/Appellant,<br><br>v.<br><br>Sexy Hair Concepts, LLC,<br>Defendant/Appellee. | Case No. 07cv-5804(GEL) |

### DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT

Defendant/Appellee, Sexy Hair Concepts, LLC ("Sexy Hair") hereby moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, that the decision of the T.T.A.B. from which this appeal was taken be affirmed. In support of its Motion for Summary Judgment, Sexy Hair submits the attached Rule 56.1 Statement of Material Fact and Memorandum of Law and the Declarations of James Morrison and John F. Metzger.

Respectfully submitted,

Date: ~~May 2, 2008~~

Roberta Jacobs-Meadway (RJ-M 5870)
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Center
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
rjacobsmeadway@eckertseamans.com

Co-Counsel for Sexy Hair Concepts, LLC
Our File: 297797-00081

Cc:    Philip Furgang, Esq.
FURGANG & ADWAR, LLP
1325 Avenue of the Americas
28th Floor
New York, NY 10019
Phone: (212) 725-1818

**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Victoria's Secret Brand Management, Inc., Plaintiff/Appellant,<br><br>v.<br><br>Sexy Hair Concepts, LLC, Defendant/Appellee. | Case No. 07cv-5804(GEL) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT/APPELLEE SEXY HAIR CONCEPTS, LLC'S**
**MOTION FOR SUMMARY JUDGMENT**

**I.  STATEMENT OF THE ISSUE**

This case involves an appeal of the well-reasoned and correct decision of the Trademark Trial and Appeal Board ("TTAB") entered April 20, 2007, which sustained the opposition by the Defendant/Appellant Sexy Hair Concepts LLC ("Sexy Hair") to registration by Victoria's Secret Brand Management, Inc. ("VSecret") of the specific mark, SO SEXY, for specific hair care preparations. This matter is an appeal and is not an action for trademark infringement in violation of the *Lanham Act* or any other violation of federal or state law or common law.

By way of background and as discussed more fully below, SEXY HAIR is and has been a well-established mark and name in hair care products since 1998. The SEXY HAIR brand has extensive lines of hair care products, including STRAIGHT SEXY HAIR, SHORT SEXY HAIR, CURLY SEXY HAIR, HEALTHY SEXY HAIR, HOT SEXY HIGHLIGHTS, WILD SEXY HAIR, and SILKY SEXY HAIR products. The SEXY HAIR products are packaged and promoted emphasizing the SEXY family of marks and products, such that SEXY is used to create a distinctive commercial impression. As a result, the SEXY HAIR family of

{M0638898.1}

products have met with significant commercial success and have received frequent media attention.[1] Sexy Hair has invested considerable resources to promote its products. Sexy Hair has secured U.S. Trademark registrations for its marks and has diligently and successfully policed its SEXY marks.

In contrast, VSecret's SO SEXY mark represents a recent entry in the hair care products category. At the time of the SO SEXY mark's application, which is the subject of this proceeding (November 26, 2001), VSecret had no hair care products, packaging or promotional materials. In April 2003, VSecret rolled out into some of its Victoria's Secret retail outlets a "test market" of some of its SO SEXY hair care products.

The dominant element of Sexy Hair's marks for hair care products is SEXY. In its application, VSecret claims the exclusive right to use "SO SEXY" by itself as a mark. VSecret refers to SO SEXY Hair Care.

The only issue on appeal is whether the Board's determination that SO SEXY is not entitled to registration as a trademark under Section 2(d) of the Lanham Act, 1052(d) is supported by the evidence and should be affirmed on this appeal. This proceeding does <u>not</u> involve: VSecret's right to <u>use</u> SO SEXY as a trademark for hair care preparations; or VSecret's right to register any mark other than SO SEXY for hair care preparations. Those matters were <u>not</u> before the Board or decided by the Board and are not before this Court in this appeal.

The issue on this appeal is registration, it is not infringement.

## II.    PRELIMINARY STATEMENT

In determining whether a mark is entitled to registration, the relevant factors are known as the *DuPont* factors, and set out in *In re E.I. DuPont de Nemours & Co* , 476 F.2d 1357 (CCPA 1973); and the relevant law is that established by the Court of Appeals for the Federal

---

[1] From 2001 to 2007 Sexy Hair sales exceeded $190 million.

Circuit. Specifically, in determining whether a mark is entitled to registration or not, one looks at the mark as applied for, for the goods identified in the application, without reference to any stylization or additional material or customer or trade channel restrictions which are not part of the mark as applied for. It is the applicant's claim to the exclusive right which governs the determination of registrability. *Octocom Systems, inc. v. Houston Computer Services, Inc.,* 918 F.2d 937 (Fed. Cir. 1990); *Canadian Imperial Bank v. Wells Fargo Bank,* 811 F.2d 1480 (Fed. Cir. 1987); *In re Dixie Restaurants,* 105 F.3d 1405 (Fed. Cir. 1997). Conversely, one looks at the registration(s) of the senior user for the mark as registered for the goods as identified in the certificate(s) of registration, without imposition of limitations not part of the registration, in determining whether the registration serves as a bar to registration of the applicant's mark.

In the context of a decision on registration, unlike a decision on infringement, as a matter of law there can be no resort to extrinsic evidence to restrict registrant's goods or trade channels. *See Paula Payne Products v. Johnson Publishing Co.,* 473 F.2d 901 (CCPA 1973); *Venture Out Properties LLC v. Wynn Resorts Holding LLC,* 81 USPQ 2d 1887, 1894 (TTAB 2007).

The key considerations in the determination of registrability are the similarities between the marks and the similarities between the goods. *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098 (CCPA 1976); *Hewlett Packard Co. v. Packard Press, Inc.,* 281 F.3d 1261 (Fed. Cir. 2007).

## III.    STATEMENT OF MATERIAL FACTS

The material facts not subject to dispute are set out in the Rule 56.1 statement submitted herewith. Specifically, Sexy Hair submits these facts are as follows:

**A.**    **Sexy Hair Has Used SEXY HAIR As A Name and Mark and SEXY as The Dominant Component of Its Names and Marks Since 1998.**

1.    Sexy Hair, through its predecessor in interest and title, Ecoly International ("EI"), has been using SEXY HAIR as a name and mark and SEXY as a mark and as the dominant component of names and marks for hair care products since 1998.[23]

2.    The SEXY brand was developed in 1998. ( Stiller Test. Dep. 11). The first product was part of the BIG SEXY HAIR product line. (VSecret NOR filed 02/10/05, Applicant's Exhibit RR, SHC 01382).

3.    Sexy Hair extended its SEXY brand to other product lines, including: STRAIGHT SEXY HAIR; SHORT SEXY HAIR; CURLY SEXY HAIR; HEALTHY SEXY HAIR; HOT SEXY HIGHLIGHTS; WILD SEXY HAIR; and SILKY SEXY HAIR.

4.    A "family" of marks for Sexy Hair's hair care products evolved prior to the filing date of the opposed application, which opposition was sustained by the United States Patent and Trademark Office ("USPTO"), and is the subject of this appeal.

5.    The manner in which the hair care products of Sexy Hair are packaged and promoted, using the same SEXY mark, same styling for the marks, but using different colors for packaging to distinguish one product line from another evidence the family "look." (SHNY 00306, 00312, 00313, e.g.)

6.    Sexy Hair product from the different product lines or sub-brands is advertised and displayed together to emphasize the family of SEXY products (SHNY 00306, 00312, 00313).

7.    The common and dominant element of each group of marks within the family is SEXY. SEXY stands out on the packaging from the other components of each of the

---

[2] In 2002, EI transferred its assets to Sexy Hair, then newly formed. (Stiller Test. Dep. 20).
[3] All referenced documents are attached to the Rule 56.1 Statement of Material Fact and Declarations.

marks. Consistently, SEXY appears in a different color than the descriptive term such as

SHORT and the generic term HAIR so that SEXY "pops out," and catching the eye, creating a

distinct commercial impression. (SHNY 00353). Sexy is used with a star logo highlighted in

that the Star and "SEXY" are in one color while the generic "HAIR" is in a different color on

Sexy Hair's packaging and promotion. (SHNY 00306). The product representations below are

illustrative:




8.     "Sexy" does not describe any feature, characteristic or quality of any hair care product and does not describe the results of use of any such product.

9.     "Sexy" is a term which does no more than suggest some desired outcome of the use of hair care products, having no particular or specific meaning.

10.     "Sexy" is a term which in relation to hair care products may evoke some subjective, personal response, but conveys no specific information.

**B.     Sexy Hair's Hair Products Have Met With Significant Commercial Success.**

1.     SEXY HAIR products have met with significant commercial success. 2001, 2002 and 2003 estimated sales were approximately $15-16 million, $23 million and $29 million, respectively (Stiller Test. Dep. 41-42). For 2004-2007 Sexy Hair sales in the U.S. were approximately $33 million, $39 million and $51 million. (SHNY 0002). Sexy Hair's sales stated above represent sales to distributors. The retail values for sales for the same period are substantially higher, since the distributor will mark up the price it charges to the retailer and the retailer marks up the price it charges to the purchasers. (Stiller Test. Dep. 43; SHNY 0001).

2.     SEXY HAIR products enjoy tremendous visibility in the media. Sexy Hair's products have received frequent press mentions and have been seen on such popular television shows as "The Tonight Show with Jay Leno," "Queer Eye for the Straight Guy," "The Other Half," "The View," "Sex and the City," and "Good Morning" shows (Stiller Test. Dep. 37; Federici Test. Dep. 73-77).

3.     Sexy Hair's SEXY hair product lines are and have been promoted through trade shows, advertisements and monthly promotions, educational events, sampling and salons (SHNY 00345-346; Stiller Test. Dep. 22; Stiller Test. Dep., Exhibits 5-9; Federici Test. Dep. 64-65).

4.      Sexy Hair has spent considerable sums in promoting and marketing the SEXY HAIR brands.  Marketing expenses from 2004 to 2006 went from approximately $2 million to $2.8 million (SHNY 0001, 0003).

5.      Sexy Hair's sales force works with approximately 40 distributorships domestically, each of which typically covers a state (Stiller Test. Dep. 22-23).

6.      Sexy Hair's products are featured in salon chains such as Regis and JC Penney's across the country (Federici Test. Dep. 87).

7.      The most marked evidence of the commercial success of Sexy Hair's efforts to promote its marks and name is the fact that SEXY HAIR products are among the most frequently diverted hair care products.  Sexy Hair is one of the top ten diverted manufactures, according to *AC Nielson* (SHNY 00289).  If a product is known and there is popular demand for it, the product will be diverted from professional channels to retail chains such as Target and CVS.

8.      The volume of diverted product is significant, amounting to in excess of $11.8 million in 2004 alone (SHNY 00296).

**C.      Sexy Hair Has Taken Steps To Protect the SEXY Names and Marks.**

1.      Since 2000, the SEXY and SEXY HAIR names and marks have been used in the relevant trade to refer both to Sexy Hair and to its hair care products (Sexy Hair NOR filed 09/14/04, publications; Federici Test. Dep., e.g., Opposer's Exhibits 38-39, 60 (references in *Modern Salon* and *American Salon*)).

2.      Sexy Hair has secured U.S. trademark registrations for various of its SEXY marks, including Reg. No. 2,403,396 for SEXY HAIR, for hair shampoos, conditioners, lotions, creams, gels, sprays, color, dyes, rinses, and mousse; Reg. No. 2,486,702 for SEXY HAIR & Design, for hair shampoos, conditioners, lotions, conditioning creams, gels, sprays,

color, tint and mousse; Reg. No. 2,757,856 for SEXY HAIR CONCEPTS & Design for hair

shampoos, conditioners, lotions, crèmes, gels, sprays, color , dyes, rinses and mousse; Reg. No.

2,707,751 for WILD SEXY HAIR, for hair shampoos, conditioners, lotions, crèmes, gels, sprays,

color, dyes, rinses, and mousse; and Reg. No. 2,553,996 for HOT SEXY HIGHLIGHTS, for hair

shampoos, conditioners, lotions, crèmes, gels, sprays, color, dyes, rinses, and mousse (Sexy Hair

NOR filed 09/14/04, registrations).  Newer registrations are directed to the marks:  SHORT

SEXY (Reg. No. 3,247,541); HEALTHY SEXY (Reg. No. 3,247,540); and

STRONGSEXYHAIR (Reg. No. 3,374,913).

      3.      The registration for SEXY HAIR No. 2,403,396 is incontestable.

      4.      Sexy Hair has diligently and successfully policed the SEXY marks in the

hair care category, opposing use and registration of marks which contain the term SEXY for hair

care products, and pursuing oppositions where an agreement could not be reached (Stiller Test.

Dep. 50, 52; Stiller Dep. Exhibits 14, 15).

      5.      There is no significant third party use of SEXY as a mark or name or

component of a mark or name for any hair care products.

**D.**      **VSecret's SO SEXY Mark Represents Its Recent Entry Into
The Hair Care Category.**

      1.      The one application which is the subject of this proceeding is for the mark,

SO SEXY, alone.  (Admission No. 1).

      2.      The application for SO SEXY was filed on the basis of intent to use on

November 19, 2001, for a long list of hair care products.

      3.      VSecret has not yet made use on all of the products identified in its

application which is the subject of this proceeding.

4.      The one application which is the subject of this proceeding contains no restrictions on trade channels.  (Admission No. 2).

5.      The one application which is the subject of this proceeding contains no restrictions on class of customers (Admission No. 3).

6.      At the time the application was filed, VSecret had no hair care products, packaging or promotional materials (Sexy Hair NOR filed 10/13/04, Exhibit A to Applicant's Resp. to Opposer's Req. for Admissions; Sexy Hair NOR filed 09/15/04, Resp. to Interrog. No. 1).

7.      Not until April 2003, did VSecret roll out into some of its Victoria's Secret Beauty stores as a "test market" for some of the products identified in the application, namely:  shampoo, conditioner, hair spray, mousse, straightening balm, and gels (Sexy Hair NOR filed 09/15/04, Baker Discovery Dep. 47; Van Zandt Test. Dep. 19; Sexy Hair NOR filed 09/24/04, Exhibit A to Applicant's Resp. to Opposer's Req. for Admission No. 5, IBC 0908).

8.      Through March 27, 2005, VSecret did no advertising outside the 90 stores for SO SEXY hair care products, other than a direct mail piece sent to some of VSecret's credit card holders (Van Zandt Test. Dep. 27).

9.      VSecret has offered no evidence that it intends or intended to use the mark on various of the products identified in the application:  hair dyes, glitter, highlighter, mascara, pomade, and rinses.  The evidence is that VSecret has no intent to use SO SEXY on such other hair care products still listed in the opposed application and never did (Van Zandt Test. Dep. 31-32).

10.      VSecret has registered BEACH SEXY for swimwear with a disclaimer of exclusive right to use the term "BEACH:, Reg. No. 2,754,451; SEXY SUPPORT for lingerie

with a disclaimer of the exclusive right to use the term "SUPPORT." (Declaration of John F. Metzger, ¶ 5, Exh. "A" ) That is, the dominant element of these marks is "SEXY," and VSecret claims valid trademark rights, whether or not any one else has referred to lingerie or swimsuits as "sexy".

**E.     VSecret's Mark For SO SEXY For Hair Care Products Is Confusingly Similar To Sexy Hair's SEXY Marks and Names .**

1.     The dominant element of Sexy Hair's marks and names for hair care products and the mark of VSecret's application for hair care products is SEXY.

2.     In the application VSecret filed for registration of "SO SEXY", it did not disclaim the exclusive right to use the term "SEXY" apart from the mark as a whole.

3.     VSecret refers to its hair care products as "SO SEXY hair" (Van Zandt Test. Dep. 6).  VSecret's SO SEXY hair care products are referenced as the "SO SEXY hair-care collection" and promoted as the "Secret to SEXY HAIR" (Sexy Hair NOR filed 09/14/04, Exhibits 1, 2, publications).

4.     The hair care products of the parties are inexpensive, frequently purchased goods sold to and used by women and girls (SHNY 00312, 00313, 00353).

**IV.     STATEMENT OF RELEVANT LAW AND ARGUMENT**

The Board correctly found likelihood of confusion between SO SEXY for hair care products and SEXY HAIR and the Sexy Hair family of marks for hair care products sufficient to preclude the unrestricted registration of SO SEXY for hair care products.

**A.     The Standard For Grant Of Summary Judgment Is Well-Established.**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(C); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

A dispute regarding a material fact is only "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence.  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claims.

Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  "only disputes over the facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

B.    **The Similarity Between The Marks Is Strong.**

In the context of a decision on registration, unlike a decision on infringement, as a matter of law it is immaterial that VSecret prints the Victoria's Secret name on packaging for SO SEXY hair care products. *Sealy, Inc. v. Simmons Co.*, 265 F.2d 934 (CCPA 1989).

VSecret seeks to register SO SEXY as a mark for hair care products and refers to its hair care products as the SO SEXY hair-care collection and promotes the products as the "Secret to SEXY HAIR."

Sexy Hair uses its registered mark SEXY HAIR for the same products and a family of SEXY marks, including: SEXY HAIR, BIG SEXY HAIR, SHORT SEXY HAIR, and HEALTHY SEXY HAIR.

The distinctive element of each of the parties' marks is "SEXY" and the subordinate material, "SO" or "BIG" or "WILD", does not distinguish VSecret's mark from the SEXY HAIR mark. See, In re: *Chatham International, Inc.*, 380 F.3d 71 (Fed. Cir. 2004).

It is well established as a matter of law that while marks as applied for are viewed as a whole, less weight is given to generic or descriptive components. *See, In re National Data Corp.*, 732 F.2d 1056 (Fed. Cir. 1985); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943 (Fed. Cir. 2000).

In evaluating the similarity between the marks, the test is not a side-by-side comparison, or a dissection of each mark. The legal test is whether the overall commercial

impression of the marks and names are similar enough that confusion as to source, sponsorship or affiliation is likely.

> The classic statement on similarity comes from Judge Walker's 1940 opinion:
>
> > Of course, few would be stupid enough to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts.

*Baker v. Master Printers Union of New Jersey*, 34 F. Supp. 808, 811 (D.N.J. 1940).

### C.   The Goods Of the Parties As Applied For By Victoria's Secret And as Registered By Sexy Hair Concepts Are Identical.

Both parties market and sell hair care preparations: hair shampoos, hair lotions, hair conditioners, hair styling preparations. The goods, as a matter of law, are identical. *See Squirt Co. v. Tomy Corp*, 697 F.2d 1038 (Fed. Cir. 1983).

When the marks appear on virtually identical goods, the degree of similarity between the marks that is necessary to support a conclusion of likely confusion declines. *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874 (Fed. Cir. 1992).

This factor weighs heavily as a matter of law in finding the TTAB conclusion of likely confusion to be well-founded.

### D.   The Channels of Trade As A Matter Of Law Are Identical

The application which is the subject of this appeal contains no restrictions on trade channels. Thus, as a matter of law, the goods must be presumed to travel through all trade channels appropriate for hair care preparations, which would include salons, discount outlets, drug chains, and beauty supply outlets. *See, CBS Inc. v. Morrow*, 708 F.2d 1579 (Fed. Cir. 1983); *Venture Out Properties LLC v. Wynn Resorts Holding,* 81 USPQ 2d 1887, 1894 (TTAB 2007).

The SEXY HAIR registration and the other Sexy Hair registrations on which

Sexy Hair relies similarly contain no trade channel restrictions, and Sexy Hair as a matter of law

is entitled to the presumption that its goods travel through all appropriate trade channels.  These

include salons, discount outlets, drug chains and beauty supply outlets.

### E.    The Purchasers and Prospective Purchasers As A Matter Of Law Are Identical

The goods of the parties are identical as a matter of law.  Where, as here, the

goods are identical and the application opposed has no restrictions on trade channels or

customers, the purchasers and prospective purchasers are presumed as a matter of law to be the

same.  *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460 (Fed. Cir. 1991).  Certainly,

ordinary purchasers of the parties' goods include women and girls who purchase shampoo and

other hair care preparations.

### F.    The Classes of Purchasers Includes Ordinary Consumers and Nothing In  The Conditions  of Purchase As A Matter Of Law Precludes Likelihood of Confusion

The application which is the subject of this appeal contains no restriction as to

classes of purchasers.  It must be presumed as a matter of law that the goods will be purchased

by all classes of the purchasers who typically purchase such goods.  Hair shampoo and

conditioners and styling products are typically purchased by women for personal use.

The purchasers include women who are ordinary consumers, with no particular

expertise or sophistication, who are making an inexpensive and repeat purchase.

Nothing in the application which is the subject of this appeal limits the conditions

of purchase, which include busy retail environments.

The purchasers and the conditions of purchase are as a matter of law overlapping. There is no distinction that should or can be drawn. *See Hewlett Packard Co.*, 281 F.3d at 1268. Accordingly, this factor weighs in favor of sustaining the Board's decision.

G.    <u>The Sexy Hair Mark of Sexy Hair Is A Strong Mark</u>

The strength of a trademark involves two components: its inherent or intrinsic distinctiveness and the distinctiveness it has acquired in the marketplace, *i.e.*, its commercial strength. *See Brennan's Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 130-31 (2d Cir. 2004). "[I]nherent distinctiveness, examines a mark's theoretical potential to identify plaintiff's goods or services without regard to whether it has actually done so . . . . [A]cquired distinctiveness, . . . looks solely to that recognition plaintiff's mark has earned in the marketplace as a designator of plaintiff's goods or services." *Id.*

A mark need not be famous to be protected. *See In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 1317 (Fed. Cir. 2003).

A mark need not even be strong to be protected from registration of a similar mark for essentially identical goods. *Matsushita Electric Co. v. National Steel Co.*, 442 F.2d 1383 (CCPA 1971); *King Candy Co. v. Eunice King's Candy Kitchen,* 496 F.2d 1400 (CCPA 1974).

"SEXY HAIR" is a strong mark.

It is inherently distinctive, as evidenced by its registration on the Principal Register without recourse to the provisions of Section 2(f) of the *Lanham Act*, 15 U.S.C. § 1052 (f).[3]

---

[3]    SEXY HAIR is, as the Board properly determined, a suggestive mark.  Even if it were possible for VSecret to challenge the mark as descriptive, and it is not, as a matter of law (15 U.S.C. 1115); the mark is simply not descriptive.  A term is descriptive for purposes of the *Lanham Act* only if it immediately conveys information or

It is distinctive, as a matter of law, because it is the subject of an incontestable registration. 15 U.S.C. 1115(b). That is, as a matter of law, VSecret can not challenge the exclusive right of Sexy Hair to use the mark in commerce for the goods identified in the certificate of registration on the ground that the mark is descriptive of the goods. 15 U.S.C. 1065, 1115.

It has acquired strength through its use in commerce for almost ten (10) years. It has acquired strength through sales under the SEXY HAIR marks between 2001 and 2003 of in excess of $67 million (Stiller Test. Dep. 41-42). For 2004-2007, Sexy Hair sales in the U.S. were approximately $123 million (SHNY 0002). And it has acquired strength through the impact of marketing and advertising expenditures of $23.3 million from 2004-2007 (SHNY 0001).

The acquired strength is demonstrated by the success of the efforts made to make the SEXY HAIR mark known. This success is demonstrated by extensive product placement in film and television and by frequent editorial mention in trade and consumer publications. This success is demonstrated by the frequency of product diversion into retail channels such as CVS and Rite-Aid.

There is no evidence of significant third party use such as would dilute the commercial strength of the SEXY HAIR mark and name. *See AMF Inc. v. American Leisure Products, Inc.*, 474 F.2d 1403 (C.C.P.A. 1973). At the time of the submission of the case to the

---

concerning a quality, characteristic, function or purpose of the services or goods. *In re Gyulay*, 820 F.2d 1216 (Fed. Cir. 1987); *In re ICE Futures U.S., Inc.*, 85 USPQ 2d 1664 (TTAB 2008).

The mark must immediately convey information as to the qualities or characteristics of the goods with particularity. *Plus Products v. Medical Modelities Associates, Inc.*, 211 USPQ 2d 1199, 1204-1205 (TTAB 1981). "SEXY HAIR" immediately conveys no information about any characteristic or quality of the products or their use. There is only some vague suggestion that is personal, emotional, and entirely lacking in specificity. Is the result blonde or red with highlights? Is it a shag cut or piled high? No information is directly conveyed, nothing more than some personal emotional sensation.

TTAB, VSecret identified no third party use. In connection with this appeal, VSecret has no evidence as to the nature and extent of any third party use and can identify no significant third party use having any impact. Sexy Hair's policing efforts have been consistent and successful (SHNY 0556-0675, 0695-0699). and which has not been or is not being addressed by Sexy Hair.

It is well established that a company need not address all trademark issues at once or risk loss of any right. *See Elizabeth Taylor Cosmetics Co., Inc. v. Annick Goutal, S.A.R.L.*, 673 F.Supp. 1238, 1248 (S.D.N.Y. 1987).

Any contention by VSecret hat the SEXY HAIR mark is "weak" or not a sufficient basis to preclude registration of SO SEXY for identical goods sold through legally indistinguishable trade channels is immaterial and misplaced, based on the law and the facts not subject to dispute.[4]

### H.    The Absence of Likelihood Of Confusion Is A Neutral Factor

The issue is likelihood of confusion. 15 U.S.C. 1052(d). Actual confusion need not be established for the opposition to be sustained. *See Hewlett Packard Co.*, 281 F.3d at 1267.

Evidence of a long period of concurrent use with no actual confusion coming to light is a factor only where the market conditions are such that confusion if it were likely should have materialized because the parties in fact have been selling in the same trade channels in the

---

[4]    VSecret's own conduct and claims contradicts the immaterial and legally insufficient contention that "SEXY" describes some feature of hair care products. VSecret has registered: BEACH SEXY for swimwear with a disclaimer of the exclusive right to use the term "BEACH", Reg. No. 2,754,451; and SEXY SUPPORT for lingerie with a disclaimer of the exclusive right to use the term "SUPPORT". The dominant element of these marks is "SEXY" and VSecret claims valid trademark rights, whether or not any one else has referred to lingerie or swimwear. That is, VSecret admits that "SEXY has trademark significance, or it should have disclaimed any exclusive rights in the term. In *Menasha v. VSecret Catalogue, Inc.*, 409 F.Supp 2d 412 (SDNY 2006), VSecret's related company successfully claimed protectable trademark rights in SEXY LITTLE THINGS as a suggestive mark for lingerie. VSecret owns two registration for "SEXY LITTLE THINGS", one for lingerie and one for cosmetic products.

same markets and employing the same promotional media. *See Gillette Canada, Inc. v. Ranir Corp.*, 23 U.S.P.Q.2d 1768 (T.T.A.B. 1992).

The opposition should be sustained even if such conditions do not obtain when, as we have here, the opposed application claims the exclusive right to use the mark in trade channels, in markets, and in advertising media it does not, in fact, use. *See id.*

Here, granted the limited product distribution by VSecret and its limited promotion, the absence of evidence of actual confusion is a neutral factor.

### I.  None of the Reports of Victoria Secret's Alleged Experts Creates Any Material Issue Of Fact Which Could Preclude Grant Of Summary Judgment

VSecret has offered up reports of four persons as experts.  None of the reports creates any material issue of fact.

Each of the reports suffers from diverse flaws that warrant its exclusion.  Motions in Limine are being filed concurrently which address such deficiencies.

### J.  There Can Be No Doubt:  The TTAB Correctly Decided The Issue; But Any Doubt As A Matter Of Law Is Resolved In The Registrant's Favor

The law is settled.  The junior party, here VSecret, is under a duty to select a mark sufficiently different from that of the registrant to avoid any likelihood of confusion. Accordingly, any doubt as to likelihood of confusion is resolved against the applicant, and in favor of the senior user and registrant. *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669 (Fed.Cir. 1984); *In re: Hyper Shoppes (Ohio) Inc.*, 837 F.2d 840 (Fed. Cir. 1988).

### V.    CONCLUSION

There are no material issues of fact in dispute.

The well-reasoned decision of the Trademark Trial and Appeal Board sustaining Sexy Hair's opposition to the application for an unrestricted registration for SO SEXY for hair care products should be affirmed in all respects.

No argument of VSecret about matters not in issue can preclude such affirmance. Whether VSecret might have filed or should have filed some other application or restricted the current application is simply immaterial to this proceeding. Whether Sexy Hair has opposed other applications of VSecret for other marks is immaterial to this proceeding. This Court has no jurisdiction over any opposition still pending before the Trademark Trial and Appeal Board and this Court has no jurisdiction to consider whether or not VSecret has the right to use SO SEXY or any other mark or name.

Sexy Hair respectfully submits that its motion for summary judgment be granted, and the decision of the T.T.A.B. sustaining the opposition be affirmed.

Date: 5/2/08

Roberta Jacobs-Meadway (RJ-M/3870)
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Center
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
rjacobsmeadway@eckertseamans.com

Co-Counsel for Sexy Hair Concepts, LLC
Our File: 297797-00081

Cc:    Philip Furgang, Esq.
       FURGANG & ADWAR, LLP
       1325 Avenue of the Americas
       28th Floor
       New York, NY 10019
       Phone: (212) 725-1818

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | : | No. 07-cv-5804 (GEL) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEXY HAIR CONCEPTS, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>O R D E R</u>

AND NOW, this _____ day of _____, 2008, upon consideration of the

Motion for Summary Judgment of Defendant Sexy Hair Concepts, LLC, it is hereby ORDERED

that Defendant's Motion is GRANTED.  It is further ORDERED that Plaintiff Victoria's Secret

Stores Brand Management, Inc. .

BY THE COURT:


_____
GERARD E. LYNCH,
United States District Judge

{M0638898.1}

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Victoria's Secret Brand Management, Inc.          :
                                                  :
                    Plaintiff/Appellant,          :
                                                  :
                                                  :     Case No.:  07-cv-5804 (GEL)
                                                  :
            v.                                    :
                                                  :
Sexy Hair Concepts, LLC                           :
                                                  :
                    Defendant/Appellee.           :
                                                  :
                                                  :

## CERTIFICATE OF SERVICE

I hereby certify that on the date shown below , copies of the documents listed below were served upon Frank J. Colucci, Esquire of COLUCCI & UMANS, 218 East 50th Street, New York, NY 10022, counsel for Plaintiff/Appellant, by Federal Express next day delivery:

- Defendant/Appellee's Motion and Memorandum for Summary Judgement
- Defendant/Appellee's Rule 56.1 Statement of Material Facts
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Testimony of Edward Finegan, Ph.D.
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Testimony of Paul LaBrecque
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Expert Report of Dr. Gerald L. Ford
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Survey and Expert Report of Dr. Michael B. Mazis
- Declaration of James Morrison in Support of Motion for Summary Judgment
- Declaration of John F. Metzger in Support of Motion for Summary Judgment

_May 2, 2008_
Date