# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | : | No. 07-cv-5804 (GEL) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEXY HAIR CONCEPTS, LLC, | : | |
| | : | |
| Defendant. | : | |

## MOTION IN LIMINE OF DEFENDANT SEXY HAIR CONCEPTS, LLC, TO PRECLUDE SURVEYS, RULE 26 REPORT AND SUPPLEMENTAL REPORT OF GERALD L. FORD

Defendant Sexy Hair Concepts, LLC ("SHC"), through its attorneys Eckert Seamans Cherin & Mellott, LLC, moves this Court to preclude the Surveys, Rule 26 Report and Supplemental Report of Gerald L. Ford.  In support thereof, SHC avers as follows:

1.      This is an appeal from the decision of the Trademark Trial and Appeal Board ("TTAB") sustaining the opposition of SHC to the application of Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret") to register the mark, SO SEXY, for use in connection with various hair care products.

2.      SHC produces and distributes its own brand of hair care products.

3.      In connection with its business, SHC is the owner of the mark, SEXY HAIR, (Registration No. 2403396) which it has used for hair care products since at least June 15, 1998, and has so used the mark in commerce since at least December 21, 1998.

4.      SHC is also the owner of five additional registrations which are also used in connection with its hair care products, as follows:

- Registration No. 2472793 for the mark FORMULAS BY ECOLY BIG SEXY HAIR;

- Registration No. 2486702 for the mark illustrating the SEXY HAIR design;

- Registration No. 2553996 for the mark HOT SEXY HIGHLIGHTS;

- Registration No. 2707751 for the mark WILD SEXY HAIR; and

- Registration No. 2757856 for the mark illustrating the SEXY HAIR CONCEPTS star design.[1]

5.     Moreover, SHC owns a family of SEXY marks for hair care products and has used the marks and trade names SEXY HAIR CONCEPTS and SEXY HAIR since prior to November 19, 2001, in connection with hair care products.  Included in the SEXY family of marks are:  BIG SEXY HAIR, STRAIGHT SEXY HAIR, SHORT SEXY HAIR, HEALTHY SEXY HAIR, HOT SEXY HAIR, WILD SEXY HAIR, and HOT SEXY HIGHLIGHTS.

6.     The TTAB found that Victoria's Secret's mark, SO SEXY, was sufficiently similar to SHC's SEXY family of marks for identical and related hair care products that there existed a likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

8.     Victoria's Secret seeks to introduce two surveys designed by Dr. Ford ("First Ford Survey and Second Ford Survey").  Ford's Rule 26 Report and Supplemental Report, which purport to summarize the data obtained from the surveys, are attached as Exhibits "A" and "B" respectively.

9.     Both Ford surveys were purportedly designed to measure the degree to which Victoria's Secret's SO SEXY brand of hair care products is likely to cause confusion with respect to the source, authorization or approval of, or business affiliation or connection of the SO SEXY brand with SHC or its SEXY HAIR mark.

---

[1] Included in the certificates of registration are "hair care products for men, women and children, namely hair shampoos, hair lotions, hair cremes, hair gels, hair sprays, hair color, hair dyes, hair rinses, hair mousse."

10.     The First Ford Survey is fatally flawed in its methodology.  The survey draws from the wrong survey universe; it employs an improper survey stimulus for testing the likelihood of confusion; and it fails to incorporate a control group or control question in order to measure the level of error or noise.

11.     The Second Ford Survey suffers from similar defects.  While it attempts to correct some of the glaring errors (e.g. it excludes male respondents from its survey universe), the Second Ford Survey also employs an inappropriate methodology; it still draws from the wrong survey universe despite its exclusion of males respondents; it uses leading questions; and the manner in which the survey stimuli were exposed to respondents was improper for testing the likelihood of confusion.

12.     The flawed methodology renders both surveys useless in measuring any likelihood of confusion.

13.     None of the questions posed by the interviewers is directed to the matter at issue – the registrability of SO SEXY for haircare products, unrestricted as to trade channels and without the addition of the Victoria's Secret name.  Therefore, the surveys as a whole are immaterial to any matter at issue, rendering the methodology fatally flawed in its inception.

14.     Ford's reports based on both surveys, therefore, fail to meet the standard of admissibility for expert testimony established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 1337 (1999) because they are not based upon reliable data or methodology.

15.     Even if the surveys and reports survive *Daubert* scrutiny (which they do not), they should be excluded as irrelevant and inadmissible under Rule 403.

WHEREFORE, defendant Sexy Hair Concepts respectfully requests that this Court grant the Motion in Limine and preclude Dr. Ford's surveys, Rule 26 Report, Supplemental Report and his testimony at the time of trial.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Date: 5/2/08

Roberta Jacobs-Meadway (RJ-M 5870)
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Center
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
rjacobsmeadway@eckertseamans.com

Co-Counsel for Sexy Hair Concepts, LLC
Our File: 297797-00081

Cc:    Philip Furgang, Esq.
FURGANG & ADWAR, LLP
1325 Avenue of the Americas
28th Floor
New York, NY 10019
Phone: (212) 725-1818

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | : | No. 07-cv-5804 (GEL) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEXY HAIR CONCEPTS, LLC, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE OF DEFENDANT SEXY HAIR CONCEPTS, LLC, TO PRECLUDE SURVEYS, RULE 26 REPORT AND SUPPLEMENTAL REPORT OF GERALD L. FORD**

Defendant Sexy Hair Concepts, LLC ("SHC") submits the following Memorandum of Law in support of its Motion in Limine to preclude the Surveys, Rule 26 Report and Supplemental Report of Dr. Ford.

## I.     STATEMENT OF THE CASE

This matter arises from SHC's opposition to the application of Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret") to register the mark, SO SEXY, for use in connection with various hair care products. The Trademark Trial and Appeal Board ("TTAB") sustained SHC's opposition, finding that Victoria's Secret's mark, SO SEXY, was sufficiently similar to SHC's SEXY family of marks for identical and related hair care products that there existed a likelihood of confusion under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d). This appeal followed. Victoria's Secret now seeks to introduce two surveys designed by Dr. Ford and his reports which purport to summarize the results of the surveys. SHC has filed the instant Motion in Limine to preclude Dr. Ford's surveys, Rule 26 Report and Supplemental Report on the ground that they fail to meet the standard of admissibility for expert testimony

established in *Daubert* and *Kumho Tire* because they are not based upon reliable data or methodology.

## II.    STATEMENT OF FACTS

### A.    SHC's mark and hair care products.

SHC produces and distributes its own brand of hair care products. In connection with its business, SHC is the owner of the mark, SEXY HAIR, (Registration No. 2403396) which it has used for hair care products since at least June 15, 1998, and has so used the mark in commerce since at least December 21, 1998.

SHC is also the owner of the following registrations which are also used in connection with its hair care products:

- Registration No. 2472793 for the mark FORMULAS BY ECOLY BIG SEXY HAIR;

- Registration No. 2486702 for the mark illustrating the SEXY HAIR design;

- Registration No. 2553996 for the mark HOT SEXY HIGHLIGHTS;

- Registration No. 2707751 for the mark WILD SEXY HAIR; and

- Registration No. 2757856 for the mark illustrating the SEXY HAIR CONCEPTS star design.

Moreover, SHC owns a family of SEXY marks for hair care products and has used the mark and trade name SEXY HAIR CONCEPTS since prior to November 19, 2001, in connection with hair care, skin care and cosmetic products. Included in the SEXY family of marks are: BIG SEXY HAIR, STRAIGHT SEXY HAIR, SHORT SEXY HAIR, HEALTHY SEXY HAIR, HOT SEXY HAIR, WILD SEXY HAIR, and HOT SEXY HIGHLIGHTS.

SHC sells its hair care products through distributors to professional salons and directly to professional salon chains to women and girls. Because it distributes its products to salon and salon distributors, SHC's SEXY HAIR mark is not a famous mark or household word.

**B.    Ford Surveys**

On behalf of Victoria's Secret, Dr. Ford purportedly designed two surveys. In the First Ford Survey, Dr. Ford purportedly designed a survey that was administered in a double-blind protocol whereby 306 interviews at shopping centers in nine states were conducted. (Ford Rule 26 Report, at 5,6, Exh. "A") Those purported qualified respondents (i.e. males and females 18 years of age or older who were likely to purchase hair care products in the next six months) were shown a card that contained the words SO SEXY in plain block letters, listing below a variety of hair care products, namely, hair conditioner, hair dyes, hair glitter, hair highlighter, hair mascara, hair pomade, hair rinses, hair removing creams, hair shampoo, hair spray, hair straightener, hair styling gel and hair styling mousse. (*Id.*) They were then asked, among other things, "Who, or what company, do you believe puts out the products on this card with this name?" (*Id.* at 8) According to the survey results, 2.29% of the survey respondents reported that they believed SO SEXY hair care products were being put out by SHC, that SO SEXY was another name used by SHC, that SO SEXY was put out with the authorization/approval of SHC, or that whoever put our SO SEXY had a business affiliation or connection with SHC. (*Id.* at 11) Based on these results, Dr. opines that there is no likelihood of confusion with respect to whether SO SEXY hair care products are "put out by Defendant Sexy Hair Concepts, are put out with the authorization or approval of Defendant Sexy Hair Concepts, or that the company that puts out SO SEXY hair care products has a business affiliation or business connection with Defendant Sexy Hair Concepts." (*Id.* at 17)

The Second Ford Survey (which was completed even before Victoria's Secret received SHC's expert report rebutting the First Ford Survey), also purports to measure the degree to which the SO SEXY brand of hair care products sold by Victoria's Secret is likely to cause confusion with respect to the source, authorization or approval of, of business affiliation or connection of the SO SEXY brand with SHC or its SEXY HAIR mark. (Ford Supplemental Report, at 1-2, Exh. "B") The Second Ford Survey was also purportedly administered under a double-blind protocol. Unlike the first survey, it drew from a survey universe of women only. (*Id.* at 7) Also, unlike the first survey, it employed the use of a control cell which was purportedly designed to measure the extent of mismeasurement of trademark confusion in the test cell survey results. (*Id.* at 5) In the test cell, survey respondents were purportedly shown a photograph, taken at a Victoria's Secret store, of a display of hair care products and then were handed a bottle of SO SEXY shampoo. (*Id.*) In the control cell, survey respondents were purportedly shown the same photograph but the name on the products was digitally changed from SO SEXY to O! SO and were handed the same bottle of shampoo, but with a O! SO mark. (*Id.* at 6) Both cells were purportedly asked the same questions, namely: "Who, or what company, do you believe puts out this product with this name?" (*Id.* at 10) According to the survey results, in the test cell, two survey responses (or approximately one percent of survey respondents) were classified as SHC responses even though they purportedly did not specifically mention Sexy Hair Concepts or any of its brands. (*Id.* at 14) In the control cell, none of the survey responses were classified as SHC responses. (*Id.* at 19) Based on these results, Dr. Ford opines that there is no likelihood of confusion with respect to whether SO SEXY hair care products are "put out by Defendant Sexy Hair Concepts, are put out with the authorization or approval of Defendant Sexy Hair Concepts, or that the company that puts out SO SEXY hair

care products has a business affiliation or business connection with Defendant Sexy Hair Concepts." (*Id.* at 17)[2]

## III.   ARGUMENT

### A.   Motion in Limine Standard.

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal quotation marks omitted). "A motion in limine to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2004 U.S. Dist. LEXIS 17791, 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004) (citing Fed. R. Evid. 104(a)). A district court's in limine ruling "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the . . . proffer." *Luce v. United States*, 469 U.S. 38, 41, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984).

The instant Motion asks the Court to determine the admissibility of Dr. Ford's Rule 26 Report and Supplemental Report.

### B.   Standard for admissibility of expert opinion testimony.

The admissibility of expert testimony in federal courts is governed by Fed. R. Evid. 702 which provides as follows:

---

[2] Additionally, survey respondents were asked (along with certain follow-up questions): (1) what other brand names they believed are used by the company that puts out the product (to which no SHC responses were purportedly elicited); (2) do they believe the product was being put out with the authorization of another company (to which no SHC responses were purportedly elicited); and (3) do they believe that the company that puts out the product has a business affiliation or business connection with another company (to which one SHC response was purportedly elicited). (*Id.* at 15-17)

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 governs the district court's responsibility to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. *Kumho Tire* clarified that a district court should play a gatekeeping role in determining the admissibility of not only scientific testimony, but also testimony based on technical or experience-based expertise. *Kumho Tire*, 526 U.S. at 152. Thus, under Rule 702, a district court must consider: (1) whether the witness is "qualified as an expert" to testify as to a particular matter; (2) whether the opinion proffered by the expert is based upon reliable data and methodology; and (3) whether the expert's testimony (as to a particular matter) will "assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). The party seeking to introduce expert testimony "bears the burden of establishing its admissibility." *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003).

### C.    Dr. Ford's Rule 26 Report and Supplemental Report are not based on reliable data or methodology.

Assuming Dr. Ford is qualified to give an expert opinion, the Court must find that his opinion is based on reliable data and methodology and will assist the trier of fact. *Nimely*, 414 F.3d at 397. In other words, Dr. Ford's opinion must withstand *Daubert* scrutiny. In *Kuhmo Tire*, the Supreme Court found that the specific issue before the court was not the reasonableness *in general* of the expert's approach in determining what caused the tire's tread to separate. Rather, "it was the reasonableness of using such an approach, along with [the expert's] particular

method of analyzing the data thereby obtained, to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant*" – i.e. the likelihood that a defect in the tire at issue caused its tread to separate from its carcass. *Kuhmo Tire*, 526 U.S. at 154 (emphasis added). Here, Dr. Ford's surveys purport to measure whether Victoria's Secret's SO SEXY brand is likely to cause confusion with respect to its source or its connection with SHC, and he purports to draw a conclusion based upon the survey responses. As in *Kuhmo Tire*, the issue before the Court is the reasonableness of Dr. Ford's approach along with his method of analyzing the data obtained through his surveys to draw a conclusion regarding the likelihood of confusion. The severe problems with his methodology seriously diminish the reliability and probative value of the surveys. Indeed, the flaws in the First Ford Survey and Rule 26 Report are so egregious that Victoria's Secret essentially had the survey redone even *before* receiving SHC's expert report in an effort to present some research and analysis that, in its first attempt, was blatantly inadequate under the accepted principles of survey methodology.[3]

In short, Dr. Ford's surveys demonstrate critical methodological flaws so as to fall short of any measure of reliability under *Daubert* and *Kuhmo*, as set forth in detail below.

(1)    Failure to utilize appropriate survey format.

As a starting point, both of Dr. Ford's surveys utilize the "Eveready" format. This Court has recognized that this type of survey is useful to prove likely confusion "where plaintiff makes some products which defendant does not." *GMA Accessories, Inc. v. Croscill, Inc. et al.*, 2008

---

[3] In *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 225 (2d Cir. 1999), the Second Circuit noted that the following factors derive from accepted principles of survey methodology and help define when a survey has been properly conducted: whether (1) the "universe" was properly defined, (2) a representative sample of that universe was selected, (3) the questions to be asked of interviewees were framed in a clear, precise and non-leading manner, (4) sound interview procedures were followed by competent interviewers who had no knowledge of the litigation or the purpose for which the survey was conducted, (5) the data gathered was accurately reported, (6) the data was analyzed in accordance with accepted statistical principles and (7) the objectivity of the entire process was ensured. *See also* Manual for Complex Litigation, Third § 21.493 (1995); McCarthy on Trademarks § 32:181, at 32-272. Nearly none of these factors are present in the First Ford Survey, and, while the Second Ford Survey attempts to correct these glaring errors, it still falls short of satisfying the majority of these factors.

U.S. Dist. LEXIS 16052, at *27 (S.D.N.Y. Mar. 3, 2008); *see also Whirlpool Properties, Inc. v. LG Electronics U.S.A., Inc. et al.*, 2006 U.S. Dist. LEXIS 1378, at *32 (W.D. Mich. Jan. 10, 2006) (noting that an Eveready format is "well suited" to determine whether one trademark will confuse consumers who are not likely to encounter the two trademarks together) (citing *Simon Prop. Group L.P. v. MySimon, Inc.*, 104 F.Supp.2d 1033, 1049 (S.D. Ind. 2000)). The facts at issue here simply do not support the use of an Eveready format. Victoria's Secret and SHC's hair care products are identical and consumers are likely as a matter of law to encounter the SO SEXY and SEXY HAIR marks in the same context.[4] The fact that this matter involves the same types of products, hair shampoo and hair conditioner and hair styling preparations, as well as using essentially the same mark, namely SEXY, undermines the reliability of the Eveready format. *See* Declaration of Philip Johnson (hereinafter "Johnson Decl."), at ¶ 6, Exh. "C."

Moreover, it is axiomatic that in order for an Eveready survey to yield reliable results, the senior user's mark must be a well known or famous mark. *Id.*, at ¶ 7; *see* Declaration of Philip Johnson [Supplemental] (hereinafter "Supplemental Johnson Decl."), at ¶ 5, Exh. "D." This Court has properly recognized "surveys of this type are 'less likely to reveal confusion if respondents think that the junior mark is the senior mark . . . and do not know the name (or products) of the company that puts out the senior mark.'" *Simon & Schuster, Inc. et al. v. Dove Audio, Inc.*, 970 F. Supp. 279, 291 (S.D.N.Y. 1997) (finding that the Eveready design "may not have been the most appropriate format given the type of product at issue in [the] litigation," i.e. titles of books rather than the names of common household products). Similarly, SHC does not allege and need not establish that SEXY HAIR is a famous mark. While SHC's products sold under the SEXY family of marks have been used and sold in salons around the country (and in

---

[4] The TTAB properly found as a matter of law that since the application and registrations have no restrictions on trade channels, Victoria's Secret and SHC's hair care products are presumed to be sold in all of the normal channels of trade to all of the usual purchasers for goods of the type identified. (TTAB Decision, at 19-21)

outlets such as CVS and Rite-Aid) and sales have been continuous and commercially significant, the SEXY HAIR marks are strong marks, not generally famous ones. *See* SHC's Motion for Summary Judgment, filed concurrently herewith. Only people who have heard of SHC's brand could be expected to show any confusion with Victoria's Secret's SO SEXY brand. *Simon & Schuster, Inc.* (finding "underestimation of the likelihood of confusion" to be "significant" where only "persons who have heard of plaintiffs' books could be expected to show any confusion with defendant's books."). But the Ford study did not target as its universe persons likely to have heard of or be familiar with SHC's marks. *See Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 741 (2d Cir. 1994). This factor further diminishes the reliability of an Eveready format.

Moreover, the presence of Victoria's Secret stores in the survey locations further diminishes the reliability of the survey format, resulting in biased responses. Potential respondents were purportedly surveyed in malls located in nine states. A review of the websites to all nine malls reveals that Victoria's Secret stores were located in all but one mall (Hickory Ridge Mall in Memphis, Tennessee), and Victoria Secret's Beauty stores were located in two out of the nine malls in addition to the Victoria's Secret stores. *See*, Declaration of John Metzger , at ¶ 6. It is likely that a potential respondent could have just shopped at a Victoria's Secret store immediately prior to the survey, influencing his or her response. *See, e.g.*, Questionnaire 1301, at Exh. "E" (respondent answering that Victoria's Secret puts out the product ". . . [b]ecause I just came from there"); Questionnaire 3821, at Exh. "E" (respondent answering that Victoria's Secret puts out the product ". . . [b]ecause I just shopped there right now").

(2)     <u>Failure to survey an appropriate universe.</u>

To be probative and meaningful, a survey must rely upon responses from all potential consumers of the product in question. *See Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d

112, 118 (2d Cir. 1984) (citing *Dreyfus Fund Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108, 1116 (S.D.N.Y. 1981) (" 'To be probative and meaningful … surveys … must rely upon responses by potential consumers of the products in question.'"). "A survey of the wrong 'universe' will be of little probative value" in litigation. *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 119 (3d Cir. 2004) (quoting McCarthy on Trademarks and Unfair Competition § 32:159 (4th ed. 2003)); *see also* Johnson Decl., at ¶ 8, Exh. "C;" Supplemental Johnson Decl., at ¶ 8, Exh. "D."

In *Conopco, Inc. v. Cosmair, Inc.*, 49 F. Supp. 2d 242, 253 (S.D.N.Y. 1999), this Court found that the survey universe was flawed and lead to skewed results because, among other things, it excluded men and women over the age of forty-five who represented a substantial portion of the total universe of potential consumers of the products (i.e. perfume). More recently, the TTAB in *In re Hotels.com, L.P.*, Serial No. 78277681, March 24, 2008, gave no weight to a survey which purported to report that 76% of its respondents answered that "HOTELS.COM" is a brand name. The TTAB found, among other things, a critical omission in the screening process which resulted in a "fatally overbroad" survey universe. The Ford surveys suffer similar defects in their survey universe.[5]

In the First Ford Survey, the individuals surveyed were males and females eighteen years and older who within the next six months are likely to purchase one or more hair care products. This group of consumers represents an overly broad survey universe, given that Victoria's Secret and SHC sell their line of hair care products primarily to women. (Johnson Decl., at ¶ 9, Exh. "C") And, while the Second Ford Survey attempts to cure that error by excluding male respondents, the survey universe is just as flawed and overly broad. (Supplemental Johnson

---

[5] In fact, Ford himself recognizes that "[t]o survey other than appropriately defined consumers or potential consumers weakens, *if not possibly destroys*, the foundation of the survey and its value." VS FORD 0004, Exh. "F."

14

Decl., at ¶ 8, Exh. "D") Neither survey screened potential respondents to determine whether they would ever be in the market to purchase hair care products from a specialty store like Victoria's Secret or from a hair salon where SHC's hair care products are likely to be sold. *Id.* Both surveys failed to limit respondents based on where they were to purchase their hair care products or at what price point. (Johnson Decl., at ¶ 11, Exh. "C;" Supplemental Johnson Decl., at ¶ 8, Exh. "D") Because the universe in both surveys is improper, there is simply no opportunity for confusion to occur; therefore, any purported measure of actual confusion is irrelevant and serves no probative value in determining likelihood of confusion. *Bose Corporation v. QSC Audio Products, Inc.*, 2000 TTAB LEXIS 778 (Nov. 16, 2000) (finding that there was little evidence in the record regarding opportunities for confusion to occur, therefore finding lack of actual confusion of little persuasive value); *Hard Rock Cafe Licensing Corp. v. Rock Hard Sportswear, Inc.*, 1996 TTAB LEXIS 371 (July 16, 1996) (absence of actual confusion is not a meaningful factor in resolving the issue of likelihood of confusion where there has been no opportunity for such confusion to have occurred).

Moreover, the screeners are fraught with implausible responses. For example, a number of respondents indicate that they have purchased, or intend to purchase, both curl enhancing spray *and* straightening balm. *See, e.g.* VS Ford 1284, 1287, 1302 at Exh. "G." A number of respondents indicate that they are male, over the age of 55, who have purchased or intend to purchase hair glitter. *See, e.g.* VS Ford 0536, 0539, 0542 at Exh. "H." Such responses are far-fetched and dubious at best, seriously undermining any measure of reliability.

(3)    Failure to employ proper survey stimulus.

Moreover, the Ford surveys are fatally flawed in their survey stimulus. To have substantial probative value, a survey, in addition to testing the proper universe, must also be

designed to examine the impression presented to the consumer by the mark in issue. *See Conopco*, 49 F. Supp. 2d at 253. Therefore, a survey must use the proper stimulus. *See Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561, 575 (E.D.N.Y. 1999); *Conopco*, 49 F. Supp. 2d at 253.

In the First Ford Survey, survey respondents were shown an exhibit, the form of which appears substantially as follows:

---

### SO SEXY

Hair care products, namely, hair conditioner, hair dyes, hair glitter, hair highlighter, hair mascara, hair pomade, hair rinses, hair removing creams, hair shampoo, hair spray, hair straightener, hair styling gel and hair styling mousse

---

(Ford Rule 26 Report, at 5; Exh. A, Vol. I, page 6)

This survey stimulus does not accurately identify the hair care products sold by either Victoria's Secret or SHC. While the survey stimulus contains a list of thirteen different products in a format designed to confuse respondents, SHC markets hair care products in seven of those categories, and Victoria's Secret appears to market no more than nine of those products, although its application which is the subject of this appeal lists all thirteen. (Johnson Decl., at ¶ 15, Exh. "C") The product listing displayed on the card reflects nothing anyone would see, diminishing the reliability of any data obtained from the First Ford Survey. Moreover, respondents in the First Ford Survey were not given any actual hair care product with the SO SEXY mark on it. *See Trouble v. Wet Seal*, 179 F. Supp. 2d 291, 308 (S.D.N.Y. 2001). Indeed, the survey stimulus in the First Ford Survey fails to expose potential consumers (directly or even indirectly) to a fair presentation of any of the marks in question.

16

The failure of the survey stimulus to expose potential consumers to a fair presentation of the marks is even more apparent when the problematic exhibits are combined with the use of a leading question. In both surveys, Dr. Ford asks about a "name" not a "mark." The question implies that the source is something other than the "name" (i.e. SEXY), which is further implicated by the "name" (i.e. SEXY) shown on the card. *See* Johnson Decl., at ¶ 15, Exh. "C."

In the Second Ford Survey, respondents were shown a photograph of a Victoria's Secret retail display containing SO SEXY hair care products. (Supplemental Report, at 5) They were then handed a bottle of SO SEXY shampoo and were asked "Who, or what company, do you believe puts out this product with this name?" (*Id.* at 10) Note the question asks about a name, not a "mark." Not surprisingly, a purported 75.49% of respondents believed that Victoria's Secret was the name of the company that put out the product. (*Id.* at 14) The verbatim responses are telling: Over 75% of respondents state that the reason they believed Victoria's Secret put out the product was because the name was written on the bottle. This methodology is wholly unreliable and is designed to elicit information which is wholly immaterial, since the application for registration which is the subject of this proceeding does not include the "Victoria's Secret" name as a component. Respondents were already holding a bottle of SO SEXY shampoo in their hand – with the name "Victoria's Secret" on it – when asked what company they believed put out the product. In the control cell, respondents were holding a bottle of "O! SO" shampoo in their hand, with the Victoria's Secret name on it. Almost 74% of survey respondents in the control cell (only approximately 1% less than that of the test cell) responded that they believed either O! SO or Victoria's Secret put out the product. (Supplemental Ford Report, at 19, Exh. "B") They are simply reading back the answer based on the prompt from the interviewer. By way of example only, attached as Exhibit "I" is a cross section of questionnaires with verbatim

responses which demonstrate that the respondents are simply reading back the label. *See* Questionnaires 3610, 3613, 3620, 3623, 3633, 3102, 3201, 3221, 3301, 3901, at Exh. "I."

In *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d 415, 445 (S.D.N.Y. 2004), this Court criticized a confusion survey in which respondents were shown a Dooney & Bourke handbag with the insignia shown and, after flipping the insignia over, were asked, "What company do you think makes this handbag?" The Court stated: "As a matter of logic, surveys which do nothing more than demonstrate the respondents' ability to read are not probative of the issue of likelihood of consumer confusion." *Id. See also Franklin Resources v. Franklin Credit Mgmt. Corp.*, 988 F. Supp. 322, 335 (S.D.N.Y. 1997); *American Greetings Corp. v. Dan-dee Imports, Inc.*, 619 F. Supp. 1204, 1216 (D.N.J. 1985), modified on other grounds, 807 F.2d 1136 (3d Cir. 1986) (finding that when product name appears on the package, it does not adequately test the existence of confusion). In short, the Second Ford Survey does little more than demonstrate the respondents' ability to read a name when asked to read a name; and it is in no way probative on the issue of likelihood of consumer confusion. (Supplemental Johnson Decl., at ¶ 10, Exh. "D")

(4)    Failure to use unbiased and non-leading questions.

The Second Ford Survey is further unreliable because of its use of leading questions. (Supplemental Johnson Decl., at ¶ 6, Exh. "D") When respondents are asked "Who, or what company, do you believe puts out this product with this name?" they are led to believe that the source is clearly not the same as the product name, but rather must necessarily be some other company. *Id.* Moreover, respondents are further confused because the question asks about a name, not a mark. A survey is not credible if it relies on leading questions which "are inherently suggestive and invite guessing by those who did not get any clear message at all." *American*

*Home Products v. Johnson & Johnson*, 654 F. Supp. 568, 581 (S.D.N.Y. 1987), aff'd, 848 F.2d

34 (2d Cir. 1988). Questions that inappropriately suggest and frame the issue for interviewees

are "fatally defective and untrustworthy." *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 652

(S.D.N.Y. 1983), aff'd mem., 742 F.2d 1437 (2d Cir. 1984).

A review of the verbatim responses reveals that many of the respondents are simply

guessing or not understanding the question. A number of respondents admitted to guessing (*see,

e.g.*, Questionnaire 3233, Exh. "J," in which respondent stated "I guess a company. Maybe

Proctor & Gamble;" Questionnaire 1514 in which respondent stated "Don't know I would guess

Victoria's Secret;" Questionnaire 3704, Exh. "J" in which respondent named Dove because "I

don't know I just guessed."). Others "played the game" by naming the first thing that they could

think of (*see, e.g.* Questionnaire 3817, Exh. "J" in which respondent named "Clairol" and

"Vasoon" [sic] because it was "[t]he only one that I can think of at the moment;" Questionnaire

1520, Exh. "J" in which respondent named "V05" because "[t]hat's what I use, and it's the first

name that came to mind;" Questionnaire 1603, "Exh. "J" in which respondent named "Nair"

because "it is the first thing I can think of") And others gave non-responsive answers that simply

make no sense. *See, e.g.*, Questionnaire 3825, Exh. "J" in which respondent answered "lingerie"

to the question "What other brand name or names, if any, do you believe are used by the

company that puts out this product with this name?" Clearly, "lingerie" is an item, not a brand.

Regardless of whether it is the interviewer or the questions that are unclear, the unreliability of

the survey methodology is certain.

The questions are fraught with additional flaws. For example, when a respondent

answers "I don't know" to the question, "Who, or what company, do you believe puts out this

product with this name," they are then asked "What other brand name or names, if any, do you

believe are used by the company that puts out this product with this name?" If the respondent does not know the name of the company that puts out the product, then how is he or she supposed to know what other brand names are used by the company? Any answer clearly would be a guess. An example of this flaw in the questioning is demonstrated on Questionnaire 4221 in which the respondent answers "I don't know" to the first question, but answers "Pantene" to the next question. On Questionnaire 1121, the respondent answers "I don't know" to the first question, but answers "Clairol" to the next question. And on Questionnaire 1124, the respondent answers "No idea" to the first question, but answers "Bed Head" to the next question. Pantene, Clairol and Bed Head are clearly guesses and clearly undermine the reliability of the survey. *See* Exh. "K."

For all of these reasons, the Ford surveys are not reliable and should be precluded by the Court.

      (5)    <u>Failure to utilize a control group.</u>

Lastly, as a ground for finding unreliability, the First Ford Survey fails to incorporate any control group or control question in order to measure the level of error or noise. ("The purpose of the control group is to account for 'noise,' that is, any external factors that may improperly influence participants' opinions." *M.D. On-Line, Inc. v. WebMD Corp.*, 2005 U.S. Dist. LEXIS 23563, at *18 n. 5 (D.N.J. Oct. 6, 2005). "Any confusion that the control group had would be considered noise because the comparison mark was presumably fictitious, and thus must be attributable to other factors." *Id.*; *see also* 5 McCarthy on Trademarks and Unfair Competition § 32:187 (4th ed. 1996). The lack of a control group is a basic flaw which undermines the reliability of the First Ford Survey. *Johnson & Johnson et al. v. SmithKline Beecham Corporation et al*, 1991 U.S. Dist. LEXIS 13689, at *17 (S.D.N.Y. Oct. 1, 1991) (denying

injunction against challenged commercials where the plaintiff relied on a consumer survey which, among other things, lacked a control group).

And, while the Second Ford Survey attempts to utilize a control group, it is evident that the control group is still reading back the label, responding "O!So" (*see, e.g.*, Exh. "K," Questionnaire 4610) or misreading the label and responding "OiSo" (*see, e.g.*, Exh. "K," Questionnaire 4234, 4522, 4524) which would indicate a problem with the stimulus or with the interviewer inaccurately reporting the data.

*       *       *

In short, Dr. Ford's surveys fail to meet any standard of reliability under *Daubert* and *Kuhmo Tire*. This Court has properly recognized that poorly designed and poorly executed surveys can be a "positive detriment by causing confusion while shedding little light on the subject at hand." *Arche, Inc. v. Azaleia, U.S.A.*, 882 F. Supp. 334, 335 (S.D.N.Y. 1995). Dr. Ford's surveys are so clearly deficient that they should be excluded altogether.

**B.     Dr. Ford's surveys are inadmissible under Fed. R. Eiv. 403.**

Even if this Court should find that Dr. Ford's surveys survive *Daubert* scrutiny (which they do not), the Court should find that they are inadmissible under Fed. R. Evid. 403. A survey is admissible into evidence if it tends "to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A survey is only inadmissible if its flaws destroy all of its relevance. *See McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988); *Arche, Inc. v. Azaleia, U.S.A., Inc.*, 882 F. Supp. 334, 336 (S.D.N.Y. 1995) (where a survey's probative value is exceeded substantially by its prejudicial effect, a survey should be excluded). In light of the fatal flaws as outlined above, the Ford surveys serve no probative value in determining the likelihood of

confusion issue that is before the Court. The Court should therefore find that both Ford surveys are inadmissible under Rule 403.

WHEREFORE, Defendant Sexy Hair Concepts, LLC, respectfully requests that this Court enter the proposed Order and preclude Dr. Ford's surveys, Rule 26 Report, Supplemental Report and his testimony at the time of trial.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Date: 5/2/08

Roberta Jacobs-Meadway (RJ-M 5870)
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Center
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
rjacobsmeadway@eckertseamans.com

Co-Counsel for Sexy Hair Concepts, LLC
Our File: 297797-00081

Cc:    Philip Furgang, Esq.
       FURGANG & ADWAR, LLP
       1325 Avenue of the Americas
       28th Floor
       New York, NY 10019
       Phone: (212) 725-1818

22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

VICTORIA'S SECRET STORES                :          No. 07-cv-5804 (GEL)
BRAND MANAGEMENT, INC.,                  :
                                         :
                Plaintiff,               :
                                         :
        v.                               :
                                         :
SEXY HAIR CONCEPTS, LLC,                 :
                                         :
                Defendant.               :

## O R D E R

AND NOW, this _____ day of _____, 2008, upon consideration of the

Motion in Limine of Defendant Sexy Hair Concepts, LLC, to Preclude Surveys, Rule 26 Report

and Supplemental Report of Gerald L. Ford, it is hereby ORDERED that Defendant's Motion is

GRANTED.  It is further ORDERED that Plaintiff Victoria's Secret Stores Brand Management,

Inc. is precluded from relying on Dr. Ford's surveys or reports or introducing Dr. Ford's

testimony at trial.


                                        BY THE COURT:


                                        _____
                                        GERARD E. LYNCH,
                                        United States District Judge

23

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Victoria's Secret Brand Management, Inc.                    :
                                                           :
                    Plaintiff/Appellant,                   :
                                                           :
                                                           :      Case No.: 07-cv-5804 (GEL)
                                                           :
                                                           :
          v.                                               :
                                                           :
Sexy Hair Concepts, LLC                                    :
                                                           :
                    Defendant/Appellee.                    :
                                                           :
                                                           :

## CERTIFICATE OF SERVICE

I hereby certify that on the date shown below , copies of the documents listed

below were served upon Frank J. Colucci, Esquire of COLUCCI & UMANS, 218 East 50th

Street, New York, NY 10022, counsel for Plaintiff/Appellant, by Federal Express next day

delivery:

- Defendant/Appellee's Motion and Memorandum for Summary Judgement
- Defendant/Appellee's Rule 56.1 Statement of Material Facts
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Testimony of Edward Finegan, Ph.D.
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Testimony of Paul LaBrecque
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Expert Report of Dr. Gerald L. Ford
- Motion in Limine of Defendant Sexy Hair Concepts, LLC to Preclude Survey and Expert Report of Dr. Michael B. Mazis
- Declaration of James Morrison in Support of Motion for Summary Judgment
- Declaration of John F. Metzger in Support of Motion for Summary Judgment

_May 2, 2008_
Date