UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTORIA'S SECRET STORES
BRAND MANAGEMENT, INC.,

        Plaintiff,

        v.

SEXY HAIR CONCEPTS, LLC,

        Defendant.

Case No. 07cv-5804 (GEL)

ECF CASE

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION *IN LIMINE* TO PRECLUDE THE SURVEY AND EXPERT REPORT OF MICHAEL B. MAZIS, Ph.D.**

**COLUCCI & UMANS**
Frank J. Colucci (FC-8441)
Richard P. Jacobson (RJ-2843)
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

Attorneys for Plaintiff

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ......................................................................... ii

I.     **PRELIMINARY STATEMENT** ...................................................1

II.    **SUMMARY OF ARGUMENT** ....................................................1

III.   **ARGUMENT** .................................................................................3

      A.     Standard for Motions *In Limine* and Expert Surveys and Reports .....3

      B.     The Mazis Survey Constitutes Relevant, Admissible Evidence That The Public Does Not Recognize The Word "sexy" Appearing in Trademarks For Hair Care Products as Indicating SHC as The Source or Origin of Such Products ...........................................................6

      C.     Dr. Mazis' Report And Underlying Survey Are Thoroughly Reliable .................................................................8

          1.   *Dr. Mazis Utilized The Proper Universe in His Survey*......................8

          2.   *Dr. Mazis Employed the Proper Stimulus in His Survey*....................10

          3.   *The Survey Questions Were Clear, Precise and Un-Biased*...............11

          4.   *No Control Was Warranted in The Mazis Survey*................................12

          5.   *The Variety of Companies that Respondents Associated With the Word SEXY Evidences the Accuracy of the Conclusions in the Mazis Report* ........................................................13

          6.   *Johnson Provides No Empirical Evidence to Support His Criticisms* 14

          7.   *Pursuant To Fed. R. Evid. 702, Dr. Mazis' Survey and Accompanying Report Are Admissible*................................................14

      D.     Dr. Mazis' Report and Survey are Highly Probative and Pose No Risk of Prejudice or of Confusing the Court ...................................15

IV.   **CONCLUSION** ............................................................................15

# TABLE OF AUTHORITIES

## CASES

*Anheuser-Busch, Inc. v. Caught-On-Bleu, Inc.*,
288 F. Supp. 2d 105 (D.N.H. 2003)...........................................................................5, 14

*Bacardi & Co. v. New York Lighter Co.*,
97 Civ. 7140, 2000 U.S. Dist. LEXIS 3547 (E.D.N.Y. Mar. 15, 2000) .............................3

*Boucher v. United States Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996) ...................................................................................................4

*Carl Karcher Enters. v. Stars Restaurants Corp.*,
35 U.S.P.Q.2d 1125 (T.T.A.B. 1995) .......................................................................9, 10

*Command Cinema Corp. v. VCA Labs, Inc.*,
464 F. Supp. 2d 191 (S.D.N.Y. 2006)..............................................................................3, 4

*Commerce Funding Corp. v. Comprehensive Habilitation Servs.*,
01 Civ. 3796, 2004 U.S. Dist. LEXIS 17791 (S.D.N.Y. Sept. 2, 2004).............................3

*Conopco, Inc. v. Cosmair, Inc.*,
49 F. Supp. 2d 242 (S.D.N.Y. 1999)...................................................................................4

*Cumberland Packing Corp. v. Monsanto Co.*,
32 F. Supp. 2d 561 (E.D.N.Y. 1999) .................................................................................12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)......................................................................................................3, 14

*Franklin Resources, Inc. v. Franklin Credit Management Corp.*,
No. 95 Civ. 7686, 1997 U.S. Dist. LEXIS 13278 (S.D.N.Y. Sept. 4, 1997)......................5

*Freisland Brands, B.V. v. Vietnam National Milk Co.*,
221 F. Supp. 2d 457 (S.D.N.Y. 2002)................................................................................4

*Highland Capital Mg't, LP v. Schneider*,
02 Civ. 8098, 2008 U.S. Dist. LEXIS 7019 (S.D.N.Y. Jan. 31, 2008)...............................5

*J & J Snack Foods Corp. v. McDonald's Corp.*,
932 F.2d 1460 (Fed. Cir. 1991)..........................................................................................6

*Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ....................................................3, 14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
525 F. Supp. 2d 576 (S.D.N.Y. 2007) ...............................................................12

*Loussier v. Universal Music Group, Inc.,*
02 Civ. 2447, 2005 U.S. Dist. LEXIS 45432 (S.D.N.Y. Aug. 24, 2005) ..................12, 13

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) ................................................3

*McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268 (S.D.N.Y. 1986) ....................6

*McDonald's Corp. v. Druck & Gerner*, DDS., P.C.,
814 F. Supp. 1127 (N.D.N.Y. 1993) ...................................................................6

*McNeilab, Inc. v. American Home Products Corp.,*
848 F.2d 34 (2d Cir. 1988) ....................................................................................4

*McNeil-PPC, Inc. v. Merisant Co.,*
04 Civ. 1090, 2004 U.S. Dist. LEXIS 27733 (D.P.R. July 29, 2004) ............................2, 4

*Metlife, Inc. v. Metro. Nat'l Bank,*
388 F. Supp. 2d 223 (S.D.N.Y. 2005) ................................................................5, 14

*Miles Laboratories Inc. v. Naturally Vitamin Supplements Inc.,*
1 U.S.P.Q.2d 1445 (T.T.A.B. 1987) ....................................................................8, 9, 10

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 129 F. Supp. 2d 351 (D.N.J. 2000)....................................11

*PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558 (2d Cir. 1990) .................................6

*Pfizer v. Astra Pharmaceutical Prods.,*
858 F. Supp. 1305 (S.D.N.Y. 1994) ...................................................................6

*OMS Investments, Inc. v. Central Garden & Pet Co.,*
Opp. No. 91156249, 2006 TTAB LEXIS 274 (T.T.A.B. 2006) ...............................9, 10

*Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218 (2d Cir. 1999).........................................4, 12

*Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 850 F. Supp. 232 (S.D.N.Y. 1994)................5

*Teaching Co. Ltd. Pshp. v. Unapix Entertainment, Inc.,*
87 F. Supp. 2d 567 (E.D. Va. 2000) ...................................................................5, 14

*United States v. Ozsusamlar*, 428 F. Supp. 2d 161 (S.D.N.Y. 2006) ................................4

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
331 F. Supp. 2d 134 (E.D.N.Y. 2004) .......................................................................5, 15

*Whirlpool Props., Inc. v. LG Elecs. U.S.A., Inc.*,
1:03 Civ. 414, 2006 U.S. Dist. LEXIS 1378 (W.D. Mich. Jan. 10, 2006) ...................5, 14

*Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997) ....................................................11, 12

## RULES AND STATUTES

*Fed. R. Evid.* 401 .......................................................................................................4

*Fed. R. Evid.* 402 .....................................................................................................3, 8

*Fed. R. Evid.* 403 ....................................................................................................5, 15

*Fed. R. Evid.* 702......................................................................................2, 3, 14, 15

Fed. R. Evid. 703……………………………………………………………………………...15

## SUPPLEMENTAL AUTHORITIES

Federal Judicial Center, *Manual for Complex Litigation, Fourth*,
Section 11.493 (2004)..................................................................................................4, 12

Shari Seidman Diamond, *Reference Guide on Survey Research, Reference Manual on Scientific Evidence*, 2nd Edition, Federal Judicial Center (2000) ......................................12

## I.    PRELIMINARY STATEMENT

Plaintiff, Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret"),
hereby submits this memorandum in opposition to the motion *in limine* and accompanying
memorandum filed by defendant, Sexy Hair Concepts, LLC ("SHC"), to preclude the expert
report[1] and underlying survey of Dr. Michael Mazis (collectively the "Mazis Survey").

The Trademark Trial and Appeal Board ("TTAB") decision upon which
Victoria's Secret initiated this appeal is based on the TTAB's finding that SHC owns a family of
trademarks in the word "sexy" for hair care products, and that since Victoria's Secret's SO
SEXY trademark for hair care products includes the word "sexy," the TTAB concluded that a
likelihood of confusion with SHC's family of marks exists.  The Mazis survey concludes that
purchasers of hair care products do not recognize the word "sexy" as indicating origin or source
with SHC, as is required in order to establish a family of trademarks by the TTAB's own
decision as well as the decisions of the courts.  SHC now moves to preclude the Mazis Survey by
claiming that it is irrelevant and fails to meet the standard of admissibility for expert testimony.
As set forth below, Victoria's Secret respectfully submits that SHC's motion is meritless and
should be denied.

## II.   SUMMARY OF ARGUMENT

In order for SHC to establish that it owns a family of trademarks in the word
"sexy," for hair care products, it must demonstrate that consumers recognize the shared feature
of the marks, *i.e.*, the word "sexy", as indicating to the consuming public that SHC is the origin
or source of hair care products whose trademarks include the word "sexy."  In other words, SHC
must establish that the word "sexy" has acquired secondary meaning.

---

[1] We note that Dr. Mazis' expert report has been submitted to the Court as Exhibit A to defendant's motion *in limine*.  Victoria's Secret also relies upon the Declaration of Michael B. Mazis, Ph.D. ("Mazis Decl.") filed contemporaneously herewith.

In an effort to confuse the issues before the Court, SHC contends that the purpose of the Mazis Survey is to determine whether its SEXY HAIR trademark, which is the subject of one of SHC's registrations,[2] has acquired secondary meaning. This is incorrect. SHC must first prove that the common element of its alleged family of trademarks, in the present case the word SEXY, has acquired secondary meaning. SHC's sole registration of SEXY HAIR is not the relevant benchmark for this appeal. Second, since SHC does not own a registration of SEXY alone, it cannot rest its case on any individual registration. Third, SHC's individual registrations of trademarks incorporating the word "sexy" have not been challenged by Victoria's Secret at any point in this litigation, and SHC's interjection of them at these proceedings is beside the point.

The purpose of the Mazis Survey is to determine whether the shared feature of SHC's trademarks, namely the word "sexy" has acquired secondary meaning. The Mazis Survey shows that only 5 out of 308 hair care product purchasers interviewed (1.6%) associated the word "sexy" with a single company and made any reference to SHC or SHC's products, clearly establishing that the word "sexy" has not acquired secondary meaning.

Dr. Michael Mazis is extremely well qualified to testify as an expert regarding the issue of secondary meaning of the word "sexy," having conducted a number of such surveys that have been introduced into evidence and relied upon by the courts.[3] In conducting his survey, Dr. Mazis used reliable data and methods and applied the principles reliably to the facts of the case. In addition, contrary to the allegations contained in SHC's motion and memorandum, Dr. Mazis satisfies the criteria for admissibility of testimony by experts set forth in *Fed. R. Evid.* 702 because he: (1) utilized the correct universe of relevant consumers pursuant to the TTAB's

---

[2] Registration No. 2,486,702
[3] *See, e.g., McNeil-PPC, Inc. v. Merisant Co.*, 04 Civ. 1090, 2004 U.S. Dist. LEXIS 27733, at *8 (D.P.R. July 29, 2004); Mazis Report, Exs. A, B.

preference for such surveys; (2) employed an effective and proper stimulus; and (3) crafted clear, easily understood and un-biased questions.  As discussed below, the Mazis Survey is relevant, probative, reliably derived, non-prejudicial and admissible.

## III.    ARGUMENT

### A.    Standard for Motions *In Limine* and Expert Surveys and Reports

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, 01 Civ. 3796, 2004 U.S. Dist. LEXIS 17791 at *12 (S.D.N.Y. Sept. 2, 2004). Pursuant to *Fed. R. Evid.* 702, the Supreme Court has held that, in order to be deemed admissible, expert testimony must be both relevant and reliable.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *see Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  It is also necessary for courts to take into account an expert's experience, training and/or education when determining whether an expert is qualified to render an opinion.  *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995).

Pursuant to the Supreme Court's decisions in *Daubert* and *Kuhmo Tire*, the Second Circuit has adopted a rather broad standard for the admissibility of expert witness testimony.  *Bacardi & Co. v. New York Lighter Co.*, 97 Civ. 7140, 2000 U.S. Dist. LEXIS 3547, at *6 (E.D.N.Y. Mar. 15, 2000).

"[R]ejection of expert testimony is the exception rather than the rule."  *Fed. R. Evid.* 702 advisory comm. notes.  The Federal Rules of Evidence favor the admission of all relevant evidence.  *See Fed. R. Evid.* 402.  "A District court will 'exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *Command*

*Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 200 (S.D.N.Y. 2006) (*citing United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006)).

"Surveys…are routinely admitted in trademark…cases to show actual confusion, genericness of a name or secondary meaning, all of which depend on establishing that certain associations have been drawn in the public mind." *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 225 (2d Cir. 1999). A survey is admissible into evidence if it tends "to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence." *Fed. R. Evid.* 401. When a court assesses the trustworthiness of a survey:

> …relevant factors include whether: the population was properly chosen and defined; the sample chosen was representative of that population; the data gathered were accurately reported; and the data were analyzed in accordance with accepted statistical principles…In addition, in assessing the validity of a survey, the judge should take into account the following factors: whether the questions asked were clear and not leading; whether the survey was conducted by qualified persons following proper interview procedures; and whether the process was conducted so as to ensure objectivity…

*See* Federal Judicial Center, *Manual for Complex Litigation, Fourth*, Section 11.493, at 102-104 (2004). A survey is only inadmissible if its flaws destroy all of its relevance. *Conopco, Inc. v. Cosmair, Inc.*, 49 F. Supp. 2d 242, 252-53 (S.D.N.Y. 1999); *see McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir. 1988). Assertions of "'[m]ethodological' errors in a survey…bear exclusively on the weight to be given the survey rather than bearing on an admissibility determination under Fed. R. Evid. 403." *Freisland Brands, B.V. v. Vietnam National Milk Co.*, 221 F. Supp. 2d 457, 460 (S.D.N.Y. 2002); *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). "[I]n general, courts are loathe to exclude consumer surveys from evidence." *McNeil-PPC, Inc. v. Merisant Co.*, 04 Civ. 1090, 2004 U.S. Dist. LEXIS 27733, at *27 (D.P.R. July 29, 2004).

The general rule in conducting the *Fed. R. Evid.* 403 probative value/prejudice balancing test favors admission of the expert testimony. *Highland Capital Mgm't, LP v. Schneider*, 02 Civ. 8098, 2008 U.S. Dist. LEXIS 7019, at \*32 (S.D.N.Y. Jan. 31, 2008). Further, in a bench trial there is negligible, if any, risk of prejudice resulting from confusion of the trier of fact by admitting survey evidence, even if the probative value is nil. *See Verizon Directories Corp. v. Yellow Book USA, Inc.*, 331 F. Supp. 2d 134, 136 (E.D.N.Y. 2004). Moreover, since SHC's challenge of the Mazis Survey rests largely on the critique offered by SHC's expert, Philip Johnson, it is of little import because where a party has had the opportunity to conduct an alternative survey in a trademark action and fails to do so, courts routinely disregard the expert's testimony if it merely seeks to discredit the methodology of the opposing party's survey. *See Whirlpool Props., Inc. v. LG Elecs. U.S.A., Inc.*, 1:03 Civ. 414, 2006 U.S. Dist. LEXIS 1378, at \* 10-13 (W.D. Mich. Jan. 10, 2006); *Metlife, Inc. v. Metro. Nat'l Bank*, 388 F. Supp. 2d 223, 233-234 (S.D.N.Y. 2005); *Anheuser-Busch, Inc. v. Caught-On-Bleu, Inc.*, 2003 DNH 173, 122-123 (D.N.H. 2003); *Teaching Co. Ltd. Pshp. v. Unapix Entertainment, Inc.*, 87 F. Supp. 2d 567, 583-585 (E.D. Va. 2000).

   Even if Johnson's criticisms of the Mazis Survey were valid, which they are not, courts routinely consider even "flawed" surveys when they have some probative value. *See Franklin Resources, Inc. v. Franklin Credit Management Corp.*, No. 95 Civ. 7686, 1997 U.S. Dist. LEXIS 13278, at \*6 (S.D.N.Y. Sept. 4, 1997) (survey with significant flaws in its universe still has probative value); *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 850 F. Supp. 232, 246 (S.D.N.Y. 1994) (same).

**B.** **The Mazis Survey Constitutes Relevant, Admissible Evidence That The Public Does Not Recognize The Word "sexy" Appearing in Trademarks For Hair Care Products as Indicating SHC as The Source or Origin of Such Products.**

"[T]he existence of a family of marks turns 'on the distinctiveness of the common formative component.'"  *Pfizer v. Astra Pharmaceutical Prods.*, 858 F. Supp. 1305, 1328-1329 (S.D.N.Y. 1994) (*quoting McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268, 1272 (S.D.N.Y. 1986)); *see also McDonald's Corp. v. Druck & Gerner*, DDS., P.C., 814 F. Supp. 1127, 1131 (N.D.N.Y. 1993) (same).  As clearly set forth by the Federal Circuit:

> A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner. Simply using a series of similar marks does not of itself establish the existence of a family. ***There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods***.

*J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991) (emphasis added).  Secondary meaning is "proof that the public has come to associate [a] term with a particular source." *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 562 (2d Cir. 1990).

SHC's contention that there is no issue of secondary meaning before the Court is completely inaccurate.  Victoria's Secret appeals to this Court from the TTAB's finding that SHC possesses a family of trademarks in the word "sexy" for hair care products.  (Compl., Ex. A; TTAB Op. at 25)  It is upon this finding that the Board based its conclusion that Victoria's Secret's SO SEXY mark, because it contains the word "sexy," is likely to cause confusion with SHC's so-called family of marks based on the common element "sexy" for hair care products. *Id.*  It is the public recognition of SHC as the putative source or origin of hair care products that bear the word "sexy" that Dr. Mazis measured by his survey, and not, as SHC would have this

Court erroneously believe, to attack the validity of SHC's SEXY HAIR registration.[4]  (Mazis Decl., ¶¶ 2, 6)

Dr. Mazis conducted 308 interviews of relevant consumers of hair care products by showing them a card with the word SEXY printed in capital letters at the top of the card. (Mazis Report at 4)  At the bottom of the card below the word SEXY, the words "hair care products" were printed in lower case letters.  Half of the respondents were then asked:

> Do you associate the word SEXY with hair care products from one company –
> more than one company – no company – you don't know – or you have no
> opinion?

(Mazis Report at 7)  In order to control for "order bias," *i.e.*, to prevent respondents from guessing the first available answer choice, the other half of respondents were asked the question with the answer choice in a different sequence as follows:

> Do you associate the word SEXY with hair care products from more than
> one company – one company – no company – you don't know – or you
> have no opinion?

(*Id.*)  If a respondent indicated that he or she associated SEXY with hair care products from one company, they were then asked the following question:

> Why do you say that you associate it with one company?  Any other reason?
> What is that company?  Why do you say _____ (insert company name)?  Any
> other reason?

(*Id.*)  If a respondent indicated that he or she associated SEXY with more than one company they were then asked:  "Why do you say you associate it with more than one company?  Any other reasons? What are those companies?"  (Mazis Report at 8)  For each company named respondents were asked:  "Why do you say _____ (insert company name)?  Any other reason?"  (*Id.*)  If respondent indicated that they associated SEXY with "no company" they were

---

[4]  It is worth noting that Victoria's Secret has never attacked the validity or sought the cancellation of any of SHC's registered trademarks.

asked: "Why do you say you don't associate it with any company?  Any other reason?"  The

answers to each of these questions were then recorded verbatim.  (*Id.*)

> As set forth in Dr. Mazis' expert report:
>
> Only 58 of 308 (18.8%) respondents indicated that SEXY was associated with
> one company.  Of the respondents who answered "one company," only two
> mentioned "Big Sexy Hair," and three mentioned something about being aware of
> SEXY (1.6%).  The majority of respondents (65.6%) associated SEXY hair care
> products with no company (25.3%) or indicated that they didn't know or that they
> had no opinion (40.3%).

(Mazis Report at 4, 8)  Of the 308 respondents interviewed, only 5, or 1.6%, answered "one

company" and, in addition, associated the word SEXY in any manner to SHC or SHC's products.

(Mazis Report at 9)  Based upon these results, Dr. Mazis concluded, "that SEXY when it is

associated with hair care products has not acquired secondary meaning in the marketplace."[5]

(Mazis Report at 9)

> As such, the Mazis Survey constitutes relevant, admissible evidence that the word

"sexy" has not acquired distinctiveness among purchasers of hair care products, and, therefore,

SHC is not the owner of a family of trademarks in the word "sexy."  *Fed. R. Evid.* 402.

**C.      Dr. Mazis' Report And Underlying Survey Are Thoroughly Reliable**

> *1.  Dr. Mazis Utilized The Proper Universe In His Survey*

> When determining whether a mark is entitled to registration, the courts and the

TTAB have repeatedly held that the trier of fact "must consider the identification of goods as set

forth in the application and registrations, regardless of what the record may reveal as to the

particular goods, channels of trade or purchasers."  *Miles Laboratories Inc. v. Naturally Vitamin

Supplements Inc.*, 1 U.S.P.Q.2d 1445, 1450 (T.T.A.B. 1987) (citations omitted).  Where there is

no limitation placed on the identification of goods in the relevant applications/registrations, the

---

[5]  In fact, SHC appears to concede in its memorandum at page 9 that the word SEXY has no distinctiveness in the
hair care field, whatsoever.

proper universe of survey participants are all prospective purchasers of the identified goods. *Id.*;

*Carl Karcher Enters. v. Stars Restaurants Corp.*, 35 U.S.P.Q.2d 1125, 1132-1133 (T.T.A.B.

1995); *OMS Investments, Inc. v. Central Garden & Pet Co.*, Opp. No. 91156249, 2006 LEXIS

274, at *13-14 (T.T.A.B. 2006).

   Through its Motion and Memorandum, SHC relies on the declaration of Philip

Johnson to discredit the Mazis Survey.  First, Johnson wrongly contends that the relevant

universe of consumers in this case is defined by the different channels of trade through which

Victoria's Secret and SHC market their respective products.  Johnson then goes on to allege that

the universe should have primarily consisted of females who purchase hair care products in

salons, as the predominant purchasers SHC's products.  However, given that neither Victoria's

Secret, nor SHC limited the identification of goods to any specific gender of consumer or any

specific trade channel in their respective application and registrations, Johnson is incorrect on

both of his criticisms.  (Mazis Decl., ¶¶ 8-11)  The proper universe for the Mazis Survey includes

all prospective purchasers of hair care products through all channels of trade, without limitation.

*Id.*  In its decision that is the subject of this appeal the Board even states:

> …both opposer's and applicant's identifications of goods are broadly worded,
> without limitations as to channels of trade or classes of purchasers.  We must
> presume that the hair care products of the applicant and opposer are sold in all of
> the normal channels of trade to all of the usual purchasers for goods of the type
> identified.

(Compl., Ex. A; TTAB Op. at 20)  Moreover, Johnson either overlooks or completely disregards

SHC's previous position advocated to the TTAB:

> VS's argument that the parties' respective customers are different also ignores the
> reality of the record:  the parties' goods are sold to the same and overlapping
> classes of purchasers…including those who both shop in retail stores and in
> salons.…

(Opposer's (SHC's) TTAB Reply Br. at 3.)  Accordingly, by interviewing potential purchasers of hair care products, eighteen years of age or older, without further limitation, Dr. Mazis conducted his survey within the proper and relevant universe of consumers.

### 2. *Dr. Mazis Employed the Proper Stimulus in His Survey*

As set forth above, the purpose of the Mazis Survey is to determine whether the word "sexy" is associated with any single source of hair care products by consumers.  (Mazis Decl., ¶ 2)  In his survey, as discussed above, Dr. Mazis showed interviewees a card with the word SEXY printed in capital letters, above and apart from the words "hair care products" printed in lower case letters at the bottom of the card.  (Mazis Decl., ¶ 13)  The TTAB readily accepts surveys conducted in this manner and, as set forth in Section III.D.1. above, in many cases, including the present case, this is the only appropriate manner to conduct a survey.  *Miles Laboratories*, 1 U.S.P.Q.2d 1445, at 1460 (using a card "was the only appropriate stimulus available to the survey designer.").

The TTAB has held that use of the words "multiple vitamins" on the stimulus, though not a part of the mark that was the subject of the survey, was proper when the words, as here, were placed in context, and that the use of actual product containers and/or bottles would be improper.  *Miles Laboratories*, 1 U.S.P.Q.2d 1445, at 1460.  Similarly, in *Carl Karcher*, the TTAB held that the stimulus implemented in a survey was acceptable where the "star" design at issue was placed on a card above the word "restaurant" because "the word presents the mark in the context of a particular segment of market, enabling respondents to focus upon that segment." 35 U.S.P.Q.2d 1125, at 1132 (*quoting Id.)*; *cf. OMS Investments*, 2006 TTAB LEXIS 274, at *40. (stimulus should have been in standard character form; survey given limited probative value because containers were used in product line-ups).

Johnson criticizes the Mazis Survey by stating that the stimulus positions SEXY as a descriptor of "hair care products" and this is how respondents interpreted the stimulus. Johnson completely mischaracterizes the manner in which respondents interpreted the stimulus based on nothing more than his own conjecture.  (Mazis Decl., ¶¶ 12, 13)  In fact, Dr. Mazis designed the stimulus to replicate the manner in which products are typically labeled (placing the word SEXY in bold block letters above "hair care products" which appears on a separate, lower line in lower case letters).  (*Id.*)  The distinct presentation of SEXY from "hair care products" on the stimulus refutes Johnson's criticism that respondents were likely to perceive SEXY as an adjective rather than as a source identifier.

Moreover, Johnson again attempts to misconstrue the purpose of the Mazis Survey by stating erroneously that SHC's SEXY HAIR mark is the subject of the Mazis Survey and is an issue in the present appeal.  (Mazis Decl., ¶ 14)  As discussed in Section III.B. above, this contention is inaccurate.  Victoria's Secret is not attacking the validity of SHC's SEXY HAIR registration or any of SHC's other registrations.  Accordingly, the stimulus employed by the Mazis Survey is entirely proper.

### 3.  *The Survey Questions Were Clear, Precise and Un-Biased*

The questions utilized in Dr. Mazis' survey were equally balanced and designed to elicit a general response.  By asking respondents, "Do you associate the word SEXY with hair care products from one company – more than one company – no company – you don't know – or you have no opinion?" This question does not suggest an answer and is, therefore, not leading. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 129 F. Supp. 2d 351, 365 (D.N.J. 2000) (a question that does not suggest an answer is not leading) (*citing Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997) ("It is elementary that a leading

question is one that suggests an answer")) Dr. Mazis presents a clear inquiry as to whether the interviewee associates the word SEXY with any particular source of hair care products.

Johnson contends that the principal question of the survey was biased and confusing by citing that 22.4% of respondents selected "I don't know" as their answer. This contention has no merit. I don't know is a perfectly acceptable answer to this question, especially in light of the negligible results of the survey. (Mazis Decl., ¶ 16) This response option was included in the survey for the specific purpose of minimizing respondent guessing, as advocated by the Federal Judicial Center's *Reference Guide on Survey Research. Id.*; Shari Seidman Diamond, *Reference Guide on Survey Research, Reference Manual on Scientific Evidence*, 2nd Edition, Federal Judicial Center, 2000 at 249-251.

In attempting to discredit the Mazis Survey, Johnson purposefully overlooks the plain and clear meaning of the survey's questions. Johnson claims, rather, that the question is somehow confusing and/or leading, yet he offers no empirical evidence to support his position other than sheer conjecture. (Mazis Decl., ¶ 15)

4.   *No Control Was Warranted in The Mazis Survey*

"A control…is used in trademark surveys to 'sufficiently account for factors [that are] legally irrelevant….'" *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 576, 595 (S.D.N.Y. 2007) (quoting *Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561, 574-75 (E.D.N.Y. 1999)). "A control is not required in the case of every survey." *Schering Corp. v. Pfizer Inc.*, 98 Civ. 7000, 2000 U.S. Dist. LEXIS 7071, at *19 (S.D.N.Y. May 23, 2000) (finding that lack of a control is not a ground for giving surveys no weight); *see also Loussier v. Universal Music Group, Inc.*, 02 Civ. 2447, 2005 U.S. Dist. LEXIS 45432, at *10 (S.D.N.Y.

Aug. 24, 2005) ("The [c]ourt is unpersuaded by Plaintiff's contention that the survey should have provided a 'control group.'")

Where, as here, the survey results in measuring a negligible level of secondary meaning (1.6% in this case), a control is unwarranted. (Mazis Decl., ¶ 17)  Even if Dr. Mazis performed a control, it would only have further reduced the 1.6% figure.  By refraining from using a control, the results of the Mazis survey are, if anything, biased in favor of SHC, although the negligible figure of 1.6% fails to show secondary meaning. (Mazis Decl., ¶ 17)  While criticizing Dr. Mazis for not including a control, given the inconsequential measurement of secondary meaning, Johnson fails to articulate from which test results the "noise" measure would be subtracted. (Mazis Decl., ¶ 17)  Johnson's attempt to discredit the Mazis Survey, without having conducted any survey himself to prove otherwise, falls flat.  The Mazis Survey accurately evidences the fact that the word "sexy" has not acquired secondary meaning for hair care products.

5.    *The Variety of Companies that Respondents Associated With the Word SEXY Evidences the Accuracy of the Conclusions in the Mazis Report*

The survey results provide further insight into the utter lack of any secondary meaning of the word "sexy" for hair care products, given that, of those 58 respondents who associated SEXY with a single source, only 5 of them identified, or alluded to, SHC as that source. (Mazis Decl., ¶ 18)  Clearly, even when a consumer believes the word "sexy" to be associated with a single source of hair care products, that particular source varies drastically from consumer to consumer. (*Id.*)  For example, the other sources respondents identified (with the number of mentions noted parenthetically) were Clairol Herbal Essences (10), Victoria's Secret (7), Revlon (4), Vidal Sassoon (4), L'Oreal (3), Head & Shoulders (3), Pantene Pro V (2),

Paul Mitchell (2), Garnier (2), Nexxus (1), Botanics (1), Axe (1), Enjoy (1), Soft Sheen – Carson (1), Luster Products (1), Bedhead (1), Murray's (1), Suave (1), Style for Women (1) and Johnson & Johnson (1).  (*Id.*)  This fragmentation clearly demonstrates the fact that the term "sexy" is not distinctive and has not acquired secondary meaning among hair care purchasers.  (*Id.*)

      6.    <u>*Johnson Provides No Empirical Evidence to Support His Criticisms*</u>

Johnson offers no empirical evidence to support his criticisms of the Mazis Survey.  If Johnson's criticisms were material and would have produced a different result, Johnson could easily have done his own survey or even a small pilot survey to provide empirical support for his criticisms.  There is no question that SHC has the capability to have pursued conducting its own survey; yet, its failure to do so warrants disregarding its attempts to discredit Dr. Mazis' survey and report.  *E.g.*, *Whirlpool Props.,* 2006 U.S. Dist. LEXIS 1378, at 10-13; *Metlife*, 388 F. Supp. 2d at 233-234; *Anheuser-Busch*, 288 F. Supp. 2d at 122-123; *Teaching Co*, 87 F. Supp. 2d at 583-585**.**  Instead we are left with simply nothing more than Johnson's *ipse dixit*.

      7.    *Pursuant To Fed. R. Evid. 702, Dr. Mazis' Survey and*
                   <u>*Accompanying Report Are Admissible*</u>

For all the reasons set forth above, Dr. Mazis' survey and report are relevant to the central issue of this appeal, are based on reliable data and methodology and there is no question, based on his background and experience, that Dr. Mazis is qualified to provide an expert opinion regarding whether the word "sexy" has acquired secondary meaning for hair care products.  Accordingly, Dr. Mazis' survey and report are admissible evidence pursuant to *Daubert*, *Kuhmo Tire* and *Fed. R. Evid.* 702.

    **D.**    **Dr. Mazis' Report and Survey are Highly Probative and Pose No Risk of Prejudice or of Confusing the Court**

       The Mazis Survey is highly probative of whether SHC is the owner of a family of trademarks in the word "sexy." Admission of Dr. Mazis' survey and its accompanying report pose no risk of prejudice to SHC or confusion to the trier of fact, especially where, as here, the case will be tried before the Court without a jury. *See Verizon Directories Corp.*, 331 F. Supp. 2d at 136. Accordingly, the probative value of Dr. Mazis' survey and report far outweighs any risk of prejudice or confusion, and the survey and report should be admitted pursuant to *Fed. R. Evid.* 403, 702 and 703.

**IV.**    <u>**CONCLUSION**</u>

       For all of the reasons set forth above, Victoria's Secret respectfully requests that the Court deny SHC's motion to preclude the survey and expert report of Michael B. Mazis, Ph.D., in its entirety.

Dated:      New York, New York
            May 23, 2008

                                 **COLUCCI & UMANS**

                                 By: *Frank J. Colucci*

                                 Frank J. Colucci (FC-8441)
                                 Richard P. Jacobson (RJ-2843)
                                 218 East 50th Street
                                 New York, New York 10022
                                 Telephone: (212) 935-5700
                                 Facsimile: (212) 935-5728
                                 Email: email@colucci-umans.com

                                 Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION *IN LIMINE* TO PRECLUDE THE SURVEY AND EXPERT REPORT OF MICHAEL B. MAZIS, Ph.D** was served on counsel for defendant, Roberta Jacobs-Meadway, Eckert Seamans, Two Liberty Place, 50 South 16th Street, 22nd Floor, Philadelphia, Pennsylvania 19102, by FedEx, on the 23rd day of May, 2008.

_____
Katherine Lyon