**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VICTORIA'S SECRET STORES
BRAND MANAGEMENT, INC.,

       Plaintiff,

       v.

SEXY HAIR CONCEPTS, LLC,

       Defendant.

Case No. 07cv-5804 (GEL)

ECF CASE

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE TESTIMONY OF EDWARD FINEGAN, Ph.D.

**COLUCCI & UMANS**
Frank J. Colucci (FC-8441)
Richard P. Jacobson (RJ-2843)
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

Attorneys for Plaintiff

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT............................................................................................................ 2

    I.      Standard for Motions *In Limine* and Expert Reports ........................... 2

    II.     Dr. Finegan's Testimony is Relevant, Admissible Evidence................. 4

           A.     Courts Find Helpful and Admit
                  Expert Testimony By Linguists.................................................... 4

           B.     Dr. Finegan's Testimony is Properly Directed to the
                  Lack of Distinctiveness of the Word "Sexy", and
                  Not of SHC's Individual Marks ................................................... 4

    III.    Dr. Finegan's Testimony Regarding the Use of the Word "Sexy" and
         its Lack of Distinctiveness is Highly Probative and Presents No
         Danger of Unfair Prejudice or Confusion of the Issues....................... 7

    IV.    Dr. Finegan's Analysis of the Linguistic Structure of the
         Marks is Highly Probative Regarding the Lack of Any Likelihood
         of Confusion, and SHC's Assertions of Prejudice are Unsupported.. 10

    CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

## CASES

*Alfa Corp. v. Oao Alfa Bank,*
    475 F. Supp. 2d 357 (S.D.N.Y. 2007) ........................................................ 9

*Borawick v. Shay,*
    68 F.3d 597 (2d Cir. 1995) ........................................................ 3

*Commerce Funding Corp. v. Comprehensive Habilitation Servs.,*
    2004 U.S. Dist. LEXIS 17791 (S.D.N.Y. Sept. 2, 2004) ........................................... 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ........................................................ 2, 3, 8

*E.E.O.C. v. Morgan Stanley & Co.,*
    324 F. Supp. 2d 451 (S.D.N.Y. 2004) ........................................................ 3

*Eastern Air Lines, Inc. v. New York Air Lines, Inc.,*
    559 F. Supp. 1270 (S.D.N.Y. 1983) ........................................................ 4

*Half Price Books, Records, Magazines, Inc. v.*
*Barnesandnoble.com, LLC,* NO. 3:02-CV-2518-G,
    2004 U.S. Dist. LEXIS 23691 (N.D. Tex. Nov. 22, 2004) .......................................... 5

*J & J Snack Foods Corp. v. McDonald's Corp.,*
    932 F.2d 1460 (Fed. Cir. 1991) ........................................................ 6

*Kuhmo Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ........................................................ 2

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) ........................................................ 9, 10

*McCullock v. H.B. Fuller Co.,*
    61 F.3d 1038 (2d Cir. 1995) ........................................................ 2

*Schell & Kampeter, Inc. dba Diamond Feeds v.*
*Menu Foods Limited,* Opposition No. 93,401,
Trademark Trial and Appeal Board,
    1996 TTAB LEXIS 496, April 17, 1996 ........................................................ 3

*Steak n Shake Co. v. Burger King Corp.,*
    323 F. Supp. 2d 983 (E.D. Mo. 2004) ........................................................ 4

*Trouble v. Wet Seal, Inc.,*
    179 F. Supp. 2d 291 (S.D.N.Y. 2001) ...................................................................... 10

*United States v. Lumpkin,*
    192 F.3d 280 (2d Cir. 1999) ..................................................................................... 3

*Verizon Directories Corp.,*
    331 F.Supp.2d 134 ................................................................................................... 13

*WSM, Inc. v. Hilton,*
    724 F.2d 1320 (8th Cir. 1984) .................................................................................. 4

*Yellow Cab Co. of Sacramento v.*
*Yellow Cab Co. of Elk Grove, Inc.,* NO. CIV. S-02-0704 (FCD),
    2006 U.S. Dist. LEXIS 89338 (E.D. Cal. Dec. 11, 2006) ........................................ 8

## STATUTES, REGULATIONS AND RULES

*Fed. R. Evid.* 402 ............................................................................................................... 2

*Fed. R. Evid.* 403 ............................................................................................................ 2, 13

*Fed. R. Evid.* 702 ........................................................................................................ 2, 3, 4, 6

Plaintiff, Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret"), hereby submits this memorandum in opposition to the motion *in limine* and accompanying memorandum filed by defendant, Sexy Hair Concepts, LLC ("SHC") (hereinafter, "Motion" and "Memorandum"), to preclude the expert testimony of Edward Finegan, Ph.D., a tenured professor of linguistics at the University of Southern California since 1983.  Victoria's Secret relies upon the Expert Report of Edward Finegan, Ph.D. (appended to SHC's Motion as Exhibit A) and the Declaration of Edward Finegan in Opposition to Plaintiff's Motion *In Limine* to Preclude the Testimony of Edward Finegan, Ph.D. (filed contemporaneously herewith).

## PRELIMINARY STATEMENT

The Trademark Trial and Appeal Board ("TTAB" or "Board") decision upon which Victoria's Secret initiated this appeal is based on the TTAB's finding that SHC owns a family of trademarks in the word "sexy" for hair care products, and its conclusion that because Victoria's Secret's SO SEXY trademark for hair care products includes the word "sexy," a likelihood of confusion with SHC's family of marks exists. Dr. Finegan's expert report discusses the background of the word "sexy," describes its widespread figurative use, and analyzes the different linguistic structure embodied in the mark Victoria's Secret seeks to register, SO SEXY, and SHC's asserted family of marks. Dr. Finegan concludes that the word "sexy," in the context of hair and beauty products, conveys a figurative sense of "highly appealing, interesting, attractive," which, by itself, cannot serve as an inherently distinctive source-identifier.  Only when the word is incorporated into a larger expression, or composite mark, does the overall expression attain a measure of distinctiveness.  In light of the manner in which the term is used in

SHC's marks, from a linguistic point of view, Dr. Finegan's expert opinion is that SHC's marks, when considered as a "family," and Victoria's Secret's mark SO SEXY differ significantly and that there is little or no likelihood of confusion.

SHC moves to preclude Dr. Finegan from testifying by arguing that his testimony is irrelevant under *Fed. R. Evid.* 402, or, in the alternative, prejudicial and confusing and should be excluded pursuant to *Fed. R. Evid.* 403. As set forth below, Dr. Finegan's testimony is directly relevant to the central issues before the Court, namely, the characterization of the word "sexy," and whether Victoria's Secret's mark, SO SEXY, is likely to cause confusion with SHC's so-called family of marks. Accordingly, SHC's motion is meritless and should be denied.

## ARGUMENT

### I.    Standard for Motions *In Limine* and Expert Reports

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, 2004 U.S. Dist. LEXIS 17791, at *12 (S.D.N.Y. Sept. 2, 2004). Pursuant to *Fed. R. Evid.* 702, the Supreme Court has held that, in order to be deemed admissible, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *see Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999). It is also necessary for courts to take into account an expert's experience, training and/or education when determining whether an expert is qualified to render an opinion. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995).

A witness qualified as an expert will be permitted to testify if his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (quoting *Fed. R. Evid.* 702). To be admissible, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). In construing *Daubert,* the Second Circuit has emphasized the broad discretion of the trial court to admit expert testimony:

> First, . . . *Daubert* reinforces the idea that there should be a presumption of admissibility of evidence. Second, it emphasizes the need for flexibility in assessing whether evidence is admissible. Rather than using rigid "safeguards" for determining whether testimony should be admitted, the Court's approach is to permit the trial judge to weigh the various considerations pertinent to the issue in question. Third, *Daubert* allows for the admissibility of scientific evidence, even if not generally accepted in the relevant scientific community, provided its reliability has independent support. Finally, the Court expressed its faith in the power of the adversary system to test "shaky but admissible" evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable.

*Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995). "[R]ejection of expert testimony is the exception rather than the rule." *Fed. R. Evid.* 702 advisory committee's note; *see E.E.O.C. v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 456 (S.D.N.Y. 2004); *Schell & Kampeter, Inc. dba Diamond Feeds v. Menu Foods Limited*, Opposition No. 93,401, Trademark Trial and Appeal Board, 1996 TTAB LEXIS 496, April 17, 1996 (in opposition to summary judgment motion, opposer offered linguistic expert's analysis of terms "professional" and "pro," which TTAB considered).

II.    **Dr. Finegan's Testimony is Relevant, Admissible Evidence.**

Rather than making the obviously futile argument that Dr. Finegan's testimony fails to meet the standards of *Fed. R. Evid.* 702, SHC's first line of attack is the assertion that Dr. Finegan's testimony is irrelevant.

A.    **Courts Find Helpful and Admit
Expert Testimony By Linguists**

But courts have routinely held in trademark actions that expert testimony about the origin, meaning and usage of a word provides "helpful guidance" as to how people use a certain term and the "roots" of the term. *Steak n Shake Co. v. Burger King Corp.*, 323 F. Supp. 2d 983, 993 (E.D. Mo. 2004); *see also WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir. 1984) (upholding district court's reliance on expert testimony from linguist in regional English testifying that the word "opry" was a generic term); *Eastern Air Lines, Inc. v. New York Air Lines, Inc.*, 559 F. Supp. 1270, 1274 (S.D.N.Y. 1983) (finding term "air-shuttle" generic in part based on lexicography expert's opinions setting forth history and present meaning of words "shuttle" and "air-shuttle"). Dr. Finnegan's testimony provides just such guidance, helping to explain the origin of the word "sexy", reference to its dictionary definition and explanation of its widespread figurative use, all of which provide information about how the word is perceived today.

Next, SHC objects to Dr. Finegan's explanation of why the word "sexy" is a descriptive word, in a general sense, and conveys a meaning of "appealing, interesting, and attractive." SHC misconstrues Dr. Finegan's conclusion because SHC wrongly perceives Dr. Finegan's characterization of the word as not meaning much at all. According to SHC's convoluted approach, the word "sexy" cannot be just descriptive, but, rather, it must be "suggestive."

SHC misses the mark in several respects.  First, SHC accuses Dr. Finegan of working from the wrong premise because, according to SHC, it owns an incontestable registration for the mark SEXY HAIR, and, therefore, Victoria's Secret, nor anyone else, may challenge the mark on the grounds of descriptiveness.  (SHC Mem. at 10, n.1) Apparently, SHC ignores the immutable fact that the TTAB's decision rests on the finding that SHC has a family of marks based on the word "sexy," and not based on any of its *individual* registrations.  (Compl., Ex. A; TTAB Op. at 25)  The ownership of an incontestable registration for the mark SEXY HAIR is irrelevant to whether, as a general matter, individuals hearing the term "sexy" are likely to perceive it as being a descriptive term.

> **B.    Dr. Finegan's Testimony is Properly Directed to the Lack of Distinctiveness of the Word "Sexy", and Not of SHC's Individual Marks**

Furthermore, SHC's assertion that it has an incontestable mark is meaningless because the status of a single one of its registrations has no bearing on whether it has a *family* of marks based on the common word "sexy."  Dr. Finegan's testimony about the characteristics of the word that comprises the "surname" to SHC's supposed family is highly relevant to the Court's review of the propriety of the TTAB opinion in this respect. *See Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, NO. 3:02-CV-2518-G, 2004 U.S. Dist. LEXIS 23691, at *28-29 (N.D. Tex. Nov. 22, 2004) (holding that on motion for summary judgment, over one party's objections, court would consider testimony of linguistic expert regarding the classification of the mark in issue).  At a minimum, the diametrically opposite positions

taken by the parties lay bare the existence of genuine issues for trial on the classification of the word.

Layering one misguided argument atop another, SHC contends that its registered mark SEXY HAIR also is entitled to a presumption of acquired distinctiveness, apparently not only as to the SEXY HAIR mark, but for the term "sexy" in general as used in its various marks. This argument is misguided for several reasons. First, because Victoria's Secret has not challenged SHC's registration for the SEXY HAIR mark,, SHC's entire argument about that mark's distinctiveness is simply a red herring. Second, since the only relevant framework is whether SHC may assert rights to a "family" of marks based on the common term "sexy," SHC cannot escape the burden of showing that the public recognizes SHC as the common origin of goods for which the family characteristic is used, *i.e.,* "sexy," merely by pointing to a single one of its registrations. *See J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991).

In attempting to foreclose the relevant expert testimony of Dr. Finegan, SHC tries to muddy the waters by asserting the validity of SHC's mark is not at issue. Yet again, SHC asks the Court to cast a blind eye to one of the fundamental issues arising in this appeal, that is, whether the TTAB's erred in finding that SHC possesses a family of trademarks in the word "sexy" for hair care products. (Compl., Ex. A; TTAB Op. at 25) Dr. Finnegan's testimony is directly relevant to that issue, and should be admitted pursuant to *Fed. R. Evid.* 702.

**III.    Dr. Finegan's Testimony Regarding the Use of the Word "Sexy" and its Lack of Distinctiveness is Highly Probative and Presents No Danger of Unfair Prejudice or Confusion of the Issues**

SHC argues that Dr. Finnegan's testimony is prejudicial and confusing because he applies the wrong standard to his analysis and is unqualified to opine as to whether two marks are confusingly similar.  As an initial matter, SHC's argument is fatally flawed because it fundamentally misunderstands the substance of Dr. Finnegan's testimony.  His testimony explains the origin, meaning and use of the term "sexy," as to which SHC is laying claim to exclusive rights, as a means of understanding the "linguistic facts" about that term as used in the parties' marks.  (Finegan Rpt., ¶¶ 1, 19)  This is an opinion that Dr. Finnegan is eminently qualified to offer.

First, as a noted linguist, Dr. Finegan has written extensively on the subject of linguistics and the English language, including standard textbooks.  His *curriculum vitae* lists dozens of publications he has authored.  His credentials as a linguist are beyond reproach.

SHC's complaint about Dr. Finegan as "not knowing anything about the audience or purchasers of the products sold under the marks" and his supposedly "compare[ing] the marks in a vacuum (Mem. at 12), is utterly nonsensical.  SHC took the position in its papers in support of its motion for summary judgment, and the TTAB and Victoria's Secret accepted, that in the absence of any restrictions in the relevant application and registration, the goods are presumed to be sold to *all* the usual consumers of such goods.  (Compl., Ex. A; TTAB Op. at 20)  For SHC to now assert that Dr. Finegan's report is somehow compromised because he makes no reference to the

purchasers of the parties' products, when the Board operated under the same presumption, simply evidences the inconsistency of SHC's arguments.

That Dr. Finnegan's testimony is appropriate is demonstrated by the court's decision in *Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.,* NO. CIV. S-02-0704 (FCD), 2006 U.S. Dist. LEXIS 89338 (E.D. Cal. Dec. 11, 2006).  In that trademark action, the plaintiff filed a motion *in limine* to exclude the expert testimony of the defendant's expert, a theoretical linguist specializing in the English language, lexical semantics and grammar, to opine on the issue of whether the phrase "yellow cab" is a generic term.  The court ruled that since whether a mark is generic presents a question of fact for the jury, the linguist's expert testimony provided "helpful guidance" regarding the manner in which people use a certain term.  *Yellow Cab*, 2006 U.S. Dist. LEXIS 89338, at *5.  Moreover, even though *Yellow Cab* was to be tried before a jury, the court still found "no basis for the contention that the linguist's testimony would prejudice the jury."  *Id.* at 7.  In the case at bar, with no jury and the Court as the fact-finder, there is no chance of unfair prejudice resulting.

Notably, although SHC complains that Dr. Finnegan applied the wrong standard to his analysis (Mem. at 12), it proffers no *evidence* to challenge his methodology or the reliability of his opinions.  SHC offers no countervailing opinion, nor did it even attempt to depose Dr. Finegan.  Instead, SHC's *counsel* makes a variety of arguments based upon *counsel's* beliefs regarding the foundation of Dr. Finegan's testimony.  But "[a]ttorney argument is not adequate to raise a *Daubert* issue, and thus, there is no basis for exclusion of [the linguist's] testimony under *Daubert*."  *Yellow Cab*, 2006 U.S. Dist. LEXIS 89338, at *6-7.

Nor is SHC's unsupported assertion correct. This Court recently permitted expert testimony by a Russian linguistics and literature scholar in a trademark dispute regarding the correct transliteration of the defendant's name from Russian. *Alfa Corp. v. Oao Alfa Bank*, 475 F. Supp. 2d 357 (S.D.N.Y. 2007). The expert relied largely on his background and experience as an educated native speaker of Russian, and the Court found his expert opinions were founded on sufficiently reliable sources and properly applied to the facts of the case. Dr. Finegan, likewise, relies upon his background and experience as a scholar and linguist in analyzing the word "sexy" and the parties' respective uses.

In contrast, SHC's reliance on *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007), is misplaced. Noting the exceptional nature of the drastic remedy sought in that case, and reiterating the paradigm that "excluding expert testimony is the exception rather than the rule," 525 F. Supp. 2d at 562, Judge Scheindlin approved a Special Master report that, among other things, excluded a "highly technical report and testimony on the similarity of colors between the parties' handbags [that] would not be helpful to the jury because the jury members can observe for themselves whether Dooney & Bourke's mark is confusingly similar to Louis Vuitton's Multicolore Monogram mark ... without the expert's 'digital photography . . . technical jargon and colorimeter approximation.'" 525 F. Supp. 2d at 570. Such testimony is very different from that offered by Dr. Finnegan, which as noted above is of a type that courts have recognized as helpful in trademark cases. Moreover, because the mark at issue in that case was not the colors of the bags, the Court was rightly concerned that evidence showing use of similar colors could result in prejudice. *Id.* at 571.

Likewise, Dr. Finegan's expertise consists of far more specialized and helpful knowledge than the excluded expert in *Trouble v. Wet Seal, Inc.,* 179 F. Supp. 2d 291, 302-03 (S.D.N.Y. 2001), a former retail store executive who did little more than visit stores and compare the products, something the average trier of fact could easily do. Dr. Finegan, on the other hand, offers a specialized analysis that is relevant and probative based on his unique area of expertise.

Dr. Finegan's testimony consists of much more than simply a blanket statement that the SO SEXY mark is not likely to be confused with SHC's family surname, assuming, *arguendo*, such a family exists. In addition, his testimony is directed to a central issue, and, not, as in the Louis Vuitton case that SHC cites, an extraneous issue. As such, it is clearly neither confusing nor prejudicial and should be admitted.

## IV.   Dr. Finegan's Analysis of the Linguistic Structure of the Marks is Highly Probative Regarding the Lack of Any Likelihood of Confusion, and SHC's Asssertions of Prejudice are Unsupported

Dr. Finegan provides an educated and articulate analysis to show how the marks at issue differ fundamentally in linguistic structure. Finegan Report, ¶¶ 11-16. In short, the structure of the so-called SHC family consists of the following pattern: Adjective + Adjective + Noun. For example, BIG SEXY HAIR. The entire expression is a noun phrase based around the pivotal word, which is the noun. The first adjective in the pattern consists of a canonical adjective, and as such share a set of grammatical features:

      i)     They may function attributively (that is, they may occur in an expression preceding a noun), as in *big mistake, straight lines, wild party.*

      ii)    They may function predictively (that is, they may occur as the complement to a copula), as in *It's short, it's straight, and it's wild.*

iii)   They may be inflected for comparative degree, as in *bigger* and *hotter*, and for superlative degree, as in *wildest* and *shortest*.

iv)   They themselves may be modified by a preceding word, as in *very big* and *very straight*.

(Finegan Rpt., ¶ 13)

In contrast, Victoria's Secret's mark, SO SEXY, is an adjective phrase, structured as ADVERB + ADJECTIVE. The entire phrase operates as an adjective phrase around the pivotal adjective SEXY. Though both phrases employ the same adjective SEXY, their placement in distinctly structured phrases casts them with fundamentally different characteristics. The linguistic character of an expression plays an important role in how each terms is stored in and retrieved from memory. (Finegan Rpt., ¶ 17)

Despite Dr. Finegan's lucid explanation, SHC engages in wordplay and asserts incorrectly that its marks are also adjective phrases if HAIR is removed from the phrase. The errors in SHC's argument at this stage multiply. First, SHC cannot just shear the HAIR off its "family". This literal and figurative "scalping" misstates the true nature of the words at issue. Second, in an apparent non-sequiter contained in a footnote, SHC selectively refers to three Victoria's Secret advertisements for its SO SEXY brand. (Mem. at 13-14, n.2) In doing so, SHC misleadingly portrays the ads as using HAIR in a trademark sense, in the same manner that SHC does, rather than in a descriptive sense. Yet, it is apparent from even a glancing review of the advertisements themselves that the word "hair" does convey any trademark meaning because SO SEXY is set off on its own line at the top of the advertisement in different sized type and on a different line from where the word "hair" appears. Furthermore, hair is used in these ads generically, such as "for hair" or "hair care." (Motion, Ex. C)

Finally, SHC's errors are compounded by its accusation that Dr. Finegan is "disingenuous and misleading" because he only opined on the similarity of some but not all of SHC's marks and supposedly disregards SHC's use of SEXY HAIR and SEXY. To begin, because the issue before the Court involves SHC's claim to a "family" of marks, Dr. Finegan's report merely cited as examples some of SHC's marks. He was not required to address each and every one of SHC's marks, particularly since they all follow the same pattern, with the exception of HOT SEXY HIGHLIGHTS). Next, as addressed more fully in Victoria's Secret's opposition to SHC's motion for summary judgment, the record is devoid of any proof that SHC uses SEXY, by itself and not part of a composite mark, so SHC's basis for criticizing Dr. Finegan, once again, is unfounded.

SHC makes a meager attempt to refute Dr. Finegan's explanation of the different linguistic structures at play by citing cases that do nothing to advance its cause. Dr. Finegan explained that the linguistic structure of a noun phrase, such as that embodied in SHC's family, differs dramatically from an adjective phrase, such as SO SEXY, resulting in sub-conscious differences in memory storage and retrieval. Without any scientific, empirical or linguistic proof, SHC casts aspersions on Dr. Finegan's conclusions and trots out as a response, "there is simply no reason to believe that any ordinary consumer of hair care products would be at all sensitive to such a nit-picking distinction."[1]

----

[1] SHC mischaracterizes Dr. Finegan's report by mentioning only that "most speakers would not be consciously aware of" such grammatical differences, and omitting the rest of the sentence, which reads in its entirety:

> The importance of that fact [that the marks differ fundamentally in grammatical structure] in comparing marks and weighing possible confusability is that the grammatical character of an expression in every day use or common parlance, which most speakers would not be consciously aware (certainly not in the grammatical terms linguists use to describe such phenomena), is nevertheless of importance in memory storage and in recall of such expressions."

(Finegan Rpt., ¶ 17)

Dr. Finegan's report and testimony are highly probative evidence whose admission pose no risk of prejudice to SHC or confusion to the trier of fact, especially where, as here, the case will be tried before the Court without a jury. *See Verizon Directories Corp.*, 331 F.Supp.2d 134, at 136. Furthermore, SHC made no effort to rebut or critique Dr. Finegan's expert report other than through unprincipled assertions set forth in its motion. Accordingly, since the probative value of Dr. Finegan's testimony far outweighs any risk of prejudice or confusion, he should be permitted to testify pursuant to *Fed. R. Evid.* 403.

## CONCLUSION

For all of the reasons set forth above, Victoria's Secret respectfully requests that the Court deny defendant's Motion to preclude the testimony of Dr. Finegan.

Dated:     New York, New York
             May 23, 2008

COLUCCI & UMANS

By: *Frank J Colucci*
Frank J. Colucci (FC-8441)
Richard P. Jacobson (RJ-2843)
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **PLAINTIFF'S**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION** *IN*

*LIMINE* **TO PRECLUDE THE TESTIMONY OF EDWARD FINEGAN, Ph.D** was

served on counsel for defendant, Roberta Jacobs-Meadway, Eckert Seamans Cherin &

Mellott, LLC, Two Liberty Place, 50 South 16th Street, 22nd Floor, Philadelphia,

Pennsylvania, 19102, by FedEx, on the 23rd day of May, 2008.