**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

VICTORIA'S SECRET STORES
BRAND MANAGEMENT, INC.,

      Plaintiff,

      v.

SEXY HAIR CONCEPTS, LLC,

      Defendant.

Case No. 07cv-5804 (GEL)

ECF CASE

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE**
**TESTIMONY OF PAUL LABRECQUE**

 

**COLUCCI & UMANS**
Frank J. Colucci (FC-8441)
Richard P. Jacobson (RJ-2843)
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

Attorneys for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT ............................................................................................................. 4

I. PAUL LABRECQUE IS QUALIFIED TO TESTIFY AS AN EXPERT WITNESS ....................................................................................... 4

   A. Standard for Motions *In Limine* and Admissibility of Expert Reports ..... 4

   B. Paul Labrecque's Testimony Satisfies the Criteria of *Fed. R. Evid.* 702.... 5

      1. Mr. Labrecque's Testimony is Based on Sufficient Facts or Data . 6

      2. Mr. Labrecque's Testimony is the Product of Reliable Principles and Methods ............................................................................... 10

      3. Mr. Labrecque Has Applied the Principles and Methods Reliably to the Facts of the Case ....................................................... 11

II. IN THE ALTERNATIVE, PAUL LABRECQUE'S TESTIMONY SHOULD BE ADMITTED AS LAY OPINION TESTIMONY .................... 11

III. MR. LABRECQUE'S TESTIMONY IS HIGHLY PROBATIVE AND PRESENTS NO DANGER OF UNFAIR PREJUDICE OR CONFUSION OF THE ISSUES ................................................................. 14

CONCLUSION ...................................................................................................... 15

# **TABLE OF AUTHORITIES**

## **CASES**

*Andrews v. Metro N. C. R. Co.*,
  882 F.2d 705 (2d Cir. 1989) .................................................................................... 10

*B&G Plastics, Inc. v. Eastern Creative Indus.*,
  98 Civ. 0884 (RMB)(JCF), 2004 U.S. Dist. LEXIS 2311
  (S.D.N.Y. Feb. 18, 2004) ........................................................................................ 12

*Bank of China v. NBM LLC*,
  359 F.3d 171 (2d Cir. 2004) .................................................................................... 13

*Borawick v. Shay*,
  68 F.3d 597 (2d Cir. 1995) ........................................................................................ 5

*Commerce Funding Corp. v. Comprehensive Habilitation Servs.*,
  2004 U.S. Dist. LEXIS 17791 (S.D.N.Y. Sept. 2, 2004) .......................................... 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .............................................................................................. 4, 5

*E.E.O.C. v. Morgan Stanley & Co.*,
  324 F. Supp. 2d 451 (S.D.N.Y. 2004) ...................................................................... 5

*Kuhmo Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .................................................................................................. 4

*Lightfoot v. Union Carbide Corp.*,
  110 F.3d 898 (2d Cir. 1997) (S.D.N.Y. 2007) ........................................................ 12

*McCullock v. H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995) ..................................................................................... 5

*Securitron Magnalock Corp. v. Schnabolk*,
  65 F.3d 256 (2d Cir. 1995) ...................................................................................... 11

*The Helena Assocs., LLC v. EFCO Corp.*,
  06 Civ. 0861 (PKL), 2008 U.S. Dist. LEXIS 39977
  (S.D.N.Y. May 15, 2008) ........................................................................................ 11

*The Paint Products Company, Inc.*,
  8 U.S.P.Q.2d 1863 ................................................................................................... 10

*Trouble v. Wet Seal, Inc.*,
　179 F. Supp. 2d 291 (S.D.N.Y. 2001) ............................................................................ 8

*United States v. Lumpkin*,
　192 F.3d 280 (2d Cir. 1999) ........................................................................................ 5

*United States v. Rea*,
　958 F.2d 1206 (2d Cir. 1992) ..................................................................................... 12

*Verizon Directories Corp.*,
　331 F. Supp. 2d 134 .................................................................................................... 14

*WorldCom, Inc. Sec. Litig.*,
　02 Civ. 3288 (DLC), 2005 U.S. Dist. LEXIS 4549
　(S.D.N.Y. Mar. 24, 2005) ............................................................................................ 13

## STATUTES, REGULATIONS AND RULES

*Fed. R. Evid.* 403 ................................................................................................................ 2, 14

*Fed. R. Evid.* 701 ......................................................................................................... 11, 12, 13

*Fed. R. Evid.* 702 .................................................................................................... 4, 5, 11, 13

*Fed. R. Evid.* 704(a) ........................................................................................................... 12

## SUPPLEMENTAL AUTHORITY

4 Jack B. Weinstein & Margaret A. Berger
*Weinstein's Federal Evidence* § 701.03
　(Joseph M. McLaughlin, ed., 2d ed. 2003) ................................................................. 11

Plaintiff, Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret"), hereby submits this memorandum in opposition to the motion *in limine* and accompanying memorandum filed by defendant, Sexy Hair Concepts, LLC ("SHC") (hereinafter, "Motion" and "Memorandum"), to preclude the expert testimony of Mr. Paul Labrecque, a prominent hair stylist, salon owner and media personality on hair care. Victoria's Secret relies upon the Expert Report of Mr. Paul Labrecque ("Labrecque Rpt.") (appended here to as Exhibit 1) and the Declaration of Paul Labrecque in Opposition to Plaintiff's Motion for Summary Judgment and Motion *In Limine* to Preclude the Testimony of Paul Labrecque ("Labrecque Decl.,") (filed contemporaneously herewith).

## PRELIMINARY STATEMENT

The Trademark Trial and Appeal Board ("TTAB" or "Board") decision upon which Victoria's Secret initiated this appeal is based on the TTAB's finding that SHC owns a family of trademarks in the word "sexy" for hair care products, and that since Victoria's Secret's SO SEXY trademark for hair care products includes the word "sexy," the TTAB concluded that a likelihood of confusion with SHC's family of marks exists. Mr. Labrecque's expert report discusses the widespread use of the word "sexy" in the hair care field, including its use as part of his slogan. (Labrecque Rpt. at 3) Mr. Labrecque concluded that the word "sexy," in the context of hair and beauty products, remains the constant objective of a woman who visits a hair stylist. (Labrecque Rpt. at 4) Therefore, Mr. Labrecque's report states, "it is my opinion, that no one should be able to prevent any other company from using the word sexy not only as an adjective to describe

hair or the effect of hair care products but also using sexy, with another word or words, as a trademark or brand for hair care products. (Labrecque Rpt. at 4)

SHC moves to preclude Mr. Labrecque from testifying by arguing that he does not qualify as an expert. Instead, SHC argues that Mr. Labrecque is only qualified to testify as a lay witness. Finally, SHC contends that Mr. Labrecque's testimony is prejudicial and confusing and should be excluded pursuant to *Fed. R. Evid.* 403. As set forth below, Mr. Labrecque's testimony is directly relevant to a central issue before the Court, namely, the public perception of the word "sexy" based from the perspective of an experienced professional in the relevant field. Accordingly, SHC's motion is meritless and should be denied.

## STATEMENT OF FACTS

Paul Labrecque began training as a hair stylist in 1983. (Labrecque Rpt. at 1). He opened the Paul Labrecque Salon in New York City in 1988. His salon began as a two-seat shop and has grown into two popular and well-regarded salons on both the East Side and West Side of Manhattan, ranked among New York's best. (*Id.*)

Using his name as the brand, Paul Labrecque has developed a full line of hair care products, including shampoo, conditioner, and styling products, such as gel, spray, holding mist, control cream and molding balm. (*Id.*) The products in his line are segmented to address every hair type, such as straight, curly, colored, limp or damaged. (*Id.*) In addition to the Paul Labrecque line, his salons and website also sell quality hair care products from third parties. (*Id.*)

Paul Labrecque is frequently interviewed and written about in countless fashion and beauty magazines and has made numerous television appearances on various

news and entertainment programs. (*Id.* at 2)

In the Labrecque salons, one will find trade and consumer publications regarding fashion, beauty and hair care. These publications frequently feature headlines or articles that promise the reader SEXY new looks, through make-up, clothing, exercise, and hair styles. *(Id.)* Examples of such uses taken from Mr. Labrecque's website were attached to his report as Exhibit A.[1]

Mr. Labrecque's testimony is that the word "sexy" is a core concept in hair care and the word "sexy" is essential to Labrecque's business. The Paul Labrecque philosophy is "Simple. Sexy. Sophisticated." (*Id.* at 3) He has used this motto for the last five years, and it appears on his web site. (*Id.* at 3 and Ex. B) SHC attempts to cast doubt on Mr. Labrecque's veracity by contending, based on inadmissible evidence, that this motto has not appeared on his website for the last five years. (Mem. at 9, n.3) However, SHC misreads Mr. Labrecque's Report because he clearly states he has used the "Simple. Sexy. Sophisticated." for five years, *not* that it has appeared on his website for that period of time. (Labrecque Rpt. at 3)

The essence of Mr. Labrecque's testimony is that the word "sexy" cannot be exclusive to any single purveyor of hair care products:

> Although I understand SHC owns trademarks that include the term "Sexy Hair," in my opinion, no one in the hair care industry, including stylists, salons and producers of product, should be prevented from using the word "sexy" in the context of hair care, either descriptively or as part of a product name combined with one or more other terms. It would be unfair to do so.

(*Id.*)

---

[1] Exhibit A to the Labrecque Report is included herewith, but was not attached to the report appended to SHC's motion *in limine* to preclude Labrecque's testimony.

Mr. Labrecque has styled some of the world's most glamorous and well-known women as well as the "woman on the street":

> Women from all walks of life tell my stylists and me that they want to look sexy. Sexy is a personal equation, but it undoubtedly involves a hairstyle that transforms the woman and brings out her beauty and desirability. In reference to hair, sexy can mean movement, body, hair that is not perfect, uncontrived, somewhat messy, like you just got out of bed.

*(Id.)*

Over nearly twenty-five years as a hair care professional, Mr. Labrecque states that one constant is the objective of a woman who wants to emerge from the chair looking sexy. Mr. Labrecque states, "I firmly believe that hair can be sexy because a great hairstyle makes a woman look and feel sexy." *(Id.* at 4) Mr. Labrecque's opinion is that no one should be able to prevent any other company from using the word "sexy" not only as an adjective to describe hair or the effect of hair care products but also using "sexy," with another word or words, as a trademark or brand for hair care products. *(Id.)*

## ARGUMENT

### I. PAUL LABRECQUE IS QUALIFIED TO TESTIFY AS AN EXPERT WITNESS

#### A. Standard for Motions *In Limine* and Admissibility of Expert Reports

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, 2004 U.S. Dist. LEXIS 17791, at *12 (S.D.N.Y. Sept. 2, 2004). Pursuant to *Fed. R. Evid.* 702, the Supreme Court has held that, in order to be deemed admissible, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *see Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999). It is also necessary for courts to take into account an

expert's experience, training and/or education when determining whether an expert is qualified to render an opinion. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995).

A witness qualified as an expert will be permitted to testify if his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (quoting *Fed. R. Evid.* 702). To be admissible, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). In construing *Daubert*, the Second Circuit has emphasized the broad discretion of the trial court to admit expert testimony:

> First, . . . *Daubert* reinforces the idea that there should be a presumption of admissibility of evidence. Second, it emphasizes the need for flexibility in assessing whether evidence is admissible. Rather than using rigid "safeguards" for determining whether testimony should be admitted, the Court's approach is to permit the trial judge to weigh the various considerations pertinent to the issue in question. Third, *Daubert* allows for the admissibility of scientific evidence, even if not generally accepted in the relevant scientific community, provided its reliability has independent support. Finally, the Court expressed its faith in the power of the adversary system to test "shaky but admissible" evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable.

*Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995). "[R]ejection of expert testimony is the exception rather than the rule." *Fed. R. Evid.* 702 advisory committee's note; *see E.E.O.C. v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 456 (S.D.N.Y. 2004)

### B. Paul Labrecque's Testimony Satisfies The Criteria of *Fed. R. Evid.* 702

*Fed. R. Evid.* 702 provides in pertinent part, that if "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a

witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto…" The conditions for such testimony are that

1. The testimony is based on sufficient facts or data;
2. The testimony is the product of reliable principles and methods; and
3. The witness has applied the principles and methods reliably to the facts of the case.

### 1. Mr. Labrecque's Testimony is Based on Sufficient Facts or Data

Paul Labrecque is qualified by his specialized knowledge, education, training, experience, business success and acumen in the hair and beauty industry to be an expert witness on the hair industry. Vanity Fair magazine named Mr. Labrecque one of the top three hair stylist in the United States. (Labrecque Rpt., Ex. B ) As the president of a multimillion-dollar business with several hundred employees and a roster of thousands of clients prominent in business, politics, and the arts, Mr. Labrecque is relied upon by the media as an expert on the hair industry. (Labrecque Decl., ¶ 3) He regularly appears on television programs such as *The Today Show* as an expert hair stylist. (*Id.*) He has been the subject of countless articles in magazines and publications such as *The New York Times, WWD, Details, Wallpaper, Town and Country, Gotham, Bazaar, New York, Elle, Lucky,* and *Nylon,* for his opinions on hair styles and products. (*Id.*) Mr. Labrecque is acknowledged in the leading beauty and fashion publications, such as *Vogue, Allure* and *In Style*, as an expert in the hair and beauty industry. (*Id.*, ¶ 4) In addition, Mr. Labrecque puts out his own line of hair care products, bearing his name as the trademark. (Labrecque Rpt. at 1-2)

Thus, the facts and data that comprise Mr. Labrecque's opinion are sufficient because they rest upon Mr. Labrecque's more than twenty-five years as a leader in the hair care field, who has styled thousands of heads of hair, and put out his own line of hair care products.

To the extent SHC tries to disqualify Mr. Labrecque by painting him as catering solely to "the moneyed class," this effort is misguided. Mr. Labrecque salons offer a wide variety of services and his prices are in line with those charged by many other hair salons in New York City.[2]

SHC correctly notes that VS did not petition to cancel SHC's registration of SEXY HAIR, but that is not the point. SHC's marks are composite marks of which the word "sexy" is one element. Victoria's Secret's mark, in contrast, is SO SEXY, not SO SEXY HAIR. Merely because SHC has registrations featuring the word "sexy" does not mean that no one else can use a composite mark that includes the word SEXY. Yet, for SHC to assert it has "never claimed a monopoly on the word 'sexy'" is disingenuous and misleading. The issue is not the descriptive use of "sexy" – because, by definition, SHC is incapable of stopping such usage – but rather whether the common word "sexy" may be exclusively appropriated by a single entity for an entire product category where that word is endemic to the purpose of the product. (Labrecque Rpt. at 4)

The unique framework of this appeal actually would have permitted SHC to assert counterclaims for trademark infringement and unfair competition, if it had chosen to do so. Indeed, it could have done so once Victoria's Secret's SO SEXY

---

[2] SHC misinterprets Mr. Labrecque's Services Menu that is attached to the Declaration of John F. Metzger as Ex. G. Aside from its admissibility as hearsay (see Motion to Strike Metzger Declaration filed herewith), SHC incorrectly asserts one must pay an additional $60 for a blow dry on top of the base price for a hair cut. (Mem. at 6) In fact, a hair cut includes a blow out, and SHC obviously misstates the items on Mr. Labrecque's Services Menu. (Labrecque Decl., ¶ 5)

products entered the marketplace. Even today, SHC could pursue such claims outside the confines of this appeal. That SHC has never even threatened a claim of trademark infringement casts a bright light on the glaring deficiencies to its claims.

Nevertheless, as SHC frequently states, the only issue before this Court is the registrability of SO SEXY by Victoria's Secret. Even if the Court somehow affirmed the decision of the TTAB, it would have no impact on Victoria's Secret's right to continue *using* the mark. Such a result merely would prevent VS from obtaining a registration for the mark.

Nevertheless, the implications are significant because there is more at stake here than just SO SEXY. Any application for a mark created by Victoria's Secret featuring SEXY as a component that includes hair care products will be vulnerable to challenges by SHC, as it has done with numerous other applications before the TTAB, even with no apparent likelihood of confusion.

The facts of this case are distinguishable from those of *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291 (S.D.N.Y. 2001), which is cited by the SHC. In that case, expert testimony on technical issues such as the likelihood of brand confusion and the resulting damages was disqualified for lack of sufficiently rigorous quantitative methodology. *Id.* at 302-03. Unlike the expert that the Court excluded in *Wet Seal*, Mr. Labrecque is not opining on the likelihood of confusion. The expert in that case, a former retail store executive, did little more than visit stores and compare the products, which is something the average trier of fact could easily do. *Id.* Mr. Labrecque, by contrast, describes the impact and significance of the word "sexy" to consumers of hair care products and services as an expert in the field. Based on his expertise and constant

contact with purchasers and users of hair care products, his testimony is relevant to the issue of consumer perception of the term "sexy."

Likewise, unlike the expert who testified in another case cited by SHC, *Andrews v. Metro N. C. R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989), that a train station platform had trash and ice on it and that the lighting was very dim, Mr. Labrecque offers more than a lay perspective on the scene of an alleged tort. Rather, Mr. Labrecque's testimony drives home the point, based on years of experience, that the word "sexy" is used prevalently throughout the hair care industry. While the jury in the *Andrews* case needed no special training or expertise to decide whether the platform was a "safe place," the Court benefits from the expertise of Mr. Labrecque as a professional in the relevant industry. He is not testifying about personal observations regarding a store or products or train platform. On the contrary, his testimony is predicated upon decades of observations and experience that have resulted in his designation as one of America's top three hair stylists, the owner of two successful salons and the producer of his own line of hair care products and the seller of third party hair care products.

Moreover, Mr. Labrecque's testimony serves a completely different purpose from the interested parties referred to in two other cases cited by SHC. (Mem. at 8) *Curtice-Burns, Inc. v. Northwest Sanitation Prods., Inc.*, 185 U.S.P.Q. 61 (T.T.A.B. 1975), *aff'd*, 530 F.2d 1396 (C.C.P.A. 1976), is completely irrelevant because the petitioner proffered testimony from four store managers that handled its products to try to show likelihood of confusion, but two acknowledged that they did not even handle the respondent's products, and the other two individuals who managed stores in which the products of both parties were marketed testified that they were not directly aware of any

instances of actual confusion. *Curtice-Burns*, 185 U.S.P.Q. at 62. On that basis, the Board found such testimony lacked credibility and was nothing more than opinion evidence. Mr. Labrecque's overview of the public perception of "sexy", on the other hand, is an entirely different matter.

Similarly, *In re The Paint Products Company, Inc.*, 8 U.S.P.Q.2d 1863, 1866 (T.T.A.B. 1988), also is inapposite because the affidavits sought and collected by the applicant from ten customers who had dealt with the applicant for many years were not persuasive on the issue of how the average customer for paints perceives the words "PAINT PRODUCTS CO." in conjunction with paints and coatings. Again, Mr. Labrecque stands in entirely different shoes from the customer affidavits the applicant offered in the cited case to try to overcome a descriptiveness objection.

### 2. Mr. Labrecque's Testimony is the Product of Reliable Principles and Methods

Mr. Labrecque's testimony employs reliable principles and methods. After describing his background and qualifications, Mr. Labrecque set forth his expert opinion based on his familiarity with the industry and on his experience, review of trade publications covering the hair care and salon industries as well as fashion and beauty magazines, and use of the word "sexy" as an integral part of his business

SHC erroneously claims Mr. Labrecque's testimony about the word "sexy" has no context. On the contrary, Mr. Labrecque explains the ubiquitous use of the word "sexy" in his business and its importance to the users of hair care products. Remarkably, SHC mischaracterizes Victoria's Secret's position as trying to exclusively appropriate the word "sexy" for itself (Mem. at 10) when it is apparent from the posture and duration of this case that this is SHC's objective.

-10-

### 3. Mr. Labrecque Has Applied the Principles and Methods Reliably to the Facts of the Case

Mr. Labrecque's expert report sets forth the bases for his conclusions. He has applied his expertise to the facts of the case and offers useful information to the trier of fact on important issues, not the least of which is the significant role of the word "sexy" and its prevalent use in the hair care industry in general and as part of his business in particular.

## II. IN THE ALTERNATIVE, PAUL LABRECQUE'S TESTIMONY SHOULD BE ADMITTED AS LAY OPINION TESTIMONY

In addition to its admissibility as expert testimony under Rule 702, or in the alternative, Mr. Labrecque's testimony is admissible as lay opinion testimony under *Fed. R. Evid.* 701. Rule 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Lay opinion testimony is admissible when the inference is a conclusion drawn from a series of personal observations over time. 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 701.03 (Joseph M. McLaughlin, ed., 2d ed. 2003). Courts have permitted lay witnesses to testify under *Fed. R. Evid.* 701 to their opinions when those opinions are based on a combination of their personal observations of the incident in question and background information they acquired through earlier personal observations. *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995). Moreover, a witness' experience and specialized knowledge obtained in his or her vocation should certainly be taken into consideration. *The Helena Assocs.,*

-11-

*LLC v. EFCO Corp.*, 06 Civ. 0861 (PKL), 2008 U.S. Dist. LEXIS 39977, at *14 (S.D.N.Y. May 15, 2008). The fact that the lay opinion testimony bears on the ultimate issue in the case does not render it inadmissible. *Fed. R. Evid.* 704(a); *see United States v. Rea*, 958 F.2d 1206, 1214-15 (2d Cir. 1992).

Mr. Labrecque's testimony satisfies the rational-basis and helpfulness requirements of Rule 701. The rational-basis requirement of Rule 701 "is the familiar requirement of first-hand knowledge or observation." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997). As the president of a major hair care salon and spa and producer of his own line of products and someone who has been involved in the hair care field for over 25 years, Mr. Labrecque certainly has sufficient experience in the industry to offer an opinion on his perception of the word "sexy" insofar as it is used in connection with hair care and related products. His opinion is based on both his observations of the marketplace and background information he has acquired about the industry from his experience. *See B&G Plastics, Inc. v. Eastern Creative Indus.*, 98 Civ. 0884 (RMB)(JCF), 2004 U.S. Dist. LEXIS 2311, at *25 (S.D.N.Y. Feb. 18, 2004).

Moreover, Mr. Labrecque's testimony could be useful in helping the trier of fact understand both the industry and the marks in question. "This helpfulness requirement is designed to provide assurance[] against the admission of opinions which would merely tell the jury what result to reach." *Lightfoot*, 110 F.3d at 912. Thus, even if not characterized as an expert, Mr. Labrecque's testimony can be helpful in describing a specialized industry to the trier of fact. *See B&G Plastics*, 2004 U.S. Dist. LEXIS 2311, at *25. His testimony is sufficiently reliable and helpful to be admissible under Rule 701.

In addition, nothing precludes a witness from offering both *lay* and *expert* testimony. According to the Advisory Committee on the Federal Rules of Evidence, what separates expert and lay testimony is that "lay testimony results from a process of reasoning *familiar in everyday life*," whereas "expert testimony results from a process of reasoning *which can be mastered only by specialists in the field.*" Fed. R. Evid. 701 advisory committee's note (2000) (emphasis in original) (citation omitted). The Second Circuit contemplated the appropriate classification of a witness's testimony in greater detail in *Bank of China v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004) (since a witness may provide both lay and expert testimony within a single case, the witness's testimony regarding banking custom and practice, and the definition of terms used therein, could have been offered under Rule 702, so long as the plaintiff established reliability and disclosed the witness as an expert). There is no dispute that Victoria's Secret properly and timely identified Mr. Labrecque as an expert witness to SHC. Furthermore, even if a witness testifies about his perceptions, he still may do so as a retained expert. *See In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288 (DLC), 2005 U.S. Dist. LEXIS 4549, at *7-8 (S.D.N.Y. Mar. 24, 2005) (characterizing as expert testimony consultant's testimony based on knowledge of computer system through which WorldCom's general ledger was maintained even though testimony concerned ease with which he identified improper line cost journal entries in general ledger).

### III. MR. LABRECQUE'S TESTIMONY IS HIGHLY PROBATIVE AND PRESENTS NO DANGER OF UNFAIR PREJUDICE OR CONFUSION OF THE ISSUES

As a top hair stylist and brand owner, Mr. Labrecque is familiar with the pubic perception of hair and products used with the hair. His expertise and experience render him uniquely qualified to testify about the impact of the word "sexy" in the hair care field.

Although SHC asserts that Mr. Labrecque's testimony is prejudicial and confusing, it offers no foundation as to how it would be prejudiced. Mr. Labrecque's report and testimony are highly probative evidence whose admission pose no risk of prejudice to SHC or confusion to the trier of fact, especially where, as here, the case will be tried before the Court without a jury. *See Verizon Directories Corp.*, 331 F.Supp.2d 134, at 136. Furthermore, SHC made no effort to rebut or critique Mr. Labrecque's expert report other than through unprincipled assertions set forth in its motion. Accordingly, since the probative value of Mr. Labrecque's testimony far outweighs any risk of prejudice or confusion, he should be permitted to testify pursuant to *Fed. R. Evid.* 403.

-15-

## CONCLUSION

For all of the reasons set forth above, Victoria's Secret respectfully requests that the Court deny SHC's Motion to preclude the testimony of Mr. Labrecque.

Dated:   New York, New York
         May 23, 2008

COLUCCI & UMANS

By: *[signature]*

Frank J. Colucci (FC-8441)
Richard P. Jacobson (RJ-2843)
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF PAUL LABRECQUE** was served on counsel for defendant, Roberta Jacobs-Meadway, Eckert Seamans Cherin & Mellott, LLC, Two Liberty Place, 50 South 16th Street, 22nd Floor, Philadelphia, Pennsylvania, 19102, by FedEx, on the 23rd day of May, 2008.

*[signature]*