# EXHIBIT A TO

# REPLY BRIEF RE: GERALD FORD

# MOTION IN LIMINE

THIS OPINION IS NOT
A PRECEDENT OF
THE T.T.A.B.

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

WINTER

Mailed:  March 4, 2008

Cancellation No. 92044883

Meier's Wine Cellars, Inc.

v.

Meyer Intellectual Properties
Limited

Before Hairston, Kuhlke and Bergsman,
Administrative Trademark Judges.

By the Board:

Meier's Wine Cellars, Inc. ("petitioner") seeks to cancel
the registration of Meyer Intellectual Properties Limited
("respondent") for the mark MEYER VINEYARD for "wine."[1]  As
grounds for cancellation, petitioner claims ownership and
priority of use of the mark MEIER'S and likelihood of
confusion.  In support of its claims, petitioner alleges
common law use of the mark MEIER'S in connection with
sparkling fruit juices and wines since as early as 1895 and
1935, respectively; that registration of its mark for use with

---

[1] Registration No. 2799507 issued on December 23, 2003 on the
Supplemental Register, with the term "vineyard" disclaimed.

**Cancellation No. 92044883**

certain goods in International Classes 32 and 33[2] has been
refused by the Trademark Examining Operation under Trademark
Act Section 2(d), 15 U.S.C. § 1052(d), based on a likelihood
of confusion with respondent's mark; and that continued
existence of respondent's registration will be a source of
damage and injury to petitioner in that it will be unable to
obtain a registration for its mark.

Respondent, in its amended answer, has denied the
essential allegations of the amended petition to cancel.[3]

This case now comes up on petitioner's fully briefed
motion (filed May 9, 2006) for summary judgment in its favor
on its claims of priority and likelihood of confusion.

Summary judgment is an appropriate method of disposing of
cases in which there are no genuine issues of material fact in
dispute, thus leaving the case to be resolved as a matter of
law. *See* Fed. R. Civ. P. 56(c). The purpose of summary
judgment is one of judicial economy, that is, to save the time
and expense of a useless trial where no genuine issue of
material fact remains and more evidence than is already
available in connection with the summary judgment motion could

---

[2] Application Serial No. 76465378, filed November 7, 2002.

[3] Respondent has also asserted six affirmative defenses, which,
apart from a bald assertion of laches, are essentially
amplifications of respondent's denials of the allegations in the
petition to cancel. Respondent has not made any reference to laches
in its response to petitioner's motion for summary judgment.

2

Cancellation No. 92044883

not reasonably be expected to change the result.  *Pure Gold,
Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 222 USPQ 741, 743
(Fed. Cir. 1984).

A party moving for summary judgment has the burden of
demonstrating the absence of any genuine issue of material
fact, and that it is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56(c); and *Celotex Corp. v. Catrett*, 477 U.S.
317, 106 S. Ct. 2548 (1986).  Additionally, the evidence must
be viewed in a light favorable to the non-movant, and all
justifiable inferences are to be drawn in the non-movant's
favor.  *See Opryland USA, Inc. v. Great American Music Show,
Inc.*, 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1993).

Petitioner first argues that there is no genuine issue of
fact as to whether it used the MEIER'S mark "previously" in
the United States.  In support of its claim of priority,
petitioner has introduced the declaration of its chairman,
Robert A. Manchick, who avers that petitioner "has used the
MEIER'S mark continuously on wine and juice for more than 100
years and continues to use the mark on wine and juice to the
present day."[4]  Mr. Manchick states further that labels such
as those currently in use have been used since "well prior to

---

[4] We note that the first amended petition to cancel alleges use of
MEIER'S as a trademark for wines "since at least as early as 1935";
and we further note that petitioner asserts "1934" as its date of
first use anywhere and in commerce in its pending application Serial
No. 76465378.

3

**Cancellation No. 92044883**

2002," which is the date of first use claimed by respondent.[5]
Specifically, attached to the Manchick declaration is an
exhibit containing photocopies of representative wine labels
used on the date on which the motion for summary judgment was
filed (Manchick declaration, Exhibit A); and numerous other
exhibits showing wine labels bearing the mark MEIER'S and the
approvals of those wine labels by the relevant Federal agency
between 1945 and 2003 (Manchick declaration, Exhibits B
through O).[6]  Also attached to said declaration are exhibits
comprising printouts of various advertising materials dating
from the 1960's through 1992 for MEIER'S wines, some of which
show pictures of labeled wine bottles bearing the mark MEIER'S
(Manchick declaration, Exhibits P, Q, R, and S).  Further, Mr.
Manchick also attests that petitioner's website has been used
for promoting wines sold under the mark MEIER'S since the late
1990s and that it is still used for that purpose, and has
submitted undated printouts from petitioner's website, which
show information on various wines sold in connection with the

_____

[5] The date of first use anywhere and in commerce set forth in the
subject registration is August 1, 2002.  In its answers to
petitioner's first set of interrogatories, respondent states, "the
earliest date for the mark MEYER VINEYARD on wine was November
2002."

[6] Exhibits B through O show approved wine labels by either the
Department of the Treasury - Alcohol and Tobacco Tax and Trade
Bureau, the Department of the Treasury - Bureau of Alcohol, Tobacco
and Firearms, or the U.S. Treasury Department - Internal Revenue
Service.

**Cancellation No. 92044883**

MEIER'S mark (Manchick declaration, Exhibit T). To further support its use of the MEIER'S mark on its website, petitioner has also provided, by way of the declaration of Diane M. Jacquinot (an employee of petitioner's counsel), a printout dated April 6, 2006 from petitioner's website (attached as Exhibit JA thereto).

Petitioner also contends "there is no genuine issue of fact that … [t]here is a likelihood of confusion between the MEIER'S mark and the MEYER VINEYARD trademarks [*sic*]." In particular, petitioner argues that the parties' goods are identical and move in the same trade channels to the same classes of purchasers; the degree of similarity required to find likelihood of confusion between the marks is less than in situations where the goods are dissimilar and non-competing; and, therefore, the Board should enter judgment in its favor because the marks are "strikingly similar with respect to appearance and sound." Petitioner also argues, in essence, that the term "vineyard" in respondent's mark does not distinguish the marks because the term merely describes the source of the grapes from which the wines are made. For evidentiary support that the trade channels of the parties' goods are identical, petitioner has provided printouts from the Internet, which show that both MEIER'S wines and MEYER

Cancellation No. 92044883

VINEYARD wines can be viewed and/or purchased on-line (Jacquinot declaration, Exhibits JA and JB).

Petitioner also argues that other factors set forth in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) weigh in its favor for finding likelihood of confusion as a matter of law. Specifically, petitioner contends that in recent years wine purchasers have become less careful and considered, and might easily mistake petitioner's goods sold in connection with the mark MEIER'S for a MEYER VINEYARD brand of wine (Jacquinot declaration, Exhibits JC and JD). Additionally, petitioner argues that its trademark should be considered to be famous, based on its many years of use and "prominent advertising in publications" such as *The Wine Spectator*, *Gourmet* and *Vegetarian Times* magazines (Manchick declaration, Exhibits V, S, and AF).

In opposition to the motion, respondent contends that petitioner does not have priority over the MEYER VINEYARD mark because petitioner has never used the mark MEYER VINEYARD (respondent's mark), nor claimed any ownership of it.[7] This argument is not persuasive. The issue of priority is not determined by whether petitioner has ever used respondent's

---

[7] We note, however, that respondent conceded petitioner's prior use in commerce of its trade name, MEIER'S, in ¶2 of respondent's motion (filed June 9, 2006) under Fed. R. Civ. P. 56(f).

Cancellation No. 92044883

mark; rather, the issue is whether petitioner acquired rights in its mark prior to the date on which respondent acquired rights in its own mark.  Further, because both MEIER'S and MEYER are surnames, the determination of priority must be based not on when each party first used its respective term, but when it acquired trademark rights in the term.  *See Perma Ceram Enterprises Inc. v. Preco Industries Ltd.*, 23 USPQ2d 1134, 1136 (TTAB 1992)(because neither party's mark is inherently distinctive, the issue of priority turns on the priority of acquisition of acquired distinctiveness).  As noted previously, respondent's mark MEYER VINEYARD is registered on the Supplemental Register (with "vineyard" disclaimed), an acknowledgement that MEYER VINEYARD is not inherently distinctive and also an acknowledgement that the mark had not acquired distinctiveness as of the filing date of the underlying application.[8]  Because petitioner is relying on its common law rights, we must first determine whether there is a genuine issue as to whether petitioner acquired rights in MEIER'S *as a trademark* prior to respondent's acquiring trademark rights in MEYER VINEYARD.  *See Otto Roth & Co. v.*

---

[8] At the time applicant amended its application to the Supplemental Register (by Examiner's Amendment), applicant also disclaimed the word "vineyard."  Because the registration is on the Supplemental Register, the word "vineyard" would have been considered generic. Respondent's disclaimer of "vineyard" is a concession that it is a generic term when used in connection with wine.  *See In re Volvo White Truck Corp.* 16 USPQ2d 1417, 1420 (1990).

Cancellation No. 92044883

*Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40 (CCPA 1981).
We find that petitioner has established, through the Manchick
declaration and evidence attached thereto, use of the MEIER'S
mark in connection with wines from at least 1945 to present.
Petitioner has also established that it has advertised its
mark since at least 1992.  In view of this long use and
advertising, we find that petitioner has established that it
acquired trademark rights in the mark MEIER'S prior to 2002.
*See* TMEP 1212.05(a) (for most surnames, a statement of five
years use is sufficient to establish acquired
distinctiveness).  Respondent has not submitted any evidence
of its use, and therefore, even if we treat the September 30,
2002 filing date of respondent's underlying application as
evidencing respondent's acquisition of trademark rights, there
is no genuine issue that petitioner has made earlier trademark
use.  As a matter of law, petitioner has established priority.

    As to whether there is a material issue of fact regarding
petitioner's claim of likelihood of confusion, respondent
primarily argues that the mark actually used by petitioner on
its labels is MEIER'S WINE CELLARS.  Based on that assertion,
respondent contends that when comparing MEYER VINEYARD with
MEIER'S WINE CELLARS, the marks are not confusingly similar
because they sound different and evoke different commercial
impressions.  Consequently, because the marks are allegedly

Cancellation No. 92044883

significantly different, respondent contends that petitioner's famous mark argument is "negated." Additionally, respondent argues that it adopted its mark in good faith and, in support thereof, has provided the declaration of Dean Krause, Vice President and General Counsel for respondent, who attests that the MEYER VINEYARD mark was derived from the name of a corporate affiliate, which has used the name MEYER for housewares since the 1950's. Respondent also relies heavily on a shopping mall intercept survey and expert opinion thereon to argue that there is no likelihood confusion between the parties' marks.

Respondent also argues that it is an admission against interest and disingenuous for petitioner to now argue that there exists a likelihood of confusion when it argued before the Examining Attorney that there is no likelihood of confusion with respondent's registration that, as noted previously, had been cited against petitioner's application.

Respondent's Survey

In connection with whether there exists a material fact in issue as to petitioner's claim of likelihood of confusion, we first address the probative value of respondent's shopping mall intercept survey. For the reasons set forth below, we consider the survey, which allegedly shows that there is no likelihood of confusion between the two marks, to be so

**Cancellation No. 92044883**

seriously flawed that it fails to raise a genuine issue with respect to the likelihood of confusion between the parties' marks.

The survey was conducted in four geographically disparate cities by independent marketing research firms under the direction of Craig M. Joseph, PhD, a director at FTI Consulting, Inc., a forensic and litigation consulting and research firm.  The survey questions and Dr. Joseph's expert report (and exhibits thereto) regarding the survey results were introduced by way of the declaration of Dr. Joseph.

We will not burden this opinion with an exhaustive discussion of all the flaws we have found in the methodology of the survey, but will limit our discussion to a few examples.  First, there is a problem with the stimulus, in that the survey respondents were shown respondent's entire wine bottle, including the full label, rather than just the mark.  The Board has held that surveys, such as respondent's, which embellish the stimulus with features that are not directly involved in the determination of likelihood of confusion, have limited probative value.  *See, e.g., Carl Karcher Enterprises Inc. v. Stars Restaurants Corp.*, 35 USPQ2d 1125, 1132 n.19 (TTAB 1995); *Marshall Field & Co. v. Mrs. Fields Cookies*, 25 USPQ2d 1321, 1334 (TTAB 1992); and *Miles Laboratories, Inc. v. Naturally Vitamin Supplements, Inc.*, 1

**Cancellation No. 92044883**

USPQ2d 1445, 1459 (TTAB 1986)("a labeled … multivitamin
tablets jar would have introduced irrelevant matter, thereby
destroying any probative value of the survey for our
purposes").

The interviewees were instructed to look at the "bottle"
and were then shown a bottle of respondent's wine bearing the
information "Meyer Vineyard 2003 Napa Valley Cabernet
Sauvignon" on the label (Expert Report, page 7; Exhibit 2 to
Joseph declaration).  After the bottle was removed from view,
the survey respondents were informed that the interviewer
would ask questions "*about the bottle* you just looked at."
(Consumer Survey, page 2; Exhibit 3 to Joseph declaration;
emphasis added)  As a result, the majority of the survey
respondents focused on features of the bottle apart from the
mark, *i.e.* the trade dress comprising the color and shape of
the bottle and label, and other data on the bottle such as the
geographic origin of the product (*i.e.* Napa Valley).  For
instance, in response to the question, "First, can you
describe what you saw," 68.2 percent of the survey respondents
mentioned the black or dark color of the bottle, 39.1 percent
referred to the gold lettering or writing on the bottle label,
and 5 percent remarked that the bottle was "heavy."

Another obvious flaw in the survey is the fact that the
label presented to the interviewees included the wording "Napa

**Cancellation No. 92044883**

Valley." Because the bottle label referred to the geographic region "Napa Valley," and because petitioner's wine is made in Ohio, survey respondents may have ruled out petitioner as the source of the wine.[9] Additionally, in response to the question, "who do you think puts out the wine you just saw," fewer than half of the survey respondents, *i.e.* 48.2 percent stated "MEYER"; 30% percent answered "don't know"; and 11.8% answered "Napa Valley." Thus, over half of the survey respondents may not have even noticed respondent's trademark.

The survey also failed to account for the highly similar spelling of the parties' marks. Specifically, even though the survey respondents were asked to spell all proper names in their answers, the survey did not include a control question to distinguish whether the survey respondents remembered the correct spelling of petitioner's mark and, therefore, whether they believed that the mark on the label was in fact petitioner's mark. Thus, even when spelling the answer "MEYER", a survey respondent could have been referring to petitioner.

---

[9] We note that many of petitioner's wine labels of record state that the wine is made in Ohio. Further, in response to the survey questions addressing association confusion, one survey respondent stated, "thought it might be confused with another company that is Ohio based but spell [*sic*] it [Meijer's]" (Expert Report, page 15; Exhibit 2 to Joseph declaration).

Cancellation No. 92044883

As a result of the lack of a control feature and of
"probing questions," we cannot ascertain from the survey
responses whether the interviewees saw respondent's mark as
being separate from petitioner or, instead, as being
petitioner's mark.  For example, the survey did not include
probing questions such as, "What makes you think so?"  *See,*
*e.g., Starbucks U.S. Brands LLC and Starbucks Corporation*
*d.b.a. Starbucks Coffee Company v. Marshall S. Ruben*, 78
USPQ2d 1741 (TTAB 2006); and *Union Carbide Corporation v.*
*Ever-Ready Inc.*, 531 F.2d 366, 188 USPQ 623, 641 (7th Cir.
1976), *cert. denied*, 429 U.S. 830, 191 USPQ 416 (1976).  Such
questions could have shed light on why the survey respondents
answered as they did.  In *Ava Enterprises, Inc. v. Audio Boss*
*USA, Inc.*, 77 USPQ2d 1783 (TTAB 2006), the survey included a
question related to whether the separately viewed marks came
from the same or different companies.  After responding to
that question, survey respondents were asked, "Why do you feel
that way?"  The majority of reasons given for confusion
related to the similarity in the appearance of the parties'
marks.  *Audio Boss*, 77 USPQ2d at 1787.  Here, in contrast,
there exists no such clarifying information.

In view of the numerous flaws in the design of the
survey, we find the survey to be without probative value for
purposes of determining likelihood of confusion between the

13

Cancellation No. 92044883

parties' marks.  Accordingly, the survey does not raise a genuine issue of fact that would preclude entering summary judgment.

Considering the evidentiary factors set forth in *du Pont supra,* we find that there are no genuine issues of material fact relating to the issue of likelihood of confusion.  First, there is no genuine issue that petitioner uses the mark on wine.  Because respondent's identification of goods is for wine, the goods are legally identical.  *See In re Elbaum,* 211 USPQ 639, 640 (TTAB 1981).  In view thereof, there is no genuine issue that they travel in the same channels of trade and would be sold to the same classes of consumers.  *Id.*

We now consider whether there is a genuine issue of material fact as to the similarity or dissimilarity of the parties' marks in their entireties as to appearance, sound, connotation and commercial impression.  In comparing the marks, we are mindful that the test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression so that confusion as to the source of the goods offered under the respective marks is likely to result.  The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks.  *See*

14

**Cancellation No. 92044883**

*Dassler KG v. Roller Derby Skate Corporation*, 206 USPQ 255 (TTAB 1980); and *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975).

Petitioner's mark, MEIER'S, and the dominant portion of respondent's mark, MEYER, are virtually phonetically identical and, because of their similar spelling, are very similar in appearance. *See, e.g., Kabushiki Kaisha Hattori Tokeiten v. Scuotto*, 228 USPQ 461 (TTAB 1985) (SEYCOS and design for watches held likely to be confused with SEIKO for watches and clocks); and *In re Mack*, 197 USPQ 755, 757-758 (TTAB 1977). The marks comprise highly similar surnames and thus evoke highly similar connotations and commercial impressions. Further, the additional element "VINEYARD" in respondent's mark does not serve to distinguish the marks; the term, which respondent has disclaimed, merely indicates the location from which wine comes and, based on respondent's disclaimer, is generic for the goods. See footnote 8. Descriptive terms are properly accorded less weight in the likelihood of confusion analysis; generic terms have no source-identifying significance. *See In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

Accordingly, although there are minor differences in the marks, these differences are not sufficient to raise a genuine issue about the similarity of the marks.

Cancellation No. 92044883

Respondent has also argued that petitioner's mark should be treated as "MEIER'S WINE CELLARS" as opposed to MEIER'S *per se*. We disagree. The majority of petitioner's wine labels in evidence show MEIER'S either to be the only mark on those wine labels or to convey a commercial impression separate from "Wine Cellars." Further, the labels that show "MEIER'S" and the wording "Wine Cellars" are frequently used in conjunction with a smaller second label that shows the MEIER'S mark alone. In any event, even if we were to treat petitioner's mark as "MEIER'S WINE CELLARS," "wine cellars" is highly descriptive of wine, and therefore is entitled to less weight in the likelihood of confusion analysis.[10] *See In re National Data Corp.*, *supra*. When MEIER'S WINE CELLARS and MEYER VINEYARD are compared in their entireties, the words WINE CELLARS do not serve to distinguish the marks. For the same reasons we have discussed in our analysis of MEIER'S and MEYER VINEYARD, we find that there is no genuine issue that MEIER'S WINE CELLARS and MEYER VINEYARD are very similar.

We find that there is no genuine issue that the goods, the channels of trade and classes of customers are legally

---

[10] We take judicial notice of the wording "wine cellar," namely, "a stock of wines" from Merriam-Webster's Online Dictionary, at www.merriam-webster.com, ©2007-2008 Merriam-Webster, Incorporated. *See University of Notre Dame du Lac. V. J. C. Gourmet Food Imports Co., Inc.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

**Cancellation No. 92044883**

identical, and that the consumers would include ordinary purchasers who might purchase wine on impulse and without great care. *In re Bercut-Vandervoort & Co.*, 229 USPQ 763, 765 (TTAB 1986) (average ordinary wine consumer must be looked at in considering source confusion).

We also find that there is no genuine issue that the marks are very similar. Based on these findings, we conclude that petitioner has demonstrated, as a matter of law, that it is entitled to summary judgment on the issue of likelihood of confusion.

In reaching this conclusion, we have not treated petitioner's mark as famous, and therefore the evidence on this factor does not raise a genuine issue of material fact. *See Kellogg Co. v. Pack'em Enterprises Inc.*, 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991).

Respondent has asserted that it adopted its mark in good faith. We have accepted this assertion in reaching our conclusion, and therefore it does not raise a genuine issue of fact. However, because it is not necessary for a petitioner to show bad faith adoption in order to demonstrate likelihood of confusion, respondent's assertion of its good faith does not preclude our granting summary judgment in petitioner's favor.

17

Cancellation No. 92044883

Finally, respondent has pointed to statements made by petitioner to the effect that there is no likelihood of confusion between its mark and the respondent's. These statements were made during the prosecution of petitioner's application, as part of its efforts to overcome the refusal of registration based on respondent's registration. Respondent claims that these statements are admissions against interest. They are not. Statements made by an applicant in the context of prosecution may be viewed as "illuminative of shade and tone in the total picture confronting the decision maker." *Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 198 USPQ 151, 154 (CCPA 1978). Here, the statements by petitioner are in the nature of inconsistent pleadings, with petitioner trying to avoid the need for a cancellation action if it could overcome the Examining Attorney's refusal of registration. They do not raise a genuine of fact.

In sum, there is no issue of fact as to petitioner's claims of priority and likelihood of confusion. Petitioner is entitled to judgment as a matter of law.

Accordingly, judgment is hereby entered against respondent, the petition to cancel is **GRANTED**, and Registration No. 2799507 will be cancelled in due course.

***

18