## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

VICTORIA'S SECRET STORES :   No. 07-cv-5804 (GEL)
BRAND MANAGEMENT, INC.,  :
         :
   Plaintiff,    :
         :
  v.       :
         :
SEXY HAIR CONCEPTS, LLC,  :
         :
   Defendant.   :
         :

## REPLY BRIEF IN RESPONSE TO OPPOSITION TO THE MOTION IN LIMINE OF DEFENDANT SEXY HAIR CONCEPTS, LLC, TO PRECLUDE TESTIMONY OF EDWARD FINEGAN PURSUANT TO FED. R. EVID. 402 AND 403

The opposition filed by Victoria's Secret Brand Management Inc. ("VSecret")[1] to defendant Sexy Hair Concepts ("SHC's") motion in limine fails to address in any meaningful way SHC's submission that Finegan's proffered testimony is irrelevant and adds nothing new and nothing material to the determination of any issue before the Court. Finegan's report is suffused with ambiguity and vagueness and circular reasoning divorced entirely from the applicable legal standard, cloaked in the guise of an "expert opinion" in linguistics. In the end, no amount of linguistic gymnastics having no reference to the proper legal standard will aid this Court in determining the limited and sole issue that is before the Court: whether VSecret's SO SEXY mark is sufficiently similar to SHC's SEXY HAIR name and mark and family of marks when used with identical hair care products without restriction to trade channels as to create a likelihood of confusion as to source, affiliation or sponsorship.

---

[1] VSecret's Opposition is hereinafter referred to as "Finegan Op."

### A.    Expert Linguist Opinion is Entitled to No Weight.

As a starting point, SHC does not dispute the fact that courts in trademark actions have in appropriate cases admitted expert testimony in linguistics. However, the cases cited by VSecret are inapposite, as those cases address infringement and the issue of whether a term has become generic. Nothing in those cases requires or supports a finding of admissibility of a purported linguistic expert in a case where the opposer's mark, SEXY HAIR in this instance, is the subject of an incontestable trademark registration and where SEXY HAIR cannot be challenged as a matter of law on the ground that it is descriptive and has not been (and could not be) challenged on the ground that the mark is generic. *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985).

Moreover, the infringement cases upon which VSecret relies are contrary to this Court's rejection of a purported expert linguist in *Stix Prods., Inc. v. United Merchants & Manufacturers, Inc.*, 295 F. Supp. 479 (S.D.N.Y. 1968), a case which is conspicuously absent from VSecret's opposition. While *Stix Products* also addresses the issue of whether a term has become generic, the Court's rationale in rejecting the expert's opinion is applicable, where, like here, the expert relied on alleged distinctions between the terms that only linguists would be capable of appreciating or understanding. In rejecting the expert's conclusion that "contact paper" when spoken in a natural fashion cannot mean CON-TACT paper in the brand sense, the Court concluded "[t]hat stress patterns in a compound phrase may convey generic meaning to a linguist, a scientific language expert, does not necessarily make the phrase generic as far as the consuming public is concerned." *Stix Products*, 295 F. Supp. at 489.

Further, cases addressing the specific issues involved here support the rationale of *Stix Products.* In *Baker v. Simmons Co.*, 307 F.2d 458 (1st Cir. 1962), the court relied on its own

comparison of the respective marks in finding a likelihood of confusion existed. In affirming the district court's findings, the First Circuit held:

> Perhaps on the tongues of linguists or precisionists, variations of articulation could be perceived. However, to the ear of the average person the two names would pass as one. Similarly, we believe that few but the discriminating of eye would, upon visual examination, readily perceive the subtle spelling gradation obtaining between the two names. In sum, on its face, we believe that the name Simmonds is inherently capable of generating confusing similarity with the name Simmons.

*Baker*, 307 F.2d at 465. *See also LaTouraine Coffee Co., Inc. v. Lorraine Coffee Co., Inc.*, 157 F.2d 115, 117 (2d Cir. 1946) ("Defendants have attempted to distinguish 'Lorraine' from 'LaTouraine' on the basis of the number of letters and syllables in the words, but this form of technical gymnastics is not determinative."), *Le Blume Import Co. v. Coty*, 293 F. 344, 358-59 (2d Cir. 1923) (finding that "L'Origan" was nondescriptive to general public which comprised the ultimate purchasers, even though to linguists or scientists, the name might have a descriptive connotation).

In short, the cases offered by VSecret should be disregarded in the face of controlling authority to the contrary.

### B.    Expert Opinion on Descriptiveness is Immaterial.

In his Declaration in Opposition (hereinafter "Finegan Op. Decl."), Finegan purports to provide an analysis designed to prove that "sexy" is descriptive, both in a linguistic and a legal sense. (Finegan Op. Decl. ¶ 3). However, Finegan does not purport to have any legal expertise, so any opinion of a "legal sense" is completely unreliable and should be afforded no weight. As the Second Circuit recognizes, the problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the fact finder. Expert legal opinion therefore "invade[s] the province of the court to determine the applicable

law[.]" *F.A.A. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983), *cert. denied*, 464 U.S. 895, 104 S. Ct. 243, 78 L. Ed. 2d 232 (1983); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977), cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

Even if the Court were to consider Finegan's opinion in a "linguistic sense," the fact remains that the subject matter on which he seeks to opine – the alleged descriptiveness of SHC's mark which is the subject of an incontestable registration – is wholly immaterial. Whether the mark is descriptive is immaterial not only as a matter of law but as a matter of logic with respect to the sole inquiry before this Court, which is whether the TTAB correctly determined that there is a likelihood of confusion as to source and whether any new *material* facts require reconsideration of the Board's decision. Finegan's entire opinion is premised on a wrong standard and he offers nothing new in his Declaration in Opposition to salvage his opinion. Instead, he resorts to repeating and rehashing the same arguments that he raises in his initial report as if repetition increases credibility.

### C.    The Internet Research on Which Finegan Bases his Opinion is Unreliable and Offers Nothing New for the Court's Consideration.

In paragraph 4 of his Declaration in Opposition, Finegan makes the unsubstantiated self-serving statement that he "took care" to ensure that his internet research which resulted in more than 200,000 hits for the expression "sexy hair" were "unrelated in any way to Victoria's Secret or SHC." (Finegan Op. Decl. ¶ 4). First, Finegan's statement, without further independent support, lacks every indicia of reliability. He never explains what "care" he took and he never states that he personally reviewed all 200,000 hits. His statement, without more, should be afforded no weight by the Court.

Moreover, the conclusion he bases on his internet research, i.e. "that 'sexy' is a term very frequently associated with hair and hair care products and carries descriptive meaning in

those contexts" (*see id.*), again, adds nothing new and nothing material to any issue before the Court, nor is it a proper conclusion based on reliable, verifiable evidence. "Associated" is a vague and ambiguous term and he never at any point defines the alleged descriptive significance of "sexy" as used in relation to hair care preparations in any sense that addresses the legal standard for descriptiveness. That is, he "defines" the indefinite with more indefinite and suggestive, amorphous and contradictory terms. *See* Finegan Op. Decl., at ¶ 8. "Interesting" need not have anything to do with "sexy" and "interesting" need not be "appealing" and neither need have anything to do with what any particular person considers to be "sexy." There is a complete lack of the particularity, specificity or that definiteness that marks a descriptive term, that is, one which is not inherently distinctive. *See Stix Products*, 295 F. Supp. at 487 (test for descriptiveness is "whether the word conveys the characteristics, function, qualities or ingredients of a product *to one who has never seen it and does not know what it is.*") (emphasis added).

Moreover, the TTAB recognizes the "ample evidence" submitted by both parties that "sexy" is an "adjective that is used in connection with hair" and that " 'sexy' is a qualitative term applied to a wide variety of things." (TTAB Decision, at 22-23). Contrary to Finegan's conclusion, the Board relied on substantial evidence and found that the record fails to establish that "sexy" is merely descriptive or only laudatory with respect to hair care products. " '[S]exy' is, at most, a suggestive term that is inherently distinctive in connection with the identified goods." (*Id.* at 23). Finegan's purported internet research, to the extent that it seeks to prove the descriptiveness of "sexy," is wholly immaterial. And, assuming the research has minimal probative value (which it does not), it can hardly constitute "new" evidence for the Court's consideration since VSecret submitted before the Board just such uses from the media.

**D.**    **Finegan Fails to State what it is that Sexy Describes.**

When all is said and done, what is most significant is that Finegan never once states what it is that, in his opinion, sexy describes.  On page 6 of his Declaration in Opposition, he again engages the Court in semantic gamesmanship in his explanation of the "well-known and common process of semantic shift called generalization." (Finegan Op. Decl. ¶ 6).  Finegan attempts to explain that it is through this process that we describe wine, bottles, automobiles and phones as "sexy."  Finegan's contention that "sexy" describes wine shows just how silly the effort is to say that "sexy" describes anything about hair or hair care products, immediately and directly in any sense that is legally material.  *In re Dial-A-Mattress Operating Corp.*, 240 F.2d 1341, 1346 (Fed. Cir. 2001).  He repeats verbatim his opinion that "sexy" in connection with hair and hair care products describes "interesting, appealing, and attractive hair" (Finegan Op. Decl. ¶ 8), yet, such generality does not establish descriptiveness as a legal matter.  (SHC's Motion in Limine, at 10 and cases cited therein).  Try as he might, Finegan simply fails to identify that which is "sexy" hair and that which is generally understood by people to be "sexy" hair, other than an amorphous, desirable, quality of hair.  *See, e.g.*, *In re DaimlerChrysler AG*, 2001 TTAB LEXIS 557 (TTAB July 26, 2001) (reversing refusal to register applicant's mark SMART for sub-compact automobiles because, while "smart" may be descriptive for products that contain a microprocessor or some computational ability, it does not immediately convey to prospective purchasers a characteristic or feature of the goods).

**E.**    **Expert Opinion on Similarity of the Marks Serves no Probative Value.**

Finegan's report is nothing more than an opinion on the similarity of the marks, as set forth in SHC's Motion in Limine (*see* page 13-15).  Even in this context, the report serves no

probative value.  The Court of Appeals for the Federal Circuit has made clear that the relevant

examination is of the "similarities and dissimilarities of the marks in their appearance, sound,

meaning, and commercial impression."  *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin*

*Maison Fondee En 1772*, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005).  The appropriate test to

measure similarity of the marks focuses on the impressions on and recollection of the average

purchaser:

> The test is not whether the marks can be distinguished when
> subjected to a side-by-side comparison, but rather whether the
> marks are sufficiently similar in their entireties that confusion as to
> the source of the goods offered under the respective marks is likely
> to result.  The focus is on the recollection of the average purchaser,
> who normally retains a general rather than a specific impression of
> trademarks.

*Schering-Plough HealthCare Prods., Inc. v. Ing-Jing Huang*, 84 U.S.P.Q.2d 1323, 1325 (TTAB

2007) (citing *Sealed Air Corp. v. Scott Paper Co.*, 190 U.S.P.Q. 106 (TTAB 1975)).  Clearly,

nothing in Finegan's opinion is geared toward the "recollection of the average purchaser" but

rather is focused on how the brain accomplishes extraordinary linguistic feats in connecting parts

of speech.  Finegan's lesson on linguistics fails to aid the Court in determining whether the SO

SEXY mark is sufficiently similar to SHC's SEXY HAIR name and mark and family of marks

when used as a trademark for identical hair care products without restriction to trade channels as

to create a likelihood of confusion as to source, affiliation or sponsorship.

**F.     CONCLUSION**

For all of these reasons, and for the reasons stated in SHC's motion in limine, this Court should grant SHC's motion and preclude the testimony and expert report of Edward Finegan.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

DATED: JUNE 6, 2008

By: _Roberta Jacobs-Meadway_
        ROBERTA JACOBS-MEADWAY
        Two Liberty Place
        50 S. 16th Street, 22nd Floor
        Philadelphia, PA  19102
        (215) 851-8522 (telephone)
        (215) 851-8383 (facsimile)

Co-Counsel for Sexy Hair Concepts, LLC
Our File:  297797-00081

Cc:     Philip Furgang, Esq.
        FURGANG & ADWAR, LLP
        1325 Avenue of the Americas
        28th Floor
        New York, NY 10019
        Phone: (212) 725-1818