UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC.<br><br>              Plaintiff / Appellant,<br>v.<br><br>SEXY HAIR CONCEPTS, LLC<br><br>              Defendant / Appellee. | No. 07-cv-5804 (GEL) |

**REPLY BRIEF IN RESPONSE TO PLAINTIFF/APPELLANT'S OPPOSITION TO DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT**

**Eckert Seamans Cherin & Mellott, LLC**
Roberta Jacobs-Meadway (RJ-M 5870)
Two Liberty Center
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
rjacobsmeadway@eckertseamans.com

Co-counsel for Sexy Hair Concepts, LLC
Our File: 297797-00081

**Furgang & Adwar, LLP**
Philip Furgang (PF 5654)
1325 Avenue of the Americas
28th Floor
New York, NY 10019
(212) 725-1818

{M0659541.4}

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................. 1

II.   STANDARD OF REVIEW .................................................................................... 1

III.  RELEVANT LAW AND ARGUMENT ................................................................ 2

      A.   The Board's Finding that SEXY Is Suggestive is Supported by Law and Substantial Undisputed Evidence .................................................................. 2

      B.   Substantial Evidence Supports the Conclusion that Sexy Hair Owns a Family of Marks Characterized by the Common SEXY Pattern .......................... 6

      C.   The Board's Finding on Likelihood of Confusion Was Based on Settled Law and Undisputed Substantial Evidence .................................................. 9

IV.   CONCLUSION ..................................................................................................... 10

# **TABLE OF AUTHORITIES**

## **CASES**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d (2d Cir. 1976)..................3

*Aktieselskabet AF 21.November 2001 v. Fame Jeans*, 2008 U.S. App. LEXIS 9627 (D.C.Cir. 2008)........2

*American Standard, Inc. v. Scott & Fetzer Co.*, 200 U.S.P.Q. 457 (TTAB 1978)..................5

*CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660 (7th Cir. 2001)..................1

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)..................1

*Consolidated Foods Corp. v. Sherwood Medical Industries, Inc.*, 177 U.S.P.Q. 279 (TTAB 1973)..................6

*Dickinson v. Zurko*, 527 U.S. 150 (1999)..................1

*Fort Howard Paper Co. v. Nice-Pack Products, Inc.*, 127 U.S.P.Q. 431 (TTAB 1960)..................5

*General Mills Inc. v. Health Valley Food*, 24 U.S.P.Q. 2d 1270 (TTAB 1992)..................9

*Goodyear Tire & Rubber Co. v. Continental General Tire, Inc.*, 70 U.S.P.Q. 2d 1067 (TTAB 2003)..................5

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir. 1988)..................4

*Hewlett Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261 (Fed. Cir. 2007)..................10

*J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460 (Fed. Cir. 1991)..................7, 8, 9

*Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616 (6th Cir. 2003)..................1

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596 (9th Cir. 2005)..................6

*In re MBNA America Bank, N.A.*, 340 F.3d 1328 (Fed. Cir. 2003)..................3

*McDonald's Corp. v. McBagel's, Inc.*, 649 F.Supp. 1268 (S.D.N.Y. 1986)..................7

*Nike, Inc. v. WNBA Enterprises, LLC*, 85 U.S.P.Q.2d 1187 (TTAB 2007)..................9

*OMS Investments, Inc. v. Central Garden & Pet Co.*, 2006 TTAB LEXIS 274 (TTAB July 10, 2006)..................8

*On-Line Careline, Inc. v. American Online, Inc.*, 229 F.3d 1080 (Fed. Cir. 2000)..................1

*Paramount Pictures v. White*, 31 U.S.P.Q.2d 1768 (TTAB 1994), *aff'd*, 108 F.3d 1892 (Fed. Cir. 1997)..................2

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985)..................6

*Person's Co. v. Christman*, 900 F.2d 1565 (Fed. Cir. 1990)..................................................2

*Pfizer, Inc. v. Astra Pharmaceutical Products, Inc*, 858 F.Supp. 1305 (S.D.N.Y. 1994)..............5

*Primepoint, L.L.C. v. PrimePay, Inc.*, 2008 U.S. Dist. LEXIS 15647 (D.N.J. Feb. 29, 2008)..............8

*Recot , Inc v. Becton*, 214 F.3d 1322 (Fed. Cir. 2000) ..................................................1

*In re Stereotaxis, Inc.*, 429 F.3d 1039 (Fed. Cir. 2005)..................................................3

*Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387 (7th Cir. 1992) ..............................5

*Truescent, LLC v. Ride Skin Care, LLC*, 81 U.S.P.Q.2d 1334 (TTAB 2006) ......................5

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)..............................................2

## MISCELLANEOUS

J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* (4th ed. 2008)..........................1, 9

## I. INTRODUCTION

Victoria's Secret Stores Brand Management, Inc.'s ("VSecret") response raises no genuine issues of material fact. Nor does its response address the true issue before this court: whether or not a reasonable finder-of-fact could conclude that the Trademark Trial and Appeal Board's ("TTAB" or "the Board") decision sustaining Sexy Hair Concepts, LLC's ("Sexy Hair") opposition to registration of the mark SO SEXY by VSecret was based upon substantial evidence. VSecret's response ignores and misconstrues settled law and undisputed facts.

## II. STANDARD OF REVIEW

Appeals from the TTAB to a District Court differ from typical proceedings as parties may introduce new evidence. *See Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616 (6th Cir. 2003); *see generally* J. Thomas McCarthy, 3 *McCarthy on Trademarks & Unfair Competition* § 21:20-22.50 (4th ed. 2008) ("McCarthy"). The Court reviews the TTAB's legal conclusions and any new evidence *de novo*. *See CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001). It reviews and upholds the factual findings of the TTAB unless the findings are unsupported by substantial evidence. *See Recot, Inc. v. Becton*, 214 F.3d 1322, 1327 (Fed. Cir. 2000), citing *Dickinson v. Zurko*, 527 U.S. 150 (1999).

The substantial evidence standard requires the reviewing court to ask whether a reasonable person might find that the evidentiary record supports the agency's conclusion. *See On-Line Careline, Inc. v. American Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000), citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938). Substantial evidence is more than "a mere scintilla." *Id.* The review requires examination of the record as a whole, considering evidence that both justifies and detracts from the TTAB's findings. *See id.* at 1086. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* The Supreme Court noted in *Zurko*, the difference between the clearly erroneous and substantial evidence standards is subtle a one with little practical impact. *See Zurko*, 50 U.S. at 162.

The issue before this court is limited. VSecret's appeal addresses only the TTAB's decision sustaining Sexy Hair's opposition to VSecret's registration of one mark, SO SEXY, for specific

{M0659541.4}                                          1

hair care preparations. The Board was not presented, nor could it address, whether VSecret's use of SO SEXY constitutes infringement under the Lanham Act or whether some other mark might be the subject of a successful opposition or whether VSecret could use "sexy" in a non-trademark manner for hair care products.

VSecret improperly argues matters not at issue before the TTAB and not relevant to registrability of its mark, and invites the Court to expand the action as if it had sought a declaratory judgment of non-infringement or the Board had ruled on other applications of VSecret or others for other marks. This Court reviews the issues and evidence presented to the TTAB in the underlying opposition and any other issues the parties could have raised during the opposition. *See Aktieselskabet AF 21.November 2001 v. Fame Jeans*, 2008 U.S.App. Lexis 9627 (D.C. Cir. 2008). Baseless allegations of unfair competition alluded to by VSecret do not constitute such issues. *See Person's Co. v. Christman*, 900 F.2d 1565, 1570-71 (Fed. Cir. 1990) ("It is well settled that the [TTAB] cannot adjudicate unfair competition issues in a cancellation or opposition proceeding. The Board's function is to determine whether there is a right to secure or to maintain a registration."); *see also Paramount Pictures v. White*, 31 U.S.P.Q.2d 1768, 1771, n.5 (T.T.A.B. 1994), *aff'd (unpub'd)* 108 F.3d 1892 (Fed. Cir. 1997).

### III. – RELEVANT LAW AND ARGUMENT

#### A. The Board's Finding that SEXY is Suggestive is Supported by Law and Substantial Undisputed Evidence

VSecret asks this court to reject the TTAB's well-reasoned finding based on substantial evidence that SEXY is an inherently distinctive term and to substitute in its place a finding based on speculation, wordplay, and disregard of the appropriate legal standard.

Trademarks and terms are categorized along a spectrum of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary or (5) fanciful. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* "Marks which are merely descriptive of a product are not inherently distinctive" and may be registered after acquiring distinctiveness through secondary meaning. *Id.* at 769. A suggestive term is entitled to

{M0659541.4}                                      2

registration without proof of secondary meaning. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d. Cir. 1976).

A mark is merely descriptive if it "forthwith conveys an immediate idea of the ingredients, qualities, or characteristics of the goods." *See Abercrombie & Fitch Co.*, 537 F.2d at 11. "The perception of the relevant purchasing public sets the standard for determining descriptiveness" and a mark will be merely descriptive if those consumers "immediately associate it with a quality or characteristic of a good or service." *In re MBNA America Bank, N.A.*, 340 F.3d 1328, 1332 (Fed. Cir. 2003). Alternatively, "if a mark requires imagination, thought and perception to arrive at the qualities or characteristics of the goods, …then the mark is suggestive." *Id., see also Abercrombie & Fitch Co.*, 537 F.2d at 11.

Where along the spectrum a term or a trademark lies is a factual finding, to be upheld when the underlying decision of the Board is supported by substantial evidence. *See id.; see also In re Stereotaxis, Inc.*, 429 F.3d 1039, 1041-43 (Fed. Cir. 2005) (the Board's finding a mark was merely descriptive because it "immediately describes, without conjecture or speculation, significant information concerning the nature, purpose, or function of some, if not most, of [an] applicant's goods" upheld based on substantial evidence).

Here, the Board carefully considered the evidence offered as to the inherent distinctiveness of the term "sexy":

> "There is ample evidence submitted by both parties (see factual findings, supra) that "sexy" is an adjective that is used in connection with hair; and that 'sexy' is a qualitative term applied to a wide variety of things. However the record does not establish that 'sexy' is merely descriptive or only laudatory with respect to hair care products. We take judicial notice of the definition in Merriam-Webster's Collegiate Dictionary (11th ed. 2003) of "sexy" as '1. sexually suggestive or stimulating: erotic. 2. generally attractive or interesting: appealing." 'Sexy' is, at most, suggestive of an amorphous, yet desirable, quality of hair or hair care products. The advertising and articles of record clearly imply that a purchaser or reader should desire 'sexy hair'; but it is not clear that 'sexy hair' is a specific quality that means the same thing to all people. Particularly with respect to opposer's products, 'sexy hair' could be straight, or curly or wild; or it could pertain to hair length, color or texture. The record does not establish a direct connection between the term 'sexy' and a specific quality, characteristic, function, ingredient, attribute or feature of the identified hair care products or of hair after the use of these products. Therefore, 'sexy' is, at most, a suggestive term that is inherently distinctive in connection with the identified goods."
> (Compl., Ex. A. at 22-23).

{M0659541.4}                                3

VSecret's proffered evidence was considered. It now offers no new facts to counter the Board's findings which were based on the substantial evidence before it. VSecret offers only more of the same types of use in the press it presented to the Board, and four fatally flawed expert reports. These raise no issue of fact as to the descriptiveness of "sexy," given the applicable law and precedent, VSecret's own conduct in seeking to protect SEXY as the dominant (hence distinctive) component of its trademarks, and its consistent and glaring inability to state what "sexy" in fact is supposed to "describe" with any particularity. The Finegan report speaks in generalities, and concludes in effect that "sexy" equally describes wine, shampoo and automobiles. This conclusion demonstrates the untenable nature of VSecret's position by its utter lack of definiteness and the absence of any information conveyed by the term "sexy" about wine, shampoo or automobiles. The Labrecque report is the opinion of a single salon owner catering in one limited geographic market to a limited and exclusive clientele. He does not even seriously attempt to identify what "sexy" describes or what information it directly conveys to consumers, first because he is unqualified to do so and second, because no such identification can be made. The term is, as the Board properly found, inherently distinctive because it fails to establish a direct connection to any specific quality, characteristic, function, ingredient, attribute or feature of hair care products. (Compl., Ex. A at 23).

VSecret attempts to demonstrate the descriptiveness of "sexy" by articles suggesting that, among other things, "sexy" means: "soft", "slightly messed-up", "perfect loose", "super smooth", "touchable and healthy", in a "ponytail", "cropped and sleek", or with "dark roots" (VS 56.1 Stmt., ¶ 12). Where the term is one that has such personal and idiosyncratic connotations, and in fact can "mean" virtually anything to any individual, the term, under the applicable legal standard describes nothing. VSecret only proves relevant consumers need to rely on their imagination to define the characteristics of "sexy" hair. The need to rely on imagination is what makes "sexy" suggestive. *See Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 74-75 (2d. Cir. 1988).

What law VSecret does cite is misguided and easily distinguishable. VSecret relies on cases where the mark at issue was either so descriptive or generic that no reasonable finder of fact could

hold otherwise.[1] Here, there is no evidence that the term "sexy" is widely understood to describe any one particular aspect of hair or hair care products. VSecret points to no third party registrations where SEXY is a component of a mark for hair care products and the exclusive right to use SEXY is disclaimed.

VSecret's reliance on several cases for the premise that a family of marks must be based on a distinctive common element is similarly misplaced. First, "sexy" is not merely descriptive of hair care products, as the substantial evidence before the Board demonstrates. Second, the cases VSecret cites, unlike the instant matter, involved terms which were the subject of many third party registrations, or generic terms for the goods themselves.[2] Here, there is no evidence of third party registrations or trademark use for hair care products that include the term "sexy."

VSecret's own practice belies its claim that "sexy" is descriptive because it is used in an ordinary English sense in the media. VSecret, in registrations and matters before the Board, claims that SEXY is inherently distinctive; and comprises the dominant portion of its marks for goods other than hair care products. (SHC Mot. for Sum. Jgmt. at 17, n.4; see also Supp. Declaration of John Metzger, ¶ 8, Ex. B, p. 12 ).

VSecret seeks registration for SO SEXY for hair care products without any limitation or disclaimer. Merely descriptive and generic terms are subject to disclaimer under Section 6 of the Lanham Act. VSecret does not disclaim the exclusive right to use SEXY, nor was it required to do so by the examining attorney. Likewise, Sexy Hair has never been required to disclaim the term SEXY for any of its marks. Consistently, examining attorneys, the Board, and both parties to this appeal recognize the inherently distinctive nature of the term SEXY.

---

[1] See Pfizer Inc. v. Astra Pharm. Prods. Inc., 858 F.Supp. 1305 (S.D.N.Y. 1994) (XL for extended release medication; XL had a distinct medical definition, and was used by others to indicate extended release); see also Truescents LLC v. Ride Skin Care LLC, 81 U.S.P.Q.2d 1334 (T.T.A.B. 2006) (46 third party registrations existed for the commonly understood term GENUINE, most disclaiming the exclusive right to use the term); see also Goodyear Tire & Rubber Co. v. Continental General Tire, Inc., 70 U.S.P.Q.2d 1067 (T.T.A.B. 2003) (INTELLIGENT was used by mass media and major tire manufacturers to describe a tire that transmitted information to the engine).

[2] See American Standard Inc. v. Scott & Fetzer Co., 200 U.S.P.Q. 457 (T.T.A.B. 1978) (43 third party registrations for AQUA); see also Fort Howard Paper Co. v. Nice-Pack Prods., Inc., 127 U.S.P.Q. 431 (T.T.A.B. 1960) (NAP as a generic name for napkins); see also Spraying Sys. Co. v. Delavan, Inc., 975 F.2d 387 (7th Cir. 1992) (50 third party registrations existed for JET, many for the identical goods).

Finally, Sexy Hair's family of marks is based upon SEXY HAIR, the subject of incontestable registration No. 2,403,396. An incontestable registration may not be challenged on the basis of mere descriptiveness. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985). The conclusive presumption that an incontestable mark has acquired secondary meaning "extends to the most salient feature of the mark." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005). Where the most salient feature of a mark is the part being imitated, the trademark owner claiming likelihood of confusion need not prove secondary meaning in the salient feature apart from the mark. *See id.*

VSecret's contends that incontestability of a trademark is not an issue when applied to families of marks. VSecret relies on *Consolidated Foods Corp. v. Sherwood Med. Indus. Inc.*, 177 U.S.P.Q. 279 (T.T.A.B. 1973) for this proposition. However, *Consolidated Food Corp.* rested on nothing but its pleaded registrations with no evidence of coordinated advertising or sales; and the goods in question, trade channels and customers were totally different from one another. *See id.* at 282.

The Board properly found on substantial evidence that SEXY was suggestive and therefore inherently distinctive as it relates to hair care products. (Compl., Ex. A. at 23). VSecret has introduced no new evidence competent to establish the contrary.

### B. Substantial Evidence Supports the Conclusion That Sexy Hair Owns a Family of Marks Characterized by the Common SEXY Pattern

The only issue before this Court is whether substantial evidence supports the refusal of a registration of VSecret's mark, SO SEXY, for hair care products based on a likelihood of confusion with SEXY HAIR's family of marks characterized by the term SEXY preceded by a descriptive word and followed by the generic "hair" for hair care products.[3] VSecret persists in expanding this proceeding to wholly immaterial matters: infringement, marks not in issue, VSecret's and other's ability to register other unidentified marks in the future, and the fiction of a so-called "virtual monopoly" supposedly granted Sexy Hair by the Board.

---

[3] And the "SEXY HAIR" mark itself (Compl., Ex. A at 24).

Sexy Hair has presented, and the Board properly found, substantial evidence of Sexy Hair's ownership of a family of marks having the common element SEXY for hair care products. (Compl., Ex. A at 25). The existence of a "family of marks" is a question of fact. The Board's decision should be affirmed as substantial evidence supports the Board's holding. *McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268, 1272 (S.D.N.Y. 1986). As stated by the Federal Circuit and repeated by the Board:

> A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family with the trademark owner. ... There must be recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods. ... **Recognition of the family is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family.** It is thus necessary to consider the use, advertisement, and distinctiveness of the marks, including assessment of the contribution of the common feature to the recognition of the marks as of common origin.

*J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462-1463 (Fed. Cir. 1991) (emphasis added); (Compl., Ex. A at 21-22, 24).

The Board, following this standard, extensively discussed the use, advertisement, and distinctiveness of Sexy Hair's trademarks. It was persuaded by the substantial evidence presented that Sexy Hair established a family of marks based on the common element SEXY. (Compl., Ex. A at 22-25). Specifically, the Board found Sexy Hair's family of marks "characterized by the term SEXY preceded by a word that suggests an intended result of the product and followed by a generic noun in the hair care field." (Compl., Ex. A at 24), (hereinafter, the "SEXY Pattern"). The SEXY HAIR mark does not specifically follow the SEXY Pattern but is promoted and advertised together with the other family members and forms the basis of the family. Although "hair" following "sexy" is a characteristic of the common pattern, the parties do not dispute that "hair" is a generic term in connection with hair care products (Compl., Ex. A at 28). The key to the family of marks is not the word SEXY by itself for hair care products, but SEXY preceded by a descriptive term or modifier such as BIG or SHORT or HEALTHY, or SO.

VSecret's argument that Sexy Hair does not possess a family of marks is premised essentially on its ill-founded insistence that "sexy" is descriptive of hair care products and wine and automobiles. The Board considered this argument and the facts, applied the relevant law, and for the

reasons extensively discussed in Section III., A., found, based on substantial evidence, that the term "sexy" is not descriptive, but is, "at most, a suggestive term that is inherently distinctive in connection with the identified goods." (Compl., Ex. A at 23). VSecret's "new" evidence is mostly cumulative uses of "sexy" in the media in a non-trademark context, essentially the same as the media uses the Board considered and found not probative.

Sexy Hair introduced substantial evidence that it advertises and promotes together its family of marks bearing the SEXY Pattern. (Compl., Ex. A at 24-25). Recognition of the family is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family. *J&J Snack Foods Corp.* at 1463. Products bearing marks characterized by the SEXY Pattern, such as SEXY HAIR, BIG SEXY HAIR, SHORT SEXY HAIR, STRAIGHT SEXY HAIR, are advertised, promoted, and shown together on television, at trade shows, demonstrations, and seminars, on the website at www.sexyhair.com, and in promotional brochures and promotional packages that are provided to salons through distributors. (Stiller Test. Dep. 22, 35-37; Stiller Test. Dep. Ex. 5-9; Federici Test. Dep. 31-34). The Board properly found that the evidence establishes a pattern of usage of these marks sufficient to indicate common origin and to establish a family of marks.

VSecret mischaracterizes the string of cases it cites in contending that Sexy Hair has not provided substantial evidence to establish a family of marks. It is not that there are any particular rigorous evidentiary requirements. The cases simply point out deficiencies in the particular factual record in each case. In these cases, the proponent provided minimal evidence in support of its contention that it promoted and advertised together its marks containing the common element.[4] Such cases are wholly inapposite. Sexy Hair provided substantial testimony and documentary evidence not subject to dispute showing a pattern of advertising and promoting together its products bearing its marks that follow the SEXY Pattern. (Stiller Test. Dep. 22, 35-37; Stiller Test. Dep. Ex. 5-9; Federici Test. Dep. 31-34).

---

[4] *See OMS Invs., Inc. v. Central Garden & Pet Co.*, Opp. No. 91156249, 2006 TTAB LEXIS 274, at *22 (T.T.A.B. July 10, 2006) (single line of conclusory testimony claiming co-advertising and co-promotion and reference to a document of applicant referring to Opposer's products by the common element insufficient to establish family of marks); *Primepoint, L.L.C. v. PrimePay, Inc.*, No. 06-1551 (RMB), 2008 U.S. Dist. LEXIS 15647, at *17-18 (D.N.J. Feb. 29, 2008) (conclusory assertions regarding pattern of usage of marks coupled solely with sum of advertising expenditure insufficient to establish a family of marks).

VSecret mis-cites two cases that discuss sales figures only with regards to the mark's "fame," for the proposition that sales figures in the absence of a meaningful context are insufficient to establish a family of marks.[5] Fame of a mark is not a prerequisite for finding there is a family of marks, just as fame is not a prerequisite for finding likelihood of confusion.

VSecret harps on what it refers to as "empirical" evidence. It cites no authority, because there is none, requiring Sexy Hair to offer "empirical" evidence to establish a family of marks. No requirement of survey evidence is set forth in *McCarthy*, a treatise upon which VSecret frequently relies. *McCarthy* § 23:61. The requisite consumer recognition is established through extensive advertising and promotion together of members of the claimed family. *Id. J&J Snack Foods* established the standard and the Board applied that standard and found that Sexy Hair owned a family of marks based on the common SEXY Pattern. VSecret's new survey evidence raises no material issue of fact. First, the survey evidence is not directed to whether or not Sexy Hair has a family of marks and whether consumers who have an opportunity to be familiar with the family would perceive SO SEXY as part of that family. Second, the survey evidence is so fatally flawed as to be meaningless and inadmissible as discussed in Sexy Hair's *motions in limine*. Even if the Court were to consider VSecret's new survey evidence, it does not establish any genuine issue of material fact regarding whether substantial evidence exists to support the refusal of a registration for VSecret's SO SEXY mark.

### C. The Board's Finding on Likelihood of Confusion was Based on Settled Law and Undisputed Substantial Evidence

VSecret misstates the Board's ruling and ignores complete portions of the Board's analysis in its claim that no likelihood of confusion exists. VSecret invites the Court to ignore settled law and the Board's correct findings that the goods of the parties, the trade channels, and the classes of purchasers are all legally identical. (Compl., Ex. A at 19-21). VSecret likewise, ignores the Board's analysis of the strength of Sexy Hair's names and marks.

---

[5] *Nike Inc. v. WNBA Enterprises LLC*, 85 U.S.P.Q.2d 1187, 1197 (T.T.A.B. 2007) (raw sales numbers and advertising expenses were not discussed in the Board's "family of marks" analysis but only with regards to the "fame" of the mark; confusion likely where marks were similar and used in connection with identical and/or closely related goods); *General Mills Inc. v. Health Valley Food*, 24 U.S.P.Q. 2d 1270, 177 (T.T.A.B. 1992) (no family of marks claim; opposition based on a single registration).

Further, VSecret relies on flawed surveys to purportedly show the absence of actual confusion, and then circuitously argues that in such absence, no likelihood of confusion can be found. VSecret does not cite to any legal authority for this claim because the law says otherwise. *See Hewlett Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261 (Fed. Cir. 2007). In any event, the surveys, as discussed above and in Sexy Hair's motions *in limine*, should be excluded and afforded no weight.

VSecret closes with a grasping improper argument about unfair competition. Such issue does not go to the registrability of its trademark, was not before the Board, and is immaterial to the issue to be decided by this Court.

### IV. CONCLUSION

VSecret's response raises no genuine issue of material fact relevant to the Board's findings. Instead, VSecret misstates the issues before this Court and improperly attempts to expand the breadth of this appeal. The Board's thorough decision addressed all factors relevant to a finding of likelihood of confusion. The decision is well founded on settled law and facts not reasonably subject to dispute. Based on the substantial evidence and settled law, and in the absence of any competent new facts, the Board's decision should be affirmed.

Respectfully submitted,

6/6/08

Roberta Jacobs-Meadway (RJ-M 5870)
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Center
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
rjacobsmeadway@eckertseamans.com

Cc: Philip Furgang, Esq.
Furgang & Adwar, LLP
1325 Avenue of the Americas
New York, NY 10019
(212) 725-1818

Co-counsel for Sexy Hair Concepts, LLC
Our File: 297797-00081