**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | : | No. 07-cv-5804 (GEL) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SEXY HAIR CONCEPTS, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**REPLY BRIEF IN RESPONSE TO OPPOSITION TO MOTION IN LIMINE**
**OF DEFENDANT SEXY HAIR CONCEPTS, LLC, TO PRECLUDE SURVEY**
**AND EXPERT REPORT OF MICHAEL B. MAZIS**

Plaintiff Victoria's Secret Stores Brand Management Inc.'s ("VSecret's") opposition to

defendant Sexy Hair Concepts, LLC's ("SHC's") motion in limine[1] is replete with misstatements

and immaterial statements of fact. VSecret continues its attempt to circumvent the sole issue

before this Court, which is whether VSecret can register SO SEXY as a trademark for hair care

products without restrictions as to trade channels. Its last procrustean efforts are futile and its

failure to address any of the arguments raised in SHC's motion or in Philip Johnson's

declarations in any meaningful way underscore the irrelevance of, and fatal methodological

flaws inherent in, the Mazis study.

A.    **VSecret Mischaracterizes the Mazis Study.**

In its opposition, VSecret mischaracterizes the Mazis study as a survey on family of

trademarks. (Mazis Op., at 1, 14). However, nowhere in his expert report does Mazis purport to

address the issue of family of trademarks. In fact, the words "family of trademarks" do not

appear anywhere in Mazis' initial report. Mazis is perfectly clear on what his study was

_____

[1] VSecret's opposition is hereinafter referred to as "Mazis Op."

{M0658409}

designed to measure, irrespective of the immateriality of the issue:  secondary meaning of the

word "sexy."  In fact, in his initial report, without regard to whether secondary meaning is a

relevant inquiry, he opines based on the purported survey responses that SEXY when

"associated" with hair care products "has not acquired secondary meaning in the marketplace."

(Mazis Report, at 9).  Mazis' use of the word "associated" is inappropriate and vague in the

report as in the survey, and is no proper basis for the legal conclusion he purports to impart

without regard to actual legal standards.  Mazis' asserted conclusion is tainted as ambiguous as

he does not define what he means or what respondents understood by "associated."  The

conclusion is unreliable and unsubstantiated by the purported data.  *See* Richard J. Leighton,

*Using Daubert-Kuhmo Gatekeeping to Admit and Exclude Surveys in Lanham Act Advertising*

*and Trademark Cases*, 92 TMR 743, 767 (2002) (citing Council for American Survey Research

Organizations (CASRO) Code of Standards and Ethics for Survey Research, at 6 (experts

"should be especially careful not to extrapolate implications beyond those that can be supported

by the data")).

In the end, VSecret's attempt to shift the Court's focus on the family of trademarks issue

by reference to the Mazis survey sounds in desperation, especially since the similarity of marks

is but one of the many *DuPont* factors the TTAB found in SHC's favor, including the legal

identity of goods, trade channels, and classes of purchasers.  Moreover, and again, irrespective of

the immateriality of the issue, Mazis ignores the fact that the TTAB relied on the fact that SEXY

HAIR is the subject of an incontestable trademark registration (TTAB Decision, at 18) and as

such, the registration is conclusive evidence that the mark is not descriptive of the goods

identified in the certificate of registration.  15 U.S.C. § 1115(b).  The TTAB found that SO

SEXY is sufficiently similar to SEXY HAIR that confusion was likely, granted all the other

factors.  Thus, for Mazis to suggest that the "primary issue" in this appeal is whether SHC owns

a family of trademarks with the word SEXY as the common element (Mazis Declaration in Opposition ("Mazis Op. Decl.") at ¶ 4) completely mischaracterizes the well-reasoned findings of the TTAB on determining likelihood of confusion as to source.

B.    The Mazis Survey Methodology is Flawed.

Notwithstanding VSecret's newly minted attempt to derive some inference in support of its family of trademarks argument from the Mazis study, VSecret cannot escape the fact that the Mazis study remains flawed in its inception. Nothing in VSecret's opposition cures or explains or justifies any of the fatal defects. Mazis ignores the fact that if a term is *merely* descriptive, there is no need to establish secondary meaning so the question that the survey purports to measure is immaterial in the first instance. *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985). Along the same vein, there is nothing in the Mazis study which provides any basis for concluding that "sexy" immediately and directly describes with particularity anything about the nature, characteristic or quality of the hair care products or the results of the use of the products, which is the test for whether a mark is considered merely descriptive in the registration context. *See* TMEP §1209.01(b) (Merely Descriptive Marks).

As conceded by Mazis, the purpose of his study was "to assist the Court in assessing whether [SHC's] use of the word SEXY when associated with hair care products has attained secondary meaning in the marketplace." ("Mazis Op. Decl., at ¶ 2). However, as the TTAB properly found, there is no need to address secondary meaning in finding a family of marks because it ruled that "sexy" with respect to hair care products is "at most, a suggestive term that is inherently distinctive in connection with the identified goods." (TTAB Decision, at 23). The TTAB also properly noted that there was "ample evidence" submitted by both parties that "sexy" is an adjective that is used in connection with hair; and that "sexy" is a qualitative term applied to a wide variety of things. (TTAB Decision, at 23). Indeed, as the TTAB and the relevant

precedent fully recognize, the same term, such as SEXY, can be used in a trademark sense and in a non-trademark sense, depending on context, and some non-trademark use does not preclude a term from functioning as a valid trademark. 15 U.S.C. § 1115(b)(4) (non-trademark use); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976).

The TTAB in its decision recognized the distinction and found that as promoted by SHC, consumers are likely to view the SEXY HAIR marks as having a common origin. (TTAB Decision, at 24). Moreover, the TTAB relied on substantial evidence that establishes that consumers are likely to view the SEXY HAIR marks (e.g. SEXY HAIR, BIG SEXY HAIR, STRAIGHT SEXY HAIR) as following a pattern and therefore as having a common origin. The TTAB further considered, among other things, how the products were shown together on television, at trade shows and in sell sheets provided to distributors and salons for distribution to salon customers; the use of a scheme of colors and fonts to highlight the SEXY designation on packaging; the use of the designation SEXY with a star design in one color with the generic Hair in contrasting color on most of its packaging and promotional materials. (*Id.*, at 24-25). Mazis addresses none of this substantial evidence in his study.

### (1) Flawed Stimulus

The Mazis study only serves to blur the distinction between trademark use and non-trademark use of a term and ignores the fact that not all non-trademark use is "descriptive," setting up a false dichotomy, and fails to explain how the survey would distinguish between the different uses of the word "sexy." The flawed survey stimulus implies to the respondents that "sexy" is describing "hair care products" (or at best the stimulus is unclear); yet VSecret is seeking to use the term "sexy" as an identifier of the source of its hair care products just as it has sought to preclude others from registering marks using "sexy" as a component. *See Victoria's Secret Stores Brand Management, Inc. v. United Retail Inc.*, Consolidated Notice of Opposition

filed by Victoria's Secret, Exh. "B" to Supplemental Declaration of John Metzger. This proceeding is not about any purported claim of VSecret that it has the right to use the term "sexy" to fairly describe any characteristic or quality of its product, sold or intended to be sold. Without knowing what use of the word "sexy" the survey is even meant to measure, and without knowing in what sense the respondents interpreted the ambiguous questions, the results are of absolutely no probative value in determining any fact in issue that is before this Court. *See, e.g.*, examples of verbatim responses, *infra*, at p. 6.

Mazis criticizes Johnson by stating that he has no empirical evidence that the stimulus used in the survey suggested a descriptive use of the word SEXY. (Mazis Op. Decl., at ¶ 12). The criticism is ill-founded. Mazis has no empirical evidence that the stimulus did or was even intended to evoke any information about a mark or brand name or company name. Further and along the same vein, there are no post-survey interviews and no data offered to demonstrate that respondents understood they were being asked about "sexy" as relates to the source of goods, rather than in a descriptive or non-trademark context. Clearly, it is Mazis, not Johnson, who is basing the results of his study on "pure speculation."

In fact, the empirical evidence of the survey responses demonstrates the confusion of the respondents as to what was being asked, and highlights how the ambiguity of the questions and the inadequacy of the stimulus left respondents puzzled, guessing and trying to play the game set for them. That there is no empirical evidence respondents were playing the same game, and that the evidence is to the contrary, is evident from the wide range of responses given. By way of example, the following are verbatim responses from Exhibit "H" to the Mazis Survey which show how varied the responses and reasons for the responses are:

| Resp. ID # | Why do you associate with one company? | What is that company? | Why do you say that company? |
|---|---|---|---|
| 00320 | I associate it with Revlon hair color because of their commercial. The women [sic] pushes her hair back | Revlon | Just look on her face when she swings back her hair. She |

| | | | | |
|---|---|---|---|---|
| | and the way she does it, it makes her look sexy. | | | wants to let you know she is sexy. |
| 04337 | Enjoy because that is the only brand. | | Enjoy | Because I use it. I think I am sexy. |
| 05004 | Affiliated a lot with Axe, touch, they show a lot of commercials that appeal to sexuality. | | Axe | A lot of their advertisements show partial nudity. |
| 06115 | It's a good product. Like the name sexy. | | Murrays | Product you have been using for over twenty years. Serves the purpose. |
| 06116 | It shows women in their commercials. | | Revlon | It's the commercial you see the most. |
| 06113 | Because I don't trust any other company. | | Style For Women | Because I know no one can do my hair like they can. |
| 06813 | Because I have a recollection of a commercial that uses that word in it. | | Clairol Herbal Essence | Because it was in a commercial that I considered sexy. And they were using sexy to promote their product. |
| 11106 | Because all their products include the word sexy in their description. | | Paul Mitchell | Paul Mitchell, the description describe that hair products will leave hair softer and sexier than before. |

Some talk about advertisements, others talk about the shampoo they personally use, and others talk about "sexy" in a personal sense to them. There is no indication that the question asks for a name or a concept or a theme used in advertising. The ambiguity inherent in the questions posed is limitless, and by extension, so are the responses.

(2)    *Flawed Questioning*

The survey questions remain utterly flawed and unreliable. For example, the primary question regarding whether the respondent associated the word SEXY with hair care products from one company, more than one company, no company or whether they didn't know or had no opinion, is biased and confusing. 22.4% of respondents answered "I don't know." Mazis makes the blanket unsubstantiated conclusion that 22.4% of "I don't know" responses indicates that 22.4% of respondents "had no idea whether SEXY is a source identifier for hair products." (Mazis Op. Decl., at ¶ 16). However, it is obvious that "I don't know" could mean a number of very different things, such as not understanding the question ("What do you mean by associate?") or not remembering if there is more than one company that has "sexy" as part of a

name or as part of a mark, or whether there is one or more than one company that uses a marketing scheme or advertising campaign that focuses on sexiness or sex appeal or the like. There is no clue in the question or in the responses to the interpretations employed whether the question related to the name of the company; or a mark; or an advertising campaign; or some subjective belief that there was a message generally about "sexy" and any hair product or company. *See* verbatim responses, *supra*. Of course, the meaning and significance of "I don't know" would differ depending on whether the respondent interpreted the question in a non-trademark sense or in a trademark context. The number of "I don't know" responses serves only to underscore the flawed survey stimulus and use of biased and confusing questions in the Mazis study. *See, e.g., Westchester Media Co. L.P. v. PRL USA Holdings, Inc.*, 1998 U.S. Dist. LEXIS 11737, No. H-97-3278, at *53 (S.D. Tex. July 2, 1998) (where survey question elicited "high number" of "I don't know responses" in opining as to source of magazine, court found merit to objection to format of questions and afforded survey "little weight").

In its opposition, VSecret states that of the 308 respondents interviewed, only five (or 1.6%) answered "one company" and associated the word SEXY in any manner to SHC or SHC's products. (Mazis Op., at 8). A purported 18.8% of respondents "associated" SEXY with hair care products from one company. (*Id.*) Those purported results again underscore the flawed survey methodology. Respondents are never asked if they are even aware of any specific companies that sell hair care products, on an unaided or aided basis. There is no indication that any of the respondents purchase salon hair care products, although the opposed application at issue does not exclude salon trade channels from its claim of exclusive right. Clearly, the wrong question is posed to the wrong universe.

(3)    *Flawed Universe*

The universe employed in the Mazis study is improper. VSecret attempts to justify its flawed survey universe by citing the TTAB decision in *Miles Laboratories* which stands for the proposition that where there is no limitation placed on the identification of goods in the relevant registration, the proper survey universe comprises all prospective purchasers of the identified goods. (Mazis Op., at 9). However, its reliance on *Miles Laboratories* is undermined by its decision to survey only one channel of trade: malls where there is a VSecret store. Mazis did not ask where respondents bought hair care products to ascertain whether all appropriate trade channels for hair care products were represented. He used a convenience sample and nothing more. *See Rolodex Corp. v. Rubbermaid Commercial Prods., Inc.*, 1986 U.S. Dist. LEXIS 25523, No. 84-2203 (D.N.J. May 15, 1986) (convenience sample used in survey by plaintiff's expert failed to raise genuine issue of fact on the existence of secondary meaning). He does not know whether he reached any purchasers at salons, specialty stores or even internet purchasers. In short, Mazis' failure to screen prospective respondents based on where they purchase their hair care products or at what price point seriously undermines the validity of the survey.

**C.    No Requirement to Conduct Survey.**

VSecret's criticism of Johnson's failure to conduct a survey is baseless. There is no requirement that a survey be conducted. *McDonald's Corp. v. Kelly*, 1998 TTAB LEXIS 427 (TTAB Nov. 24, 1998); *Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 656 (2d Cir. 1989). It is particularly difficult to conduct any reliable survey, even if the effort is made, where as here the issue involves an application for registration where the claim of exclusive right is broader than the current actual use of the mark by the junior user. In Johnson's professional opinion, the facts in this specific case did not allow the conduct of a proper survey given a situation with a registered trademark being used for identical goods with identical or virtually

identical names.  Courts of this Circuit and other federal courts support this proposition.  *See* SHC's Motion in Limine, at 11-12 and cases cited therein.

## CONCLUSION

The Mazis survey is flawed in its inception.  It purports to measure secondary meaning which is immaterial with respect to SEXY HAIR as a matter of law and is not before the Court. The only issue before the Court is the registrability of SO SEXY as a mark for hair care products, not whether the term might be used in a non-trademark manner fairly by VSecret to somehow describe its product, but whether VSecret can claim the exclusive right to use the term as a mark for hair care products sold through all channels of trade appropriate for hair care products, including salons, the internet and drug stores and specialty stores.

The Mazis survey is flawed because there is no way of knowing if respondents are being asked about the trademark use of SEXY or some other use of SEXY.  There is no way of knowing if respondents interpreted the question as to whether SEXY relates to a term used to identify the source of hair care products, or as to whether some company uses the term SEXY in marketing hair care products **or whether** the respondents simply recognize "sex" as a theme used in advertising by a company that uses other marks to identify and other language to describe its products.  There is no referent to determine what kind of use of SEXY is the subject of the inquiry, and whether the respondent was even answering in terms of the use of the term or in terms of the respondent's familiarity with the use of the concept or suggestion of "sexiness" as a selling point, whatever term or word or mark is used by a particular company or companies.

The Mazis survey is flawed because VSecret is seeking to use the term SEXY as an identifier of its hair care products and not as a descriptive term.  SHC is not claiming that SEXY cannot be used in a non-trademark ordinary English sense by VSecret or by any other company

{M0658409}

9

for that matter. Thus, the Mazis survey does nothing but skew the real issue which is before the Court.

The Mazis survey is flawed because the survey universe is improper and the questions are biased and confusing.

Nothing in VSecret's opposition undermines any of the arguments raised in SHC's motion in limine and in Johnson's declarations.

For all of these reasons, and for the reasons stated in SHC's motion in limine and in Philip Johnson's declarations, this Court should grant the Motion in Limine and preclude Dr. Mazis' survey, expert report and testimony at the time of trial.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

DATED: JUNE 6, 2008

By: _____
ROBERTA JACOBS-MEADWAY
Two Liberty Place
50 S. 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8522 (telephone)
(215) 851-8383 (facsimile)

Co-Counsel for Sexy Hair Concepts, LLC
Our File: 297797-00081

cc:    Philip Furgang, Esq.
       FURGANG & ADWAR, LLP
       1325 Avenue of the Americas
       28th Floor
       New York, NY 10019
       Phone: (212) 725-1818