UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., : <br><br> Plaintiff / Appellant, : <br><br> v.  : <br><br> SEXY HAIR CONCEPTS, LLC, : <br><br> Defendant / Appellee. : | No. 07-cv-5804 (GEL) |

**OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
THE DECLARATION OF JOHN F. METZGER**

Defendant, Sexy Hair Concepts, LLC ("Sexy Hair") hereby opposes Plaintiff, Victoria's Secret Stores Brand Management, Inc.'s ("VSecret"), Motion to Strike the Declaration of John F. Metzger.

I.  **Introduction**

VSecret's Motion to Strike the Declaration of John F. Metzger (the "Metzger Declaration") should be denied because the contents are based on personal knowledge and set forth admissible evidence.  VSecret's Motion is based on erroneous conclusions regarding hearsay and inappropriately narrow views of relevancy.

II. **Argument**

   A. **Exh. A: VSecret's Trademark Registrations for BEACH SEXY and SEXY SUPPORT**

VSecret's registered trademarks, Nos. 2,754,457 for BEACH SEXY for swimwear and 2,776, 825 for SEXY SUPPORT for lingerie, and the positions taken by VSecret before the PTO constitute admissions by a party-opponent.  These registrations are relevant to VSecret's

contention that "sexy" is merely descriptive and not inherently distinctive, what it contends is the central issue in this case.

A trademark registration can only be granted when the mark serves to distinguish the goods of the applicant from the goods of others. Courts generally measure the distinctiveness of a mark by placing it into one of four traditional categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *See TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 93 (2d Cir. 2001). Generic terms may not be registered as trademarks. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985). Marks that merely describe the goods of the Applicant shall be refused registration. 15 U.S.C. § 1052(e)(1). The PTO may require the applicant to disclaim unregistrable components of a mark otherwise registrable. 15 U.S.C. §1056(a). "A disclaimer of a part of a composite [mark] is a concession that that part is descriptive." *McCarthy's* § 19:65. However, a descriptive mark may be registered given proof of secondary meaning.

VSecret disclaimed BEACH and SUPPORT, respectively, in the '457 and '825 Registrations. The disclaimer of both BEACH and SUPPORT establishes that SEXY is the only registrable matter, and because no evidence of secondary meaning is provided in these applications, VSecret thereby acknowledged and relied on the fact that SEXY is therefore suggestive, arbitrary, or fanciful. VSecret, in short, has previously taken the position that the word "sexy" is not merely descriptive.[1] Accordingly, these registrations are relevant to VSecret's contention in this litigation that "sexy" is merely descriptive.

---

[1] *See Blue & White Food Products Corp. v. Shamir Food Ind., Ltd.*, 350 F. Supp. 2d 514, 519 (S.D.N.Y. 2004) (noting that Defendant's argument that a word is generic in litigation appears to undermine Defendant's trademark application for the same word)

B. **Exh. B: Mall Store Location Printouts**

Mr. Metzger's statements pertaining to the websites of the shopping malls are not hearsay because the statements pertain solely to what he personally observed on these websites and are not being offered for the truth of any specific information about the malls. Mr. Metzger personally conducted the Internet search for the shopping malls' website and personally reviewed the content of those websites.

The website printouts of the store directories for the nine malls where Mr. Ford conducted his surveys that comprise Exhibit B to the Metzger Declaration should not be excluded by the hearsay rule because they are directories "generally used and relied upon by the public." *Fed. R. Evid.* 803(17). Consumers generally use the Internet to search for retail store locations and mall directories are used by consumers to identify the retail stores located in their local shopping mall. Because the website printouts are accurate, VSecret has not even attempted to dispute whether Victoria's Secret stores are located in these shopping malls. The Court should admit Exhibit B.[2]

C. **Exhs. C & D: Google Search Results and Google's Web Search Help Center**

The list of results from the search performed by Mr. Metzger on the Google web search engine and the printouts Mr. Metzger obtained from the publicly accessible Google Web Search Help Center are not inadmissible hearsay because they are not being offered to prove the truth of any content. The search results of Exhibit C are not being offered to show that the underlying content of each and every website uncovered in this search is accurate, rather Exhibit C is being offered merely to show the results observed by Mr. Metzger when he conducted his search using the Google web search engine. Mr. Metzger personally conducted his search and personally

---

[2] Mr. Ford is silent on whether the shopping malls selected as locations for conducting the surveys were selected in ignorance of the locations of Victoria's Secret stores or whether the presence of these stores would have any effect on the survey results.

observed the results that form Exhibit C. Accordingly, Exhibit C is not hearsay.[3] Exhibit C and Mr Metzger's accompanying statements are relevant in that they are probative of the level of public exposure and recognition of Sexy Hair and its family of marks.[4] Contrary to VSecret's assertion, the evidence does not need to "prove" anything, rather it simply has to have the tendency to make the existence of consumer recognition of Sexy Hair's family of marks more or less probable.

The printouts from the Google Web Search Help Center that are Exhibit D to the Metzger Declaration should be admitted under the Residual Hearsay Exception. *Fed. R. Evid.* 807. This Circuit admits evidence under this exception if (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party. *See United States v. Bryce*, 208 F.3d 346, 350 (2d Cir. 1999). Google, Inc. operates a web search engine located at the URL: <www.google.com>. Google provides detailed information on how to conduct searches using its web search engine on a series of pages accessible at <http://www.google.com/support/?ctx=web&hl=en>. There is no indication that Google, Inc. provides this information in printed form. Google, as the owner and operator of this web search engine, is the most probative and authoritative source on how to conduct searches using its search engine. The contents of Exhibit D are attested to by John

---

[3] *See Trademark Board Manual of Procedure* ("TBMP") § 528.05(e), 500-113 ("[P]rintouts of articles or information obtained from the Internet may, on summary judgment, be introduced by affidavit or declaration of a person who can clearly and properly authenticate and identify the materials, including identifying the nature, source and date of the materials."); *see Raccioppi v. Apogee, Inc.*, 47 U.S.P.Q. 2d 1368, 1371-1372 (T.T.A.B. 1998) (printouts of articles published on the Internet attached to declaration are not hearsay when articles were accessed by the declarant at the address shown on the printouts and is offered to show what is being discussed on the Internet, not the truth of the statements in those articles).

[4] *See PC Club v. Primex Tech., Inc.*, 2000 TTAB LEXIS 857, *7 (T.T.A.B. 2000) (overruling evidentiary objections to printouts of webpages showing use of the terms of the marks in the promotion of various goods and services on the Internet), *aff'd* 32 Fed. Appx. 576, 580 (Fed. Cir. 2002) (Board's use of printouts was proper because they were not offered to prove the truth of the statements contained in the websites).

Metzger as being a true and accurate printouts of the information located at accessible at <http://www.google.com/support/?ctx=web&hl=en>. VSecret has adequate notice of Sexy Hair's intent to put this information into evidence and has not disputed that these printouts accurately reflects this information. The Court should admit Exhibit D.

Paragraphs 7-10 of the Metzger Declaration all relate to Mr. Metzger's personal experiences with the Google search engine and what he personally observed as the results of his search. Again, VSecret has not disputed the truthfulness or accuracy of any of the underlying information. Furthermore, the Report of Edward Finegan, Ph.D., offered into evidence by VSecret discussed the results of a web search using the Google web search engine but does not explain what information he relied upon to formulate his particular search queries.

### D. Exhibit E to the Metzger Declaration

The excerpts from Ford's Surveys were provided as a convenience to this Court as Exhibit E of the Metzger Declaration. Ford's Reports, Surveys, and all related testimony are the subject of a motion in limine.

### E. Exh. F: Archived Webpages Obtained from the URL: <www.archive.org>

The webpages obtained from <www.archive.org> that form Exhibit F to the Metzger Declaration and its accompanying statement are not inadmissible hearsay because they are not being offered to prove the truth of the matter asserted. VSecret mischaracterizes this evidence as being an assertion by Mr. Metzger that the Paul Labrecque website first used the motto "Simple. Sexy. Sophisticated." in 2005. Rather, Mr. Metzger's statement and the accompanying exhibit are only offered to show what he personally observed as archived webpages of the Paul Labrecque website on www.archive.org. This distinction is clearly made by use of the qualified phrase "[a]ccording to the archived webpages" preceding the pertinent sentence of Paragraph 11

of the Metzger Declaration. Paragraph 11 and Exhibit F are not being offered to prove the content of the Paul Labrecque website in 2005, rather they are being offered merely to show that there is no evidence of use of the motto on the website prior to that time. Once again, VSecret has not denied that the motto was first used on the Paul Labrecque website in 2005 and Mr. Labrecque's Report is silent on that issue.

### F. Exh. G: Paul Labrecque Salon Website

Exhibit G to the Metzger Declaration is not inadmissible hearsay because it is not being offered to prove the truth of the matter asserted. Exhibit G is not being offered to show the specific services, pricing, location, and clientele for the Paul Labrecque Salons but only what the website located at the URL <www.paullabrecque.com> displays and states to any member of the public that visits that website. Mr. Labrecque states in his Expert Report that he owns and operates the website located at the URL <www.paullabrecque.com>. VSecret has not denied that these printouts accurately display the content that was accessible to the general public on the website as of the date of the Metzger Declaration.[5]

### G. Exh. H: Sexy Hair's Trademark Registrations from 2007

Sexy Hair's registered trademarks, Nos. 3,247,541 for SHORT SEXY for hair care products and 3,247,540 for HEALTHY SEXY for hair care products are admissible and relevant to the issue of the existence of Sexy Hair's family of marks. The '541 and '540 Registrations clearly show dates of first use of the trademarks of December 20, 1999, and May 20, 2001, respectively. These marks were therefore in use prior to VSecret's alleged entry into the marketplace in 2001 and may be used in support of the proposition that Sexy Hair owns a family of marks. There is no requirement that a mark be registered to be considered a member of a family of marks.

---

[5] *See* TBMP § 528.05(e), 500-113; Section C, Footnote 3, *supra*.

Sexy Hair's registered trademark, No. 3,371,913 for STRONGSEXYHAIR for hair care products is admissible and relevant to the issue of the strength of Sexy Hair's family of marks and the likelihood of confusion between the Sexy Hair family of marks and the SO SEXY mark.

### Conclusion

For all of the foregoing reasons, Sexy Hair respectfully request that VSecret's Motion to Strike the Declaration of John F. Metzger be DENIED in its entirety.

Respectfully submitted,

Dated: June 6, 2008

Roberta Jacobs-Meadway (RJ-M 5870)
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Center
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
(215) 851-8400
rjacobsmeadway@eckertseamans.com
Co-counsel for Sexy Hair Concepts, LLC

Cc: Philip Furgang, Esq.
Furgang & Adwar, LLP
1325 Avenue of the Americas
New York, NY 10019
(212) 725-1818