UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> SEXY HAIR CONCEPTS, LLC, <br><br> Defendant. | Case No. 07cv-5804 (GEL) <br><br> ECF CASE |

### REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO STRIKE THE DECLARATION OF JOHN F. METZGER

Plaintiff, Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret"), hereby submits this reply memorandum in further support of its motion to strike the Declaration of John F. Metzger that defendant, Sexy Hair Concepts, LLC ("SHC"), filed in support of its motion for summary judgment. The purpose of this reply memorandum is to respond to SHC's opposition to the Motion ("SHC Opp'n Mem.") without reiterating the arguments made in the memorandum in support of the Motion ("VS Mem.").

**Metzger Decl., Ex. A: Victoria's Secret's Trademark Registrations of BEACH SEXY and SEXY SUPPORT**

SHC employs fallacious reasoning in its misguided attempt to attribute relevancy to Victoria's Secret's registered trademarks of BEACH SEXY for swimwear (Reg. No. 2,754,457) and SEXY SUPPORT for lingerie (Reg. No. 2,776,825). SHC's argument is that because Victoria's Secret disclaimed the generic words BEACH and SUPPORT in the aforementioned registrations, the lack of a disclaimer for SEXY, *ipso facto*, means that SEXY

cannot be descriptive, as Victoria's Secret has asserted during this case. (SHC Opp'n Mem. at 2)

SHC misstates the significance of a disclaimer in a trademark registration. According to the Trademark Manual of Examining Procedure ("TMEP"), which is the manual employed by the United States Patent and Trademark Office ("USPTO") in reviewing trademark applications, the purpose of a disclaimer is to state that, with regard to a particular registration, no rights are asserted in the disclaimed component of a composite mark, standing alone, but that trademark rights are claimed in the composite.[1] *TMEP* § 1213 (*quoting Sprague Elec. Co. v. Erie Resistor Corp.*, 101 U.S.P.Q. 486, 486-87 (Comm'r Patents 1954)).

First, the Lanham does not mandate the use of a disclaimer even if the mark includes "an unregistrable component." 15 U.S.C. § 1056(a) (2006). Second, the *TMEP* makes clear that the decision of whether a disclaimer is necessary for registration of a particular composite mark falls within the discretion of the examining attorney at the USPTO. Specifically, the "examining attorney should not require that an element of a mark be disclaimed when a disclaimer would be unnecessary, *e.g.*, when the form or degree of integration of an element in the composite makes it obvious that no claim is being made in any element apart from the composite." *TMEP* § 1213.01(a).

Contrary to SHC's posturing, the absence of a disclaimer of SEXY in Victoria's Secret's registered marks BEACH SEXY and SEXY SUPPORT does not constitute an admission that SEXY is an inherently distinctive term. If that were the case, the same reasoning would hold that the words SO or BIG are likewise distinctive because the USPTO did not require disclaimers for these words in the SO SEXY or BIG SEXY HAIR applications.

---

[1] A composite mark is one that consists of "separable word elements;" in other words, two or more separate words, such as SO SEXY or BIG SEXY HAIR. *TMEP* § 1213.02.

Therefore, Exhibit A to Metzger's Declaration should be stricken.

**Metzer Decl., Ex. B: Mall Store Location Printouts**

Regardless of whether the printouts of mall store listings are accurate and despite SHC's protestations to the contrary, SHC offers these unauthenticated documents for the truth of the matter asserted. As set forth in its motion *in limine* regarding Dr. Ford, SHC's memorandum asserts that the presence of VICTORIA'S SECRET retail stores in eight of the nine malls where Dr. Ford conducted his survey somehow biased the survey results. (SHC Mem. re Mot. *In Limine* to Preclude Ford at 13) Notwithstanding the utter lack of proof to sustain this notion, this position directly refutes SHC's assertion that the printouts merely reflect what Metzger observed on the mall websites and are not being offered for the truth about any specific information involving the malls. (SHC Opp'n Mem. at 3)

If the Court considers the information about the store listings provided in Metzger's Declaration, then it should also note that these same printouts reflect the presence of stores and salons where SHC's products are sold, namely, Regis, Ulta, JC Penney, Mastercuts, Mia & Maxx and Trade Secret, at six of the malls where Dr. Ford's survey was conducted. (Compl., Ex. A; TTAB Op. at 6-7) (Reply Declaration of Frank J. Colucci, Exs. 21, 22) Furthermore, the documents in Metzger's declaration indicate that all but one of these six malls contain more than one of SHC's retail distributors, including two, Southdale Center and The Parks at Arlington, which both house <u>five</u> of the aforementioned stores. Therefore, if SHC's reasoning is to be accepted – that the presence of VICTORIA'S SECRET stores biased the survey results in favor of Victoria's Secret – SHC likewise must concede that the aggregate presence of twenty distributors of SHC's products (exceeding by more than 100% the number of stores distributing SO SEXY products in the surveyed malls) actually skews the results in favor

of SHC. Thus, by SHC's reckoning, the probability is significantly higher that a survey respondent had visited a salon or store that sells SHC's products than had visited a VICTORIA'S SECRET store prior to participating in the survey.

**Metzger Decl., Exs. C and D: GOOGLE Search Results and Web Search Help Center**

Metzger's Declaration and documents appended thereto regarding the Google search results are confusing and unhelpful, and notwithstanding SHC's opposition, they remain inadmissible hearsay. If SHC wants to rely upon the fact that Mr. Metzger ran searches on Google, that is one thing. However, to treat the search results as admissible evidence of "the level of public exposure and recognition of Sexy Hair and its family of marks" (SHC Opp'n Mem. at 4) is quite another. Such a scattershot approach offers no probative value on whether SHC has a viable family of marks, including public recognition thereof.[2]

SHC's attempt to admit Metzger Ex. D under the residual hearsay exception, *Fed. R. Evid.* 807, also falls far afield. Evidence Rule 807 only permits the admissibility of a statement that is not specifically covered by the hearsay exceptions in *Fed. R. Evid.* 803 or 804 if the statement has circumstantial guarantees of trustworthiness equivalent to those in the exceptions and subject to the following conditions:

(A) The statement is offered as evidence of a material fact;

(B) The statement is more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts; and

(C) The general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence.

---

[2] By comparison, Victoria's Secret's linguistic expert, Dr. Finegan, referred to internet searches he conducted that yielded more than 200,000 hits for the term "sexy hair" for the purpose of showing that the word "sexy" occurs frequently among discussions of hair care products and not all pertain to SHC. (Expert Report of Edward Finegan, Ph.D. (appended to SHC's Motion *in limine* to Preclude Finegan as Exhibit A) at 3)

First, Exhibit D, which pertains to searching with the Google search engine, does not pertain to a material fact. Web searching techniques are not an issue in this appeal. Second, even if the Google printouts pertain to the issue of whether SHC can prove the public recognizes a family of marks, such evidence is far less probative than other evidence SHC could have adduced. For example, SHC could have conducted a survey to show whether consumers attribute the word "sexy" to SHC, but it elected not to do so. Doing so, however, would not have yielded the results SHC desired, as the expert report of Dr. Michael Mazis demonstrates. (*See* Expert Report of Michael B. Mazis, Ph.D. attached to SHC's motion to preclude Dr. Mazis) Third, SHC's argument to admit blatant hearsay under the guise of the residual hearsay exception does not serve the general purposes of the rules of evidence or the interests of justice.

Accordingly, Exhibits C and D and the narrative related thereto in Metzger's Declaration at paragraphs 7 through 10 must be stricken.

**Metzger Decl. Exhibit E: Appendix F of Dr. Ford's Likelihood of Confusion Survey**

Since SHC acknowledges that Appendix F of "Dr. Ford's Volume II to his Likelihood of Confusion Survey" is already before the Court (SHC Opp'n Mem. at 5), it need not be regarded as part of the Metzger Declaration.

**Metzger Decl. Exhibit F: "Wayback Machine" Search Results**

SHC offers no case law to counter the controlling precedent that Victoria's Secret cites in support of its Motion. (VS Mem. at 7) Instead, SHC attempts to sidestep myriad evidentiary deficiencies by contending, on the one hand, that the "wayback machine" results are not offered for the truth; yet, on the other hand, SHC relies on the documents to assert, "there is no evidence of use of the motto on the website prior to that time." (SHC Opp'n Mem. at 6) SHC has no basis to make such a statement because it is founded entirely on materials that this

Court has found "suffer from fatal problems of authentication under *Fed. R. Evid.* 901." *Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017, 2007 U.S. Dist. LEXIS 71246, at *19-20 (S.D.N.Y. Sept. 24, 2007).

### Metzger Decl., Ex. G:  Paul Labrecque Salon Website Printouts

Yet again, SHC pays lip service to the maxim that the documents it offers through the Metzger Declaration are not relied upon for the truth of the matter asserted. However, the maxim is honored only in the breach because SHC argued in its companion motion *in limine* to preclude the testimony of Paul Labrecque that Labrecque's Services Menu states, the base price for a hair cut "starts at $80; if you want a blow dry, add $60." (SHC Mem. re Mot. *In Limine* to Preclude Labrecque at 6)  As stated in the Declaration of Paul Labrecque filed on May 23, 2008 in opposition to SHC's motions for summary judgment and *in limine* to preclude Labrecque's testimony, SHC's characterization is absolutely inaccurate. (Labrecque Decl., ¶ 5)  Moreover, this episode reveals that SHC indeed offers the document for the truth of the matter asserted; yet, as SHC's botched interpretation demonstrates, the very reasons for precluding hearsay and other documents for which the proponent lacks personal knowledge is to avoid the proliferation of unreliable statements.

### Metzger Decl., Ex. H:  SHC Trademark Registrations From 2007

SHC concedes that its registered mark STRONGSEXYHAIR was not in use prior to Victoria's Secret's entry into the marketplace with its SO SEXY mark. Therefore, it has no relevance to the issue of whether it has a family of marks. *See Land-O-Nod Co. v. Paulison*, 220 U.S.P.Q. 61, 65-66 (T.T.A.B. 1983).

SHC's trademark registrations for SHORT SEXY and HEALTHY SEXY, even if on their face they state that use began prior to Victoria's Secret's entry into the relevant market,

nonetheless are immaterial and irrelevant. SHC did not plead these registrations or marks in its notice of opposition that commenced this litigation. SHC did not amend the pleadings to include these marks. The Board's decision from which this appeal is taken does not address either of these two additional marks. Furthermore, SHORT SEXY and HEALTHY SEXY deviate from the so-called pattern that the Board found – "opposer's family of marks is characterized by the term SEXY preceded by a word that suggests an intended result of the product <u>and</u> followed by a generic noun in the hair care field." (Compl., Ex. A; TTAB Op. at 24) (emphasis added)

Consequently, these registrations have no bearing on the issue before the Court and, moreover, pose the potential to cause prejudice to Victoria's Secret.

## CONCLUSION

For all of the foregoing reasons, Victoria's Secret requests that the Metzger Declaration and exhibits be struck in their entirety.

Dated:   New York, New York
         June 13, 2008

                                         COLUCCI & UMANS

                                         By: *Frank J. Colucci*
                                         Frank J. Colucci (FC-8441)
                                         Richard P. Jacobson (RJ-2843)
                                         218 East 50th Street
                                         New York, New York 10022
                                         Telephone: (212) 935-5700
                                         Facsimile: (212) 935-5728
                                         Email: email@colucci-umans.com

                                         Attorneys for Plaintiff

-8-

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO STRIKE THE DECLARATION OF JOHN F. METZGER, NOTICE OF MOTION** was served on counsel for defendant, Roberta Jacobs-Meadway, Eckert Seamans Cherin & Mellott, LLC, Two Liberty Place, 50 South 16th Street, 22nd Floor, Philadelphia, Pennsylvania, 19102, by FedEx, on the 13th day of June, 2008.

_/s/ Kathleen M. McGann_