UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :

VICTORIA'S SECRET STORES BRAND
MANAGEMENT, INC.,

                     Plaintiff,

    -against-

SEXY HAIR CONCEPTS, LLC,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/8/09**

07 Civ. 5804 (GEL)

**OPINION AND ORDER**

Frank J. Colucci, Richard P. Jacobson, Colucci &
Umans, New York, NY, <u>for Plaintiff Victoria's
Secret Stores Brand Management, Inc</u>.

Roberta Jacobs-Meadway, Eckert Seamans
Cherin & Mellott, LLC, Philadephia, PA and
Philip Furgang, Furgang & Adwar, LLP,
New York, NY, <u>for Defendant Sexy Hair Concepts,
LLC</u>.

GERARD E. LYNCH, <u>District Judge</u>:

      Plaintiff Victoria's Secret Stores Brand Management, Inc. ("Victoria's Secret") brings

this appeal from a decision of the Trademark Trial and Appeal Board ("TTAB") of the United

States Patent and Trademark Office ("USPTO") sustaining Sexy Hair Concepts, LLC's ("SHC")

opposition to Victoria Secret's application for registration of the trademark SO SEXY for hair

care.  SHC now moves for summary judgment that the decision of the TTAB be affirmed.  For

the reasons stated below, SHC's motion will be denied.

## BACKGROUND

### I.    The Parties

SHC has been using SEXY HAIR as a name and mark and SEXY as a mark and as the dominant component of names and marks for hair care products since 1998.  SHC's product lines include BIG SEXY HAIR; STRAIGHT SEXY HAIR; SHORT SEXY HAIR; CURLY SEXY HAIR; HEALTHY SEXY HAIR; HOT SEXY HIGHLIGHTS; WILD SEXY HAIR; and SILKY SEXY HAIR.  (Def.'s Mem. 4.)  SHC's hair care products are packaged and promoted using the same SEXY mark, and same styling for the marks.  Different colored packaging distinguishes one product line from another.  (Id.)

SEXY HAIR products have met with significant commercial success; for 2007, SHC's sales in the U.S. were approximately $51 million.  SHC has promoted and marketed the SEXY HAIR brands through trade shows, advertisements, and other means; its marketing expenses from 2004 to 2006 ranged from approximately $2 million to $2.8 million.  (Id. 6.)

SHC has secured U.S. trademark registrations for hair care products for various of its SEXY marks, including SEXY HAIR; SEXY HAIR & Design; SEXY HAIR CONCEPTS & Design; WILD SEXY HAIR; HOT SEXY HIGHLIGHTS; SHORT SEXY; HEALTHY SEXY; and STRONGSEXYHAIR.  (Id. 7-8.)  SHC has regularly policed the SEXY marks in the hair care category, opposing use and registration of marks which contain the term "sexy" for hair care products.  (Id. 8.)

Victoria's Secret is one of the world's leading retailers of lingerie and beauty products. For many years, Victoria's Secret has advertised and sold products bearing trademarks that include the word "sexy," such as VERY SEXY, which has been used for apparel and personal care products.  (Compl. 13.)  Other Victoria's Secret products use the marks SEXY IS BUILT

RIGHT IN; SEXY LITTLE THINGS; and THE NEW SHAPE OF SEXY. (Id.) The brand's advertising campaigns have featured the taglines WHAT IS SEXY? and HOW WILL YOU SHOW OFF YOUR SEXY? (Id.) Victoria's Secret owns dozens of other registrations and applications for trademarks that include the word "SEXY." (Id. 16.)

## II.    Procedural History

On November 19, 2001, Victoria's Secret filed an intent-to-use trademark application with the USPTO for registration of the mark SO SEXY for hair care products. The examining attorney at the USPTO determined that Victoria's Secret was entitled to registration of the SO SEXY Application and it was published for opposition on July 2, 2002. SHC filed a Notice of Opposition with the USPTO on July 18, 2002, alleging that the mark SO SEXY was likely to cause confusion with its family of SEXY marks and its "Sexy Hair Concepts" trade name.

On April 20, 2007, the TTAB issued an opinion in which it found that (1) SHC and Victoria's Secret used their marks on identical or related goods; (2) the channels of trade[1] and classes of purchasers were the same as a matter of law; and (3) SHC had established a family of marks based on the common term "sexy" and the SO SEXY mark was sufficiently similar to SHC's family of marks that it was likely to be perceived as part of SHC's family. (Compl., Ex. A.) Accordingly, the TTAB sustained SHC's opposition and rejected Victoria's Secret's

---

[1] Although Victoria's Secret's products are sold only in its retail stores while SHC's products are sold primarily to salons and distributors, Victoria's Secret's application to register the SO SEXY mark did not include any limitations or restrictions as to channels of trade. The TTAB thus found as a matter of law that the goods must be presumed to travel through all trade channels appropriate for hair care preparations, which would include salons, discount outlets, drug chains, and beauty supply outlets. (Compl., Ex. A at 20; see also Canadian Imperial Bank of Commerce v. Wells Fargo N.A., 811 F.2d 1490, 1492-95 (Fed. Cir. 1987); CBS Inc. v. Morrow, 708 F.2d 1579, 1582 (Fed. Cir. 1983).

application for registration of its SO SEXY mark.[2]  Victoria's Secret exercised its right to appeal

by bringing an action in this Court pursuant to Section 21(b) of the Lanham Act, 15 U.S.C. §

1071(b)(1).

## DISCUSSION

### I.    Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The

Court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve

disputed issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The

Court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's

favor, and construe the facts in the light most favorable to the nonmoving party. Id. at 254-55.

However, summary judgment may be granted "[i]f the evidence is merely colorable, or is not

significantly probative." Id. at 249 (internal citations omitted).

The party seeking summary judgment bears the burden of showing that no genuine

factual dispute exists. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). Once

the moving party has made a showing that there are no genuine issues of material fact, the

burden shifts to the nonmoving party to raise triable issues of fact. Anderson, 477 U.S. at 250.

A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in

favor of the nonmoving party. Id. at 248.

---

[2] Whether Victoria's Secret has a right to *use* the SO SEXY mark on its hair care
products is not at issue in this litigation; this is not an infringement action.

4

## II.      Standards for Appeals from the TTAB

A district court sits in a dual capacity in reviewing a TTAB decision under Section

21(b)(1); it serves as both appellate reviewer of the facts found by the Trademark Board as well

as fact-finder with respect to any new evidence that the parties may choose to introduce at the

district court level.  See Dickinson v. Zurko, 527 U.S. 150, 164 (1999).  The facts found by the

TTAB are to be reviewed with deference; the district court applies a "substantial evidence"

standard of review which requires it to evaluate "whether a reasonable mind might accept" a

particular evidentiary basis as "adequate to support a conclusion."  Dickinson, 119 U.S. at 162.

The legal conclusions of the TTAB are reviewed de novo.  Recot, Inc. v. M.C. Becton, 214 F.3d

1322, 1327 (Fed. Cir. 2000).

## III.     SHC's Motion for Summary Judgment

In its Complaint, Victoria's Secret asserts that the TTAB erred in finding (1) that the

word "sexy" is suggestive rather than merely descriptive; (2) that SHC has established a family

of marks based on the common word "sexy"; and (3) that the SO SEXY mark is likely to be

perceived as part of SHC's SEXY family of marks and thus to cause consumer confusion as to

the source of the product.  Victoria's Secret seeks a reversal of the TTAB's decision and an

Order directing the TTAB to allow registration of its SO SEXY mark.  SHC moves for summary

judgment on the basis that the TTAB was correct in its rulings and that none of the expert reports

Victoria's Secret has submitted in conjunction with this appeal create a material issue of fact

which would preclude a grant of summary judgment.

The TTAB denied Victoria's Secret's attempt to register its SO SEXY mark on the

grounds that Victoria's Secret's mark so resembled SHC's family of SEXY marks as to be likely

to cause confusion under Section 2(d) of the Trademark Act.  The TTAB assessed the likelihood

5

of confusion based on factors first set forth in In re E.I. DuPont DeNemours & Co., 476 F.2d 1357, 1361 (C.C.P.A. 1973), which include the similarity of the marks; the similarity of the goods; the respective channels of trade; the conditions of sale and the intended customers; the extent and nature of advertising and promotion; the fame of the prior mark; the number and nature of similar marks in use on similar goods; and any evidence of actual confusion or the absence thereof. See also J & J Snack Foods Corp. v. McDonald's Corp., 932 F.2d 1460, 1462-63 (Fed. Cir. 1991). The likelihood of confusion analysis considers all DuPont factors for which there is evidence of record but "may focus . . . on dispositive factors, such as similarity of the marks and relatedness of the goods." Han Beauty, Inc. v. Alberto-Culver Co., 236 F.3d 1333, 1336 (Fed. Cir. 2001) (internal citations omitted).

### A.    Family of Marks

The dispute in the instant action focuses on whether the TTAB correctly assessed the similarity of the marks, and the linchpin of this dispute is whether SHC has established a "family of marks." A group of marks forms a family when the individual marks have "a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." J&J Snack Foods, 932 F.2d at 1462. Perhaps the most famous example of a family of marks is the McDonald's Corporation's "Mc" family, members of which include: McDONALD'S, EGG McMUFFIN, and CHICKEN McNUGGETS. See, e.g., McDonald's Corp v. McBagel's, Inc., 649 F. Supp. 1268 (S.D.N.Y. 1986).

The family of marks doctrine is important because it provides that a likelihood of confusion can exist even though a junior user's mark may not be significantly close to any one member of a senior user's family of marks. 4 McCarthy on Trademarks and Unfair Competition

6

§ 23:61 (4th ed.). Thus, McDonald's Corporation was able to block the registration of

McPRETZEL, McDENTAL and MC CLAIM, even though McDonald's was not itself using

those marks.  See J&J Snack Foods Corp., 932 F.2d at 1462 ("McPRETZEL"); McDonald's

Corp. v. Druck and Gerner, DDS., 814 F. Supp. 1127, 1139 (N.D.N.Y. 1993) ("McDENTAL");

McDonald's Corp. v. McClain, 37 U.S.P.Q.2d 1274, 1275 (T.T.A.B. 1995) ("MC CLAIM").

The existence of a family of marks is a question of fact.  McBagel's, 649 F. Supp. at

1272.  Merely adopting and using – and even registering – a group of marks with a common

feature does not create a family of marks, even if the user intended to create a family.  American

Standard, Inc. v. Scott & Fetzer Co., 200 U.S.P.Q. 457, 461 (T.T.A.B. 1978).  The key to a

finding that a family of marks exists is a recognition among the purchasing public that the family

"surname" – i.e., the element common to all the marks – is indicative of a common origin of the

goods.  J&J Snack Foods, 932 F.2d at 1463.  This recognition is a question of fact, to be

determined by considering (1) whether, prior to the junior user's entry, the marks in the alleged

family were used and promoted in such a way as to create public perception of the family

surname as an indication of source; and (2) whether the family surname is distinctive.  See

Marion Laboratories Inc. v. Biochemical/Diagnostics Inc., 6 U.S.P.Q.2d 1215, 1218 (T.T.A.B.

1988); see also McCarthy § 23:61.

### 1.    Nature of Use, Advertising, and Promotion

The party seeking to demonstrate the existence of a family of marks must show that the

surname of the family is recognized by the public as a trademark in and of itself.  American

Standard, Inc., 200 U.S.P.Q. at 461.  This is usually accomplished by proof that the surname has

been so extensively advertised that buyers would be likely to think that the junior user's product

originates with the senior user.  See, e.g., Polaroid Corp. v. American Screen Process Equipment

7

Co., 166 U.S.P.Q. 151, 154 (T.T.A.B. 1970) (no POLA- prefix family in photographic field

because advertising and promotion did not create "an association of common ownership" which

would lead buyers to "ascribe all trademarks in the field bearing the prefix 'POLA' with

Polaroid"). The TTAB has acknowledged the difficulty of "proving" consumer recognition:

> The only way that [recognition of common ownership based upon
> a feature common to each mark] can be ascertained in the absence
> of testimony by purchasers of the goods so marked is to place
> oneself in the position of an average purchaser or prospective
> purchaser and attempt to understand what the normal reaction
> would be to the marks as they are encountered in the marketplace
> and/or in promotional and advertising material.

American Standard Inc., 200 U.S.P.Q. at 461 (internal citations omitted).

In the instant action, the TTAB found (1) that SHC advertises and promotes together its

marks containing the word SEXY and that the different SEXY brands are shown together on

television, at trade shows and seminars, and in promotional brochures for professional clients

(Compl., Ex. A at 24); (2) that the SEXY element of SHC's different product names is set off

from each of the rest of the names by different fonts and colors on its packaging and in

promotional materials (Id. at 24-25); and (3) that articles in the press have made reference to the

SEXY HAIR "line" of products. (Id. at 25.) On the basis of these facts, the TTAB concluded

that there was a public association of the mark SEXY with SHC in the context of hair care

products.

Victoria's Secret contends that the TTAB's finding was not supported by substantial

evidence. Its weakest argument in support of this contention is that SHC's claim to a family of

marks is undermined by its practice of using different colors for its product packaging. (Pl.

Opp'n 14.) The fonts and formats of the word "sexy" and of the full product names are

consistent throughout SHC's packaging; the use of different-colored backgrounds merely

differentiates the specific products from the others within the brand. Victoria's Secret adduces no case law which indicates that different-colored packaging would preclude an otherwise eligible group of marks from qualifying as a family.

Victoria's Secret also asserts that SHC advertises and displays its products separately just as frequently as, if not more often than, it advertises its products together. (See VS Rule 56.1 Stmt., ¶ 6; Declaration of Frank J. Colucci in Opposition to Defendant's Motion for Summary Judgement, dated May 23, 2008 ("Colucci Decl."), ¶¶ 5, 16 and Exs. 3, 14 (examples of SHC's advertisements featuring only a single product from the SEXY HAIR line).) SHC asserts that it has provided "substantial" testimony and documentary evidence showing a pattern of advertising and promoting together its SEXY-branded products. (Def.'s Reply 8.) Although the record contains evidence of both joint and individual product advertisements, neither party has adduced evidence as to the proportion of SHC's advertising featuring more than one product line at once. Reading the record in the light most favorable to Victoria's Secret as the non-moving party in this motion for summary judgment, the Court must assume that SHC frequently advertises and displays its products separately – a fact which weighs against finding a family of marks.

SHC is correct that there is no specific evidentiary hurdle that the proponent of a family must clear for the court to find "proof" of consumer recognition. Instead, courts frequently make inferences of consumer recognition from either the amount of advertising and promoting of the family mark, see e.g., Motorola, Inc. v. Griffiths Electronics, Inc., 317 F.2d 397, 399 (C.C.P.A. 1963), and from media mentions of the family surname, see e.g., 7-Eleven, Inc. v. Wechsler, 83 U.S.P.Q.2d 1715 (T.T.A.B. 2007).

Victoria's Secret correctly contends, however, that while SHC has offered financial information, such as sales figures for products sold under its various marks, such information is

9

insufficient to establish a family of marks, because SHC has failed to provide any meaningful context – e.g., market share – for interpreting this information.  Even evidence of significant expenditures on marketing and advertising is insufficient to establish a family of marks absent additional empirical evidence regarding consumer recognition of those marks.  Primepoint L.L.C. v Primepay, Inc., 545 F. Supp. 2d 426, 433-34 (D.N.J. 2008) ("All this Court knows is that PrimePay has spent between $200,000 and $550,000 per year on marketing and advertising between 1995-2005 – there is no evidence before this Court as to what type of consumer recognition, if any, has resulted." (internal quotations omitted)).   See also EMSL Analytical, Inc., v. Testamerica Analytical Testing Corp., No. 05 Civ. 5259, 2006 WL 892718, at *7 (D.N.J. Apr. 4, 2006) (finding that the amount of money spent on advertising and marketing is not necessarily indicative of the strength of a mark especially where there has been no showing that the expenditures resulted in actual consumer recognition of the mark).  Evidence of marketing and advertising expenditures is at best indirect evidence of consumer recognition of a mark.  It is even less probative – especially given the ambiguity in this record as to the extent of "family" as opposed to "individual product" marketing – of whether consumers identify the particular marks at issue here as part of a "family" of marks.

Surveys are not required to prove consumer recognition, particularly in proceedings before the TTAB, see McDonald's Corp. v. McClain, 37 U.S.P.Q. 2d at 1277; Hilton Research Inc. v. Society for Human Resource Management, 27 U.S.P.Q. 2d 1423, 1435-36 (T.T.A.B. 1993), but survey evidence can be of great use in helping a court determine the existence of a family of marks.  See Colony Foods Inc. v. Sagemark, Ltd., 735 F.2d 1336, 1339 (Fed. Cir. 1984) ("Colony had failed to establish, *for example by a survey*, that the [purported family surname] is used by the public in connection with restaurant services to identify Colony

10

exclusively." (emphasis added).)

Victoria's Secret has introduced new survey evidence from Michael B. Mazis, a marketing expert at American University, who tested whether actual consumers of hair care products associate the word "sexy" as a mark for hair care products with SHC.[3] The survey results indicated that fewer than 1.6% of the respondents associated the words "SEXY hair care products" with SHC; instead, nearly two-thirds associated SEXY hair care products with no particular company. (Mazis Rpt. ¶ 8.) The evidence offered by Victoria's Secret testing public awareness of SHC's marks indicates strikingly low consumer recognition of SEXY as a source-identifier of SHC, or indeed as a source-identifier of any one company. These results raise questions of material fact as to whether the word "sexy" has acquired recognition among the purchasing public indicative of SHC as the common source of hair care products containing the word "sexy" in their name. (Mazis Rpt. ¶ 22.)

## 2.    Distinctiveness of the Mark

---

[3] SHC has moved to preclude Mazis's survey and report. The motion will be denied. SHC first argues that, because SEXY HAIR is the subject of an incontestable registration, it cannot be challenged as a matter of law on the grounds that it is descriptive. This is wrong; as discussed below, the issue here is not a challenge to any of SHC's trademarks, but rather whether the word "sexy" can be regarded as the surname of SHC's purported family of marks. Mazis's survey is relevant because, in order for SHC to establish that it owns a family of marks using the word "sexy," it must demonstrate that consumers perceive the word "sexy" to be an indication of the source of the hair care product. In the alternative, SHC argues that the Mazis survey is flawed in its methodology and that the expert report based on the survey fails to meet the standard for admissibility under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Victoria's Secret convincingly counters SHC's critiques of Mazis's methodology. (See generally Pl. Opp'n to Def. Motion in Limine To Preclude the Survey and Expert Report of Michael Mazis.) In general, assertions of methodological errors in a survey "bear exclusively on the weight to be given the survey rather than bearing on an admissibility determination under Fed. R. Evid. 403." Freisland Brands, B.V. v. Vietnam National Milk Co., 221 F. Supp. 2d 457, 460 (S.D.N.Y. 2002). Moreover, where a bench trial is in prospect, resolving Daubert questions at a pretrial stage is generally less efficient than simply hearing the evidence; if SHC's objections are well-taken, the testimony will be disregarded in any event.

11

To establish a family of marks, a proponent must show not only that it has advertised and promoted its marks together so as to create the public perception of a common source, but also that the surname is "distinctive." Marks are classified in the following categories (in order of increasing distinctiveness): (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. See, e.g., Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976)). Fanciful, arbitrary, and suggestive marks are considered inherently distinctive. Id. A descriptive mark can also be distinctive, but only if it has acquired secondary meaning.

A descriptive mark "is one that tells something about a product, its qualities, ingredients or characteristics. It may point to a product's intended purpose, its function or intended use, its size, or its merit." Gruner & Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993) (internal citations omitted); see also In re Gyulay, 820 F.2d 1216, 1217 (Fed. Cir. 1987) (a mark is merely descriptive if it immediately conveys qualities or characteristics of the goods). A term is suggestive, meanwhile, if it passes the "imagination" test, i.e., "if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods." Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1040 (2d Cir. 1992) (internal citations omitted). See also In re Nett Designs, 236 F.3d 1339, 1341 (Fed. Cir. 2001); Stix Products, Inc. v. United Merchants & Mfrs., Inc., 295 F. Supp. 479, 488 (S.D.N.Y. 1968).

The line between descriptive and suggestive marks is hardly a clear one; "[i]n the complex world of etymology, connotation, syntax, and meaning, a term may possess elements of suggestiveness and descriptiveness at the same time . . . a term may slide along the continuum between suggestiveness and descriptiveness depending on usage, context, and other factors that affect the relevant public's perception of the term." Nett Designs, 236 F.3d at 1341 (internal

12

citations omitted).  Context is particularly important in determining the classification of a mark:

> A particular mark's distinctiveness depends not only on its
> language, but also on the context in which it is used.  For example,
> HONEY BROWN is generic in the context of ale beers, possibly
> descriptive in the context of lager beers, or wood stains, and
> probably suggestive or arbitrary in the context of grilling products,
> internet service providers, musical instruments, or paper products.

Real News Project, Inc. v. Independent World Television, Inc., No. 06 Civ. 4322, 2008 WL

2229830, at *6 (S.D.N.Y. May 27, 2008) (internal citations omitted).

Classification of a mark is a question of fact.  See Lane Capital Mgmt., Inc. v. Lane

Capital Mgmt., Inc., 192 F.3d, 337 344 (2d Cir. 1999); Menashe v. V Secret Catalogue, Inc., 409

F. Supp. 2d 412, 424 (S.D.N.Y. 2006).  In determining whether a mark is suggestive or

descriptive, the court should look not to the owner's subjective intent, but to the natural

interpretation the public would give the word.  See In re Bed & Breakfast Registry, 791 F.2d

157, 160 (Fed. Cir. 1986).

The TTAB determined "sexy" to be suggestive in the context of hair care products and

therefore inherently distinctive:

> The record does not establish that "sexy" is merely descriptive or
> only laudatory with respect to hair care products.  We take judicial
> notice of the definition in Merriam-Webster's Collegiate
> Dictionary (11th ed. 2003) of "sexy" as "1. sexually suggestive or
> stimulating: erotic. 2. generally attractive or interesting:
> appealing."  "Sexy" is, at most, suggestive of an amorphous, yet
> desirable, quality of hair or hair care products.  The advertising
> and articles of record clearly imply that a purchaser or reader
> should desire "sexy hair;" but it is not clear that "sexy hair" is a
> specific quality that means the same thing to all people.
> Particularly with respect to [SHC's] products, "sexy hair" could be
> straight, or curly or wild; or it could pertain to hair length, color or
> texture.  The record does not establish a direct connection between
> the term "sexy" and a specific quality, characteristic, function,
> ingredient, attribute or feature of the identified hair care products
> or of hair after the use of these products.  Therefore, "sexy" is, at

13

> most, a suggestive term that is inherently distinctive in connection
> with the identified goods.

(Compl., Ex. A at 22-23.)

Victoria's Secret asserts that "sexy" is merely descriptive and that the TTAB's

classification of it as suggestive is not supported by substantial evidence. First, the fact that

"sexy" does not apply to SHC's products themselves but rather to their (hoped-for) effect on

users does not preclude a finding of descriptiveness. The leading treatise on trademarks notes

that a descriptive mark can describe the intended purpose, function or use of the goods; the size

of the goods; the provider of the goods or services; the class of users of the goods or services; a

desirable characteristic of the goods or services; or *the end effect upon the user.* McCarthy §

11:16. Courts have found that JOY as a mark for a perfume and NO SPOT as a mark for a car

wash system were descriptive of the end effects on their respective users. See Jean Patou, Inc. v.

Jacqueline Cochran, Inc., 201 F. Supp. 861 (S.D.N.Y. 1962) (JOY); In Raco Car Wash Systems,

Inc. v. Smith, 730 F. Supp. 695 (D.S.C. 1989) (NO SPOT). But see Elizabeth Taylor Cosmetics

Co. v. Annick Goutal, S.A.R.L., 673 F. Supp. 1238, 1243-44 (S.D.N.Y. 1987) (PASSION is

suggestive for a perfume, since "[i]nstead of describing the product, it describes an emotion the

fragrance seeks to induce. Connecting the emotion to the fragrance requires an effort of the

imagination." (internal citations omitted)).

To buttress its assertion that "sexy" is descriptive in the context of hair products,

Victoria's Secret introduces two expert reports. In one, linguistics professor Edward Finegan

presents his professional opinion that, "as applied to hair, *sexy* is . . . a descriptive term, albeit

one whose meaning is relatively general in the way that *appealing*, *interesting*, and *attractive* are

14

generally descriptive." (Finegan Rpt. ¶ 10.)[4]  In the second, Paul Labrecque, a salon owner with

his own line of hair care products, asserts that the adjective "sexy" is very commonly used by

hair stylists, clients, and the media to describe hair styles, hair care, hair care products.

(Labrecque Rpt. at 3.)[5]  The Paul Labrecque salon's own "mission statement" is "Simple. Sexy.

Sophisticated." (Id.)

Victoria's Secret also attempts to underscore the descriptiveness of the word "sexy" by

citing its prevalence as an adjective in the popular media. (VS 56.1 Stmt. ¶ 12.) SHC counters

that, in the articles Victoria's Secret cites, "sexy" is used to describe hair that is "soft," "slightly

---

[4] SHC has moved to preclude Finegan's testimony. The motion will be denied. SHC
argues that Finegan employs an improper standard in evaluating SHC's mark, and that his
testimony is irrelevant and immaterial and should be precluded pursuant to Fed. R. Evid. 402.
SHC's incorrect assertion that "sexy" cannot be challenged on grounds of descriptiveness is
discussed below.  Not all of Finegan's assertions are likely to prove of much probative force in
assessing whether the TTAB erred in deeming "sexy" a suggestive, rather than a descriptive
mark in the context of hair care.  Finegan states, for example, that "'sexy' . . . is *descriptive or
suggestive* of various features of characteristics of hair and hairstyles." (Finegan Rpt. ¶ 10
(emphasis added).).  Finegan also asserts that "[n]o greater leap of imagination is required to
understand the meaning of 'curly' or 'healthy' hair than is required to understand what 'straight'
hair and 'sexy' hair mean." (Finegan Decl. ¶ 9.)  It is not clear that such testimony provides
significant assistance to the factfinder, or adds anything to the perceptions of any sophisticated
native speaker of English.  In the context of a bench trial, however, there is no possibility of
prejudice, and no need to protect the factfinder from being overawed by "expert" analysis. The
testimony thus will be admitted, and will be given such probative effect as it is worth.

[5] SHC has moved to preclude Labrecque's testimony.  The motion will be denied.  First,
SHC asserts that Labrecque's status as a hair stylist and salon owner who sells hair care products
in his line of business does not make him an expert on trademarks in the hair care industry and
that he should be classed as a lay witness under Rule 701, not an expert.  SHC also contends that
Labrecque's opinions are not based upon reliable data or methodology and are thus inadmissible
under Daubert, and that Labrecque's testimony is directed to lay matters that are within the
understanding of the trier of fact (see Andrews v. Metro North Commuter R.R. Co., 882 F.2d
705, 708 (2d Cir. 1989) (for expert testimony to be admissible under the Federal Rules of
Evidence, it must not be directed to lay matters which a jury is capable of understanding and
deciding without the expert's help).  Labrecque's testimony satisfies the rational-basis and
helpfulness requirements of Fed. R. Evid. 701 and thus is admissible at the least as lay opinion
testimony under that Rule.

messed-up," in "perfect, loose waves," "super smooth," "touchable and healthy," in a "ponytail," "cropped and sleek," and with "dark roots" and that this breadth is actually evidence of the word's suggestiveness when applied to hair. (Id.) SHC asserts that, because "sexy" is subjective and, in the words of SHC's Vice President of Marketing, "allow[s] the consumer to drum up connotations on a very personal level" (Colucci Decl., Ex. 16 - SHC 01382), purchasers necessarily rely on their imaginations to define the characteristics of "sexy" hair. (Pl. Reply 4.)

SHC's analysis here – that subjectivity = imagination = suggestiveness – echoes the TTAB's analysis in determining SEXY to be a suggestive mark. In effect, the TTAB found that the "imagination" component of the suggestiveness test was satisfied by the fact that "sexy" means different things to different people when applied to hair. This reasoning, however, departs from the standard interpretation of the "imagination" test as signaling a multi-step reasoning process. For example, to draw the connection between the word "greyhound" and a bus company, a customer would go through the following mental steps: (1) a greyhound is a breed of dog; (2) this breed is known for its speed; (3) a bus company calling itself GREYHOUND must want to convey that it will get the customer quickly to her chosen destination. It is this series of mental steps – this delay in getting from the mark to the product's attributes – which courts frequently equate to imagination, even though each customer might go through roughly the same mental process to reach the same result. See, e.g., Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 75 (2d Cir. 1988). According to SHC and the TTAB, despite the fact that the mental leap between "sexy" and the intended effect on the user may be "almost instantaneous" – a hallmark of a descriptive term – suggestivity lies in the fact that each consumer's mental leap, no matter how immediate, might land her in a different place.

16

SHC's analysis somewhat misses the point. A mark is not rendered non-descriptive simply because different consumers might conjure different mental images of the trait being described. It is well established that terms reflecting general approval of a product or its effects are descriptive terms. See, e.g., Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 213 (2000); see also McCarthy § 11:17. Different consumers may have different tastes in soft drinks, but the mark "tasty" is nevertheless descriptive as applied to a soda. Different consumers may disagree about the aesthetics of cosmetics, but "tasteful" is nevertheless descriptive of the effect intended to be produced.

Taking a different tack, SHC argues that, in the context of registering marks for its swimwear and lingerie lines, Victoria's Secret has at least implicitly acknowledged that SEXY can be an inherently distinctive term. Victoria's Secret has registered the trademarks BEACH SEXY and SEXY SUPPORT for swimwear and lingerie respectively.[6] Marks that are merely

---

[6] Victoria's Secret has moved to strike the Declaration of John F. Metzger (which includes as exhibits Victoria's Secret's registrations of the BEACH SEXY and SEXY SUPPORT marks) as improper under Fed. R. Civ. P. 56(e). The motion will be denied. Rule 56(e) provides that declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Metzger is a legal assistant at Eckert Seamans Cherin & Mellott, LLC, attorneys for SHC. The documents attached as Exhibits to Metzger's Declaration include trademark applications and registrations submitted by both Victoria's Secret and SHC to the Patent and Trademark Office; printouts from the internet of various shopping mall store locations; results of Google searches; and archived web pages.

While much of the material provided with Metzger's Declaration may prove of little use to the Court, it is not inadmissible. Exhibit C, for example, the list of results from Metzger's Google search, is not being offered to prove the truth of the underlying content of the websites found in the search; instead, it is offered merely to show the results observed by Metzger when he conducted his Google search. See Raccioppi v. Apogee, Inc., 47 U.S.P.Q. 2d 1368, 1371-72 (T.T.A.B. 1998) (printouts of articles published on the internet attached to declaration are not hearsay when articles were accessed by the declarant at the address shown on the printouts and are offered to show what it being discussed on the internet, not the truth of the statements in those articles). It bears noting that Victoria's Secret's own expert, Finegan, has also testified as to the results of an internet search he performed.

descriptive of an applicant's goods are refused registration absent proof of secondary meaning, 15 U.S.C. § 1052(e)(1), and Victoria's Secret disclaimed BEACH and SUPPORT in the above registrations.[7] Thus, SHC argues that the only registrable matter in both instances was the word SEXY and that, because Victoria's Secret submitted no evidence of secondary meaning with those applications, Victoria's Secret has relied – albeit in a different context – on the fact that SEXY was at least suggestive. However, the circumstances of Victoria's Secret's registration of BEACH SEXY and SEXY SUPPORT do not bear on the instant action. SHC does not claim that Victoria's Secret sought to preclude others from registering lingerie or swimwear trademarks which included the word "sexy" – it merely points out that Victoria's Secret did not disclaim the word. USPTO rules, however, impose no affirmative obligation to include a disclaimer in a trademark application absent a requirement to do so by the trademark examiner, so the lack of disclaimers for the word "sexy" is of little moment. Furthermore, the fact that Victoria's Secret was able to register BEACH SEXY despite disclaiming BEACH does not necessarily mean that the word "sexy" alone is inherently distinctive. What the trademark board accepted for registration was the *composite mark as a whole*, and a composite mark can be registrable even if none of its component parts, on their own, is inherently distinctive. See McCarthy § 19:64.

Finally, SHC asserts that its family of marks is based upon SEXY HAIR, which is the subject of an incontestable registration[8] and which therefore cannot be challenged on the basis of

---

[7] The PTO may require the applicant to disclaim unregistrable components of a mark otherwise registrable. 15 U.S.C. § 1056(a).

[8] Incontestable status may be obtained by fulfilling the requirements of 15 U.S.C. § 1065. This requires that the registered mark have been in use for five consecutive years and is still in use in commerce. In addition, the statute requires that there has been no decision adverse to the

mere descriptiveness.  Park 'N Fly v. Dollar Park & Fly, 469 U.S. 189, 197 (1985) ("The

language of the Lanham Act also refutes any conclusion that an incontestable mark may be

challenged as merely descriptive.").  First, the TTAB found that SHC had a family of marks

based around the single word SEXY, not the phrase SEXY HAIR.  Second, SHC cites KP

Permanent Make-Up, Inc. v. Lasting Impression I, Inc. for the proposition that the presumption

that an incontestable mark has acquired secondary meaning "extends to the most salient feature

of the mark."  408 F.3d 596, 606 (9th Cir. 2005).  That case is distinguishable from the instant

matter in that the registration in KP Permanent Make-Up was for a logo and product name

together.  The Ninth Circuit found that the presumption of secondary meaning attached also to

the name of the product – "Micro Colors" – distinct from the logo and the name together.  In this

case, SHC advances the proposition – *not* found in KP Permanent Make-Up – that a single word

can constitute the "most salient feature of the mark."  Finally, and most critically, the ownership

of an incontestible registration for the mark SEXY HAIR is irrelevant to whether individuals

hearing the term "sexy" are likely to perceive it as a descriptive term; the status of a single one

of SHC's registrations has no bearing on whether it has a *family* of marks based on the common

word "sexy."

Questions of material fact as to the distinctiveness of the word "sexy" preclude a grant of

summary judgment.  If Victoria's Secret is correct that "sexy" is a descriptive rather than

suggestive term in this context, then SHC must show that it has acquired secondary meaning in

order to meet the second prong of the family-of-marks test.  Mazis's survey, along with other

---

registrant's claim of ownership of the mark, the right to register, or the right to keep it on the
register.  See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th
Cir. 2005).

evidence in the record, creates genuine issues of fact about whether SHC can make such a showing.

## C.     Likelihood of Confusion

The TTAB's conclusion that SO SEXY is likely to be perceived as part of SHC's SEXY family of marks – and that confusion as to source is therefore likely – is premised on the fact that SHC actually has a family of marks. (Compl., Ex. A at 25, 29-30.) The TTAB explicitly declined to evaluate whether SO SEXY was likely to cause confusion with SHC's *individual* marks, since SHC had not briefed that issue. (Id. at 25, n.8.) As discussed above, there are issues of material fact as to whether SHC can rely on the family of marks doctrine.

Victoria's Secret also adduces new evidence in support of its contention that the TTAB's finding of likelihood of confusion between SHC's marks and SO SEXY is erroneous and unsupported by substantial evidence. The TTAB found that SHC's family of marks was characterized by "the term SEXY preceded by a word that suggests an intended result of the product and followed by a generic noun in the hair care field" (Complaint, Ex. A at 26) and that Victoria's Secret's mark

> can also be described as the term SEXY preceded by a word that suggests an intended result of the product, i.e., that the user's hair will be "so," or "very," SEXY. This is the same pattern that is used in [SHC's] family of marks. Although all but one of [SHC's] marks include the term HAIR following SEXY, neither party disagrees that "hair" is a generic term in connection with the identified hair care products. Thus, even though [Victoria's Secret's] mark does not include the term HAIR, it is the only possible object of the phrase SO SEXY.

Id. at 28-29.

Victoria's Secret has adduced expert testimony that the SO SEXY mark differs fundamentally in linguistic structure from SHC's pattern of marks. According to Finegan,

SHC's marks are "noun phrases" comprised of two adjectives (e.g., BIG and SEXY) and a noun (HAIR); the pivotal word in SHC's marks is the noun. SO SEXY, meanwhile, is an "adjective phrase" – an adjective preceded by an adverb. (Finegan Rpt. ¶¶ 11-17.) Finegan's testimony provides technical linguistic support for the intuition on which a fact-finder might rely that "so sexy," which simply intensifies the approval conveyed by "sexy," is different from phrases like "short sexy" or "curly sexy" that combine the general approval conveyed by "sexy" with a specific, objective type of hair texture or cut.  Put another way, each of SHC's product names identifies a particular look or hairstyle for which the product is appropriate; that identifier is arguably a distinctive aspect of the alleged SHC "family" of marks.  Victoria's Secret's proposed mark does not take this form.

More probatively, Victoria's Secret has offered new survey evidence demonstrating that SO SEXY is not likely to cause confusion with SHC's marks.  Gerald L. Ford, a market research consultant, conducted two surveys to test the likelihood of confusion between Victoria's Secret's mark and SHC's marks.[9]  The First Ford Survey was designed to conform to the survey design

---

[9] SHC has moved to preclude Ford's surveys, Rule 26 Report, and Supplemental Report. This motion will be denied.  SHC argues that the First Ford Survey is flawed in its methodology because it drew from the wrong survey universe; employed an improper stimulus for testing likelihood of confusion; and failed to incorporate a control group.  SHC maintains that the Second Ford Survey used leading questions and drew from the wrong survey universe. Victoria's Secret convincingly counters that Ford's methodologies are appropriate.  (See generally Pl. Opp'n to Def. Motion in Limine To Preclude the Two Surveys, Rule 26 Report, and Declaration and Supplemental Report of Gerald L. Ford.)  Even if the methodology were flawed, however, a survey is admissible into evidence if it tends "to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  A survey is only inadmissible if its flaws destroy all of its relevance.  Conopco, Inc. v. Cosmair, Inc., 49 F. Supp. 2d 242, 252-53 (S.D.N.Y. 1999). Assertions of "'[m]ethodological' errors in a survey . . . bear exclusively on the weight to be given the survey rather than bearing on an admissibility determination under Fed. R. Evid. 403." Freisland Brands, B.V. v. Vietnam National Milk Co., 221 F. Supp. 2d 457, 460 (S.D.N.Y. 2002).  Further, in a bench trial context, there is negligible, if any, risk of prejudice resulting

requirement of the TTAB in which the marks are evaluated based solely on the elements of the affected application and registration, without regard to how the parties' respective goods are actually perceived in the marketplace. (Ford Decl. ¶¶ 4, 10.) Accordingly, respondents were shown a card that contained the words SO SEXY in plain block letters, above a listing of a variety of hair care products. They were then asked, among other things, "[w]ho, or what company, do you believe puts out the products on this card with this name?" (Ford Rule 26 Rpt. at 8.) Only 2.29% of respondents reported that they believed SO SEXY hair products were affiliated with SHC. (Id. at 11.)

The Second Ford Survey was designed to evaluate the likelihood of confusion under actual marketplace conditions. (Ford Decl. ¶¶ 6, 36.) In that survey, respondents – females likely to purchase a hair care product within the next six months – were shown a photograph, taken at a Victoria's Secret store, of a display of hair care products, as well as a bottle of SO SEXY shampoo, and were asked questions with respect to the source or business affiliation of the product. (Ford Supp. Rpt. at 5.) Fewer than 1% of responses were classified as associating SO SEXY with SHC. Ford testified that the survey results clearly supported a finding of no likelihood of confusion. (Ford Rule 26 Rpt. ¶ 28.) There are thus issues of fact as to the likelihood of confusion regarding the source of SO SEXY products.

---

from confusion of the trier of fact by admitting survey evidence, even if the probative value is low. See Verizon Directories Corp. v. Yellow Book USA, Inc., 331 F. Supp. 2d 134, 136 (E.D.N.Y. 2004).

## CONCLUSION

For the foregoing reasons, SHC's motion for summary judgment (Doc. # 22) is denied, as are SHC's motions to preclude (1) the survey and report of Michael B. Mazis (Doc. #12); (2) the testimony of Edward Finegan (Doc. #13); (3) the testimony of Paul Labrecque (Doc. #14); and (4) the surveys, Rule 26 Report, and Supplemental Report of Gerald L. Ford (Doc. #15), and Victoria's Secret's motion to strike the Declaration of John H. Metzger (Doc. #35).

SO ORDERED.

Dated: New York, New York
April 8, 2009

GERARD E. LYNCH
United States District Judge

23